ORIGINAL

**UNITED STATES COURT OF FEDERAL CLAIMS**

04-1403C

Judge Robert H. Hodges, Jr.

FILED
OCT 1 2004
U.S. COURT OF FEDERAL CLAIMS

REGATTA BAY LIMITED

vs.

UNITED STATES OF AMERICA

**SECOND AMENDED COMPLAINT**

COMES NOW Regatta Bay Limited ("Regatta Bay" or "Regatta"), by and through its counsel, John Peter Lee, Ltd. and complains as follows:

**STATEMENT OF JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to the Tucker Act, codified at 28 U.S.C. § 1491 and under 28 U.S.C. § 1631 upon transfer from the United States District Court for the District of Nevada, as this matter concerns contractual claims and tortious breach of contract claims arising therein between REGATTA BAY LIMITED, Plaintiff, and the UNITED STATES OF AMERICA, Defendant, as set forth below.

**GENERAL ALLEGATIONS**

2. Regatta Bay owned the Regatta Bay Apartments, a 120-unit complex located at 2101 Sandy Lane, Las Vegas, Nevada 89115 from on or about November 2, 1983 through on or about December 4, 2001.

3. Regatta Bay acquired the subject apartments subject to a Deed of Trust securing a

Deed of Trust Note for the original principal sum of $3,685,100.00, and Regatta Bay assumed a Regulatory Agreement for Insured Multi-Family Housing Projects ("Regulatory Agreement", attached as Exhibit "1") signed by Paul R. Kaup, an authorized agent for the United States Department of Housing and Urban Development ("HUD"), on or about September 25, 1979. At the outset of its involvement, Regatta Bay provided a copy of its limited partnership agreement to HUD as required, a copy of an excerpt of which is attached as Exhibit "2", which informed HUD at Section 10 of the authority by the General Partner, Phil R. Rosequist, to make working capital loans to Regatta Bay.

4. The Deed of Trust Note required monthly payments on the first day of each month and established late fees for payments made later.

5. During Regatta Bay's ownership of the apartments since November 1983 in the sixteen years of Regatta's course of performance under the Deed of Trust Note and the Regulatory Agreement, whenever Regatta was late with any payment Regatta paid a contractually pre-determined late fee which the loan servicing agent, Reilly Mortgage Group, Inc. ("Reilly") and HUD accepted as not being a material breach. Regatta provided monthly reports to HUD as required, and HUD never objected to the lateness of any of Regatta's payments despite being made after the deadline of the first of the month on numerous occasions throughout the time of Regatta Bay's ownership.

6. Attached as Exhibit "3" is a copy of a June 29, 1994 letter from the local HUD office at 1500 East Tropicana, Las Vegas, Nevada representing that office to have authority to act for HUD by stating:

> On April 15, Secretary, Henry G. Cisneros implemented the

> field reorganization for the U.S. Department of Housing and Urban Development (HUD). From this day forward, HUD will be doing business in a new way!
>
> Specifically, this office has full authority to make decisions and work with you as a partner to build better, stronger communities. This office has now been designated the primary point of contact for coordination of all HUD programs for your community.

7. On or about March 24, 2000, Janet Browder, Director, Multifamily Hub in San Francisco, and Scott Hunley, Director, DEC, Los Angeles, Satellite Office for HUD, sent a letter to Regatta Bay requiring Regatta Bay to address issues HUD raised therein about the apartments within thirty (30) days, a copy of which letter is attached as Exhibit "4". HUD therein demanded payment forthwith from Regatta of $1,327,420 plus a reversal of accrued interest of $152,665, totaling some $1.48 million.

8. With respect to HUD's demand in the March 24, 2000 letter at Exhibit "4", Rosequist reviewed the matter with Dave Ewing, the then HUD authorized agent in the local Las Vegas office who was Regatta's contact person. Mr. Ewing recommended that Rosequist not put any more of his money into the Regatta Bay project because HUD intended to enforce the $1.48 million dollar demand to the extent of foreclosing on the Regatta Bay property regardless of the lack of merit to the demand.

9. Regatta paid its June, 2000 payment to the loan servicing agent, Reilly.

10. HUD wrongfully declared on July 19 that a missed payment of Regatta Bay by July 1, 2000 was a "continuing material breach".

11. Reilly's July 26, 2000 letter to Regatta states:

> We have been advised by the US Department of Housing and Urban Development that Regatta Apartments has violated its

> contractual obligations under the Deed of Trust Note and Deed of Trust. Specifically, the mortgagor has failed to correct the continuing material breach.

The only alleged continuing material breach of which HUD ever gave Regatta notice was the wrongful demand contained the March 24, 2000 letter.

12. On information and belief, HUD conducted an Inspector General's audit, No. 94-SF-212-1002 issued on or about December 20, 1993, which HUD closed with full knowledge of the advances at issue in the March 24, 2000 letter. HUD closed its audit because HUD knew that the advances by the General Partner were consistent with HUD's policies of allowing such advances to preserve the property value and did not constitute material breaches of any of Regatta Bay's agreements with HUD or with the lender or the servicing agent. (Exhibit "2", Excerpt, Section 10 on Working Capital Loans from the General Partner .)

13. Regatta Bay's accounting was literally an open book to HUD. Regatta Bay provided annual certified audits and monthly cash flow reports. Rosequist never made personal withdrawals or received repayment of advances for personal use other than to repay loans he had made to Regatta Bay on at least as favorable terms as were otherwise commercially available, at prime rate. Rosequist's advances were always at his personal risk from funds he had borrowed on other lines of credit at less favorable terms as the terms to which he loaned to Regatta. Regatta's repayment and Regatta's disbursement of Regatta's repayment for Rosequist's advances as shown by HUD's own records were pursuant to such working capital loans as contemplated by the Limited Partnership Agreement and which were necessary for the payment of reasonable and necessary operating expenses of the Regatta Bay Apartments, and were pursuant to HUD's knowledge, acceptance and/or acquiescence of these facts.

14. In HUD's March 24, 2000 letter stating its wrongful demand for $1.48 million dollars payment by Regatta Bay forthwith, HUD never identified the allegedly breaching repayments of advances with any specificity. In fact, to date, HUD has never identified such alleged "continuing material breaches" by Regatta with specificity.

15. On or about August 29, 2000, Frank M. Malone, Director of Multi-Family Asset Management for HUD, sent a letter notifying Regatta Bay that HUD concluded Regatta Bay to be in violation of the Regulatory Agreement, a copy of which letter is attached as Exhibit "5".

16. The only two bases for declaring default stated by Mr. Malone were the incorrect conclusions that: 1) payments of $1,327,424.00 and charges for interest of $152,665.00 for Rosequist's advances were improper and 2) Regatta's failure to pay such amounts to HUD at that time allegedly constituted violations of the Regulatory Agreement. The most specificity HUD ever provided Regatta to identify what HUD alleged to constitute the continuing breaches was an after-the-fact, unsigned, unsubstantiated letter dated May 3, 2001, presumably from Luc-Andre Odabashian, attached as Exhibit "6". Page 2 of Exhibit "6" shows that HUD provided alleged annual totals of repayments of advances, but no specific transactions were identified. The charts on page 2 further show that HUD had full knowledge that the most recent of the alleged "continuing material breaches" were more than seven years old and that the most recent alleged breaches followed a history of HUD's acceptance for twelve years previously the exact same practice which Regatta fully disclosed in detail each and every month to HUD in the operating reports.

17. Although Mr. Odabashian did not state a theory on which he based his assertion that Regatta owed $1.48 million dollars, HUD knew to the extent HUD relied upon 12 U.S.C. § 1715z-4a that at least $1,051,500.00 of HUD's principal claim of $1,327,420.00 and most of HUD's interest

claim was barred by the statute of limitations. HUD also knew, or should have known, that HUD had waived any objection to this ten-year course of performance ten years ago and that HUD waived any objections to this thirteen year course of performance seven years ago. HUD also knew or should have known that the non-payment of HUD's demand was not a violation of the Regulatory Agreement. HUD showed no flexibility in pursuit of the demand in its March 24, 2000 letter despite the incorrectness of HUD's assumed fact and baseless demand.

18. Mr. Odabashian's statements at Exhibit "6" contain the admissions described above, but many of his statements are also incorrect. For example, HUD did not disallow "withdrawals" of funds over $10,000.00 from 1985 through 1994. Nonetheless, his description acknowledges that HUD had no objection to the arrangement of repayments of the loans at the time but only attempted in 2001 to object for the first time to the amounts of these repayments made from 1985 through 1994. His letter also shows that in 2000 HUD for the first time attempted to label as "violations", "material breaches" or "continuing material breaches" any of the repayments to Rosequist of his advances under his working capital loan made at prime rate to Regatta Bay. HUD encouraged the maintenance of the revolving working capital loan arrangement during the course of Regatta Bay's performance with its lender and with HUD for maintaining the mortgage payments as current, for making needed repairs and for other needs, all as reported in certified annual audits and monthly operating reports on HUD's forms. Further, HUD waived any objection to the arrangement by acquiescence and accepted this course of performance which did not put HUD at risk because the process facilitated the cash flow needs of the property, including the maintenance of payments as current of the HUD insured mortgage, which was consistent with HUD's policy.

19. HUD has never provided a meaningful, accurate analysis of how it could recover any

money from Regatta Bay such as would put Regatta Bay on notice of specifically what was the alleged "continuing material breach". Instead, HUD used its incorrect interpretation of the above-quoted statute to intimidate Regatta Bay and to wrongfully foreclose on the Regatta Bay Apartments.

20. Despite having received all required audited annual financial statements and monthly operating reports for the project, HUD incorrectly and/or wrongfully concluded in the August 29, 2000 letter that the payments at issue were not for allowed purposes under the Regulatory Agreement and all of its terms, including the purpose of paying reasonable operating expenses and the course of performance between HUD and Regatta Bay since 1983.

21. HUD incorrectly and/or wrongfully concluded in the August 29, 2000 letter that the payments at issue were made in violation of the Regulatory Agreement.

22. Based upon the letters at Exhibits "4" and "5", HUD incorrectly and/or wrongfully thereby declared Regatta Bay to be in default of the Regulatory Agreement, and as a result HUD then bought the insured note back from Reilly and proceeded to wrongfully foreclose upon the property.

23. Mr. Ewing's assessment proved to be correct that HUD was intent on foreclosing on the Regatta Bay property regardless of the fact that HUD was not following its own policies and that foreclosure was neither legally nor economically justified. On October 31, 2001, HUD served its Notice of Default and Foreclosure Sale, admitting that the basis of its notice of intent to accelerate in its July 19, 2000 letter was incorrect because Regatta did make the its June 2000 payment. The notice of default did not show any valid grounds for acceleration of the Note such as HUD purported to accomplish by its July 19 letter to Reilly. HUD's insistence upon acceleration in July 2000 for lateness of the July payment was not justified, and it also made futile any further monthly payments by Regatta Bay. HUD's Notice of Default dated August 29, 2000 at Exhibit "5" shows that the only

basis for HUD's default notice was the wrongful demand that Regatta pay $1.48 million dollars forthwith.

24. As a result of HUD's wrongful declaration of default and requirement that Regatta Bay pay in excess of $1.48 million to the project, Regatta Bay lost the property, including its right to enjoy the ongoing appreciation of the property from its past and future, planned capital improvement expenditures and long term maintenance, including the installation of a greatly improved traffic configuration known from experience in the vicinity of Regatta by other HUD projects to provide enhanced security and value to the subject apartments.

25. The loss of these rights of Regatta Bay by HUD's wrongful foreclosure caused Regatta Bay also to lose the value associated with such security, occupancy and the concomitant increase in rental income and value.

26. As Rosequist explained to HUD on numerous occasions, such increased occupancy and rent was highly probable, if not certain, had HUD not wrongfully caused acceleration of the Deed of Trust Note, declared the Regulatory Agreement to be in default and foreclosed on the property.

27. HUD sold the Regatta Bay Apartments at foreclosure sale on December 4, 2001 for more than the debt against the property. The buyer has acknowledged that the property was worth more that the forced sale price. It has continued to appreciate, as expected in the Las Vegas real estate market.

28. Regatta Bay's damages will be calculated by deducting from the value of the property as of the date of trial the surplus funds received from foreclosure after the loan was paid off from the sale proceeds, less the benefit of full payment of the principal secured by the deed of trust, plus

attorney's fees incurred and any other damages allowable by law.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

29. Regatta hereby incorporates paragraph numbers 1 through 28 as if fully set forth herein.

30. By sending the March 24, 2000 letter attached as Exhibit "4", HUD anticipatorily repudiated and breached the Regulatory Agreement.

31. HUD further breached the Regulatory Agreement by failing to insure the loan as promised under the Regulatory Agreement, by notifying Reilly falsely and incorrectly that Regatta was in breach and by wrongfully declaring Regatta to be in default of the Regulatory Agreement such as HUD falsely stated in the August 29, 2000 letter at Exhibit "5".

32. HUD's breach of the Regulatory Agreement has injured Regatta in an amount believed to be more than two million dollars, which amount will be determined at trial according to proof.

## SECOND CLAIM FOR RELIEF

### Tortious Breach of Contract - Wrongful Foreclosure

33. Regatta hereby incorporates paragraph numbers 1 through 32 as if fully set forth herein.

34. In violation of 12 U.S.C. 3705 and the Regulatory Agreement, HUD exercised the power of sale in its Deed of Trust dated September 1, 1979 based upon HUD's incorrect allegation that Regatta Bay was in default of the Regulatory Agreement, although Regatta Bay was not in any

material default.

35. At the time the power of sale was exercised and the foreclosure occurred based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale.

36. HUD's wrongful foreclosure of the Regatta Bay Apartments has caused Regatta Bay to suffer injury in an amount to be computed at the date of trial, including any additional damages which may be discovered and/or proved, plus attorney's fees and costs, and plus costs charged by HUD, which were wrongfully charged to Regatta Bay out of the foreclosure sale proceeds.

37. Regatta Bay seeks recovery of its damages in an amount to be computed at the date of trial, including any additional items of damages which may be discovered and/or proven.

**THIRD CLAIM FOR RELIEF**

**Tortious Breach of Contract - Breach of the Covenant of Good Faith and Fair Dealing**

38. Regatta hereby incorporates paragraph numbers 1 through 37 as if fully set forth herein.

39. Inherent in every contract is a covenant of good faith and fair dealing which compels HUD to have fairly dealt with Regatta Bay under the terms put forth by the Regulatory Agreement.

40. Despite having received all required audited annual financial statements for the project, HUD incorrectly and/or wrongfully concluded that the payments at issue were not for allowed purposes under the Regulatory Agreement and all of its terms, including the purpose of paying reasonable operating expenses in accordance with the course of performance between HUD and Regatta Bay since 1983.

41. HUD knew or should have known that at the time the power of sale was exercised and the foreclosure occurred, based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale, in breach of the covenant of good faith and fair dealing.

42. HUD's breach of the covenant of good faith and fair dealing has injured Regatta Bay in an amount to be computed at the date of trial.

## FOURTH CLAIM FOR RELIEF

### Tortious Breach of Contract - Breach of Fiduciary Duty

43. Regatta hereby incorporates paragraph numbers 1 through 42 as if fully set forth herein.

44. Upon Regatta Bay's acquisition of the apartments subject to a deed of trust for the original principal sum of $3,685,100.00, and Regatta Bay assuming the Regulatory Agreement, and HUD assuming the role of insurer of the Deed of Trust, the United States assumed a fiduciary duty to Regatta Bay.

45. Despite having received all required audited annual financial statements for the project, HUD incorrectly and/or wrongfully concluded that the payments at issue were not for allowed purposes under the Regulatory Agreement and all of its terms, including the purpose of paying reasonable operating expenses in accordance with the course of performance between HUD and Regatta Bay since 1983.

46. HUD knew or should have known that at the time the power of sale was exercised and the foreclosure occurred, based upon the alleged default of the Regulatory Agreement, no

material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale, in breach of HUD's fiduciary duty to Regatta Bay as insurer of the Deed of Trust.

47. HUD's breach of fiduciary duty has injured Regatta Bay in an amount to be computed at the date of trial.

## FIFTH CLAIM FOR RELIEF

### Tortious Breach of Contract - Tortious Interference with Contractual Relationship and/or Prospective Business Advantage

48. Regatta hereby incorporates paragraph numbers 1 through 47 as if fully set forth herein.

49. In violation of 12 U.S.C. 3705 and the Regulatory Agreement, HUD exercised the power of sale in its Deed of Trust dated September 1, 1979 based upon HUD's incorrect allegation that Regatta Bay was in default of the Regulatory Agreement, although Regatta Bay was not in material default.

50. HUD knew or should have known of Regatta's prospective business advantage existing under Regatta's favorable business position, including leases to its tenants and the right to enjoy the ongoing appreciation of the property from its past and future planned capital and improvement expenditures and long term maintenance, including the installation of a greatly improved traffic configuration known from experience of other HUD projects in the area to provide enhanced security and value to the subject apartments. Regatta Bay had explained such value to HUD in particular detail, and HUD knew its actions were likely to cause Regatta Bay to lose such value.

51. At the time the power of sale was exercised and the foreclosure occurred based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or exercise of the power of sale. HUD thereby tortiously interfered with the contractual relationships and prospective business advantage between Regatta Bay and the lender and loan servicer and with the contractual relationships and prospective economic advantage between Regatta Bay and its tenants.

52. HUD's tortious interference with the contractual relationship and/or prospective business advantage of Regatta Bay has caused Regatta Bay to suffer injury in an amount to be computed at trial.

## SIXTH CLAIM FOR RELIEF

### Declaratory Judgment

53. Regatta hereby incorporates paragraph numbers 1 through 52 as if fully set forth herein.

54. A dispute exists between Regatta Bay and HUD concerning Regatta Bay's rights under the Regulatory Agreement, including the course of performance between Regatta Bay and HUD thereunder since 1983, concerning HUD's wrongful demand through its March 24, 2000 letter and concerning HUD's declaration of default through Frank M. Malone's letter to Regatta Bay dated August 29, 2000.

55. Regatta Bay is entitled to judgment declaring Regatta Bay's payments of $1,327,424.00 and charges of interest of $152,665.00 described in Mr. Malone's August 29, 2000 letter, not to be in violation of the Regulatory Agreement, including the course of performance

between HUD and Regatta Bay since 1983.

56. Regatta Bay is entitled to judgment declaring the fact that Regatta Bay did not pay such amounts as were purportedly required in Mr. Malone's August 29, 2000 letter was not a violation of the Regulatory Agreement, including the course of performance between HUD and Regatta Bay since 1983.

57. Regatta Bay is entitled to judgment declaring that HUD's statements in Mr. Malone's August 29, 2000 letter concerning Regatta Bay's payments of $1,327,424.00 and charges of interest of $152,665.00 and concerning Regatta Bay's non-payment of such amounts were not in accordance with the Regulatory Agreement and course of performance between HUD and Regatta Bay since 1983 and that Mr. Malone's statements on behalf of HUD were incorrect and/or wrongful, including HUD's declaration in Mr. Malone's letter of Regatta Bay to be in default.

58. Regatta Bay is entitled to judgment declaring that HUD's declaration of default through Mr. Malone's letter caused injury to Regatta Bay in an amount to be computed at trial according to proof.

## SEVENTH CLAIM FOR RELIEF

### Breach of Statutory Duties Under Multi-Family Mortgage Foreclosure Act

59. Regatta hereby incorporates paragraph numbers 1 through 58 as if fully set forth herein.

60. HUD undertook its foreclosure of the subject property without the existence the prerequisites to foreclosure under the Multi-Family Mortgage Foreclosure Act, including but not limited to 12 U.S.C. §§ 3705, 3706, 3707 and 3708.

61. HUD wrongfully declared Regatta to be in breach and thereby failed to meet the

prerequisites to foreclosure under the Multi-Family Mortgage Foreclosure Act.

62. HUD's breach of the statutory duties under the Multi-Family Mortgage Foreclosure Act has injured Regatta in an amount to be proven at the date of trial.

**EIGHTH CLAIM FOR RELIEF**

**Inverse Condemnation/Taking**

63. Regatta hereby incorporates paragraph numbers 1 through 62 as if fully set forth herein.

64. HUD knew when it sent its March 24, 2000 letter to Regatta and when it sent its August 29, 2000 letter to Regatta that Regatta was not in violation of the Regulatory Agreement, nor was Regatta in any "continuing material breach".

65. HUD's denial of Regatta's rights to insurance under the Regulatory Agreement and to Regatta of its equitable rights in the subject property through HUD's pursuit of the wrongful declaration of default and foreclosure of the property constitutes a taking in violation of the Fifth Amendment of the United States Constitution.

66. HUD's taking has not been under any valid exercise of power of eminent domain and constitutes inverse condemnation.

67. HUD's inverse condemnation and taking in violation of the Fifth Amendment of the United States Constitution has injured Regatta in an amount to be computed at trial.

**ATTORNEY'S FEES**

HUD's actions described herein have required Regatta Bay to retain its counsel John Peter Lee, Ltd., and Regatta Bay is entitled to the recovery of its reasonable expenses incurred as a result of HUD's action described herein, including attorneys' fees and costs.

WHEREFORE, Regatta Bay prays for the entry of judgment against HUD as follows:

1. For damages presently computed to be in excess of $2,000,000.00, which amount will be computed according to proof at trial;

2. Declaring that the statements in Frank M. Malone's August 29, 2000 letter were incorrect and /or wrongful , wherein he stated that Regatta Bay's payments of $1,327,424,.00 and charges of interest of $152,665.00 were in violation of the Regulatory Agreement;

3. Declaring that the statements in Frank M. Malone's August 29, 2000 letter were incorrect and/or wrongful, wherein he stated that Regatta Bay's non-payment to HUD of $1,327,424.00 and charges for interest of $152,665.00 was a violation of the Regulatory Agreement;

4. Declaring that Regatta Bay was in compliance with the Regulatory Agreement, including the course of performance between HUD and Regatta Bay thereunder since 1983.

5. Declaring that HUD's declaration of default through Mr. Malone's letter was incorrect and/or wrongful and caused Regatta Bay's injury in an amount to be proven at trial;

6. Awarding Regatta Bay its attorney's fees and costs;

7. Awarding Regatta Bay its interest; and

8. For such other relief as is just and equitable.

DATED this 30th day of September, 2004.

JOHN PETER LEE, LTD.

PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, NV 89101
(702) 382-4044
Attorney for Plaintiff