No. 04-1403C
(Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REGATTA BAY LTD.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

OF COUNSEL:

GEOFFREY L. PATTON
LUC ODABASHIAN
Department of Housing
& Urban Development

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

January 14, 2005

Attorneys for Defendant

TABLE OF CONTENTS

| | Page |
|---|---|
| DEFENDANT'S MOTION FOR SUMMARY JUDGMENT | 1 |
| DEFENDANT'S BRIEF | 2 |
| STATEMENT OF THE CASE | 2 |
| I. Nature Of The Case | 2 |
| II. Issues Presented | 2 |
| III. Statement Of Facts | 3 |
| SUMMARY OF THE ARGUMENT | 8 |
| ARGUMENT | 10 |
| I. Summary Judgment Is Appropriate Here | 10 |
| II. Regatta's Unlawful Foreclosure Claim Does Not Properly Arise Out Of Or Depend Upon Any Alleged Breach Of The Regulatory Agreement | 11 |
| III. The Government Is Entitled To Judgment Upon Regatta's Breach Of Contract Claim | 17 |
| IV. Plaintiff's Tortious Breach Of Contract Claims Should Be Dismissed | 23 |
| V. The Government Did Not Breach Any Statutory Duties Pursuant To The Multi-Family Mortgage Foreclosure Act | 27 |
| VI. Regatta Is Not Entitled To Declaratory Judgment | 29 |
| VII. Defendant Is Entitled To Summary Judgment Upon Regatta's Takings Claim | 31 |
| CONCLUSION | 34 |

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . 10

Anderson v. United States, 344 F.3d 1343 (Fed. Cir. 2003) . . . . . . . . . . . . . 18

Armijo v. United States, 229 Ct. Cl. 34, 663 F.2d 90 (1981) . . . . . . . . . . . 34

Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595 (1994) . . . . . . . . . . . . . . . . 26

Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533 (1979) . . . . . . . . . . 24

Bernaugh v. United States, 38 Fed. Cl. 538 (1997), aff'd, 168 F.3d 1319 (Fed. Cir. 1998) . . . . . . . . . . . . . 31

Bobula v. Department of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992) . . . . . . . . . . . 30

Caldwell & Santmyer, Inc. v. United States, 55 F.3d 1578 (Fed. Cir. 1995) . . . . . . . . . . . . . . 26

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . 10

Chancellor Manor v. United States, 331 F.3d 891 (Fed. Cir. 2003) . . . . . . . . . . . . . . 31

Cienega Gardens v. United States, 194 F.3d 1231 (Fed. Cir. 1998) . . . . . . . . . . . 18, 19

Conti v. United States, 291 F.3d 1334 (Fed. Cir. 2002) . . . . . . . . . . . . . 31

Cottrell v. United States, 42 Fed. Cl. 144 (1998) . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

DeRoo v. United States,
12 Cl. Ct. 356, 362 (1987) . . . . . . . . . . . . . . . . 24

Eastport Steamship Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) . . . . . . . . . 27, 34

Florida Rock Indus. Inc. v. United States,
791 F.2d 893, 899 (Fed. Cir. 1986) . . . . . . . . . . . . . 33

Hoover Group, Inc. v. Custom Metalcraft, Inc.,
84 F.3d 1408 (Fed. Cir.1996) . . . . . . . . . . . . . . . 25

Howard v. United States,
31 Fed. Cl. 297 (1994) . . . . . . . . . . . . . . . . . . 33

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . 32

Industries v. United States,
905 F.2d 1518 (Fed. Cir. 1990) . . . . . . . . . . . . . . 26

J.J. Henry Co. v. United States,
188 Ct. Cl. 39, 411 F.2d 1246 (1969) . . . . . . . . . . . 32

Johnson v. Zerbst,
304 U.S. 458 (1938) . . . . . . . . . . . . . . . . . . . . 17

Kaiser Aetna v. United States,
444 U.S. 164 (1979) . . . . . . . . . . . . . . . . . . . . 31

Kennedy Heights Apartments, Ltd. v. United States,
48 Fed. Cl. 574 (2001) . . . . . . . . . . . . . . . . . . 28

Landers v. United States,
39 Fed. Cl. 297 (1997) . . . . . . . . . . . . . . . . . . 34

Langenegger v. United States,
756 F.2d 1565 (Fed. Cir. 1985) . . . . . . . . . . . . . . 34

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949) . . . . . . . . . . . . . . . . . . . . . . 33

Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . 31

Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338-39 (1989) . . . . . . . . . . . . . 32, 33

McCauley v. United States, 38 Fed. Cl. 250 (1997) . . . . . . . . . . . . . . . . . . . . 24

Millmaster International, Inc. v. United States, 427 F.2d 811 (C.C.P.A. 1970) . . . . . . . . . . . . . . . 17

Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . 10

M&J Coal Co. v. United States, 47 F.3d 1148 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995) . . . . . . . . . . . . . . . . . . . . . . 31

Newby v. United States, 57 Fed. Cl. 283 (2003) . . . . . . . . . . . . . . . . . . . . . 25

Noel v. United States, 16 Cl. Ct. 166 (1989) . . . . . . . . . . . . . . . . . . . . . 34

Pinkston v. United States, 6 Cl. Ct. 263 (1984) . . . . . . . . . . . . . . . . . . . . . . . 25

Presidential Gardens Assocs. v. U.S. Department of Housing and Urban Development, 175 F.3d 132 (2nd Cir. 1999) . . . . . . . . . . . . . . . 21

Regents of University of New Mexico v. Knight, 321 F.3d 1111 (Fed. Cir.2003) . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Smithson v. United States, 847 F.2d 791 (Fed. Cir. 1988) . . . . . . . . . . . . . . . 24

Soeken v. United States, 47 Fed. Cl. 430 (2000) . . . . . . . . . . . . . . . . . . . 27

Somali Development Bank v. United States, 205 Ct. Cl 741, 508 F.2d 817 (1974) . . . . . . . . . . . . 24

Southern California Edison v. United States, 58 Fed. Cl. 313 (2003) . . . . . . . . . . . . . . . . . . . 26

Sun Oil Co. v. United States, 215 Ct. Cl. 716, 572 F.2d 786 (1978) . . . . . . . . . . . 32

Sunrise Village Mobile Home Park, L.C. v. United States, 42 Fed. Cl. 392 (1998) . . . . . . . . . . . . . . . . . . . 33

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . 10

Tabb Lakes, Ltd. v. United States, 10 F.3d 796 (Fed. Cir. 1993) . . . . . . . . . . . . . . . 33

Transpace Carriers, Inc. v. United States, 27 Fed. Cl. 269 (1992) . . . . . . . . . . . . . . . . . . . 32

United States v. King, 395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . 23, 30

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . 23

United States v. Mitchell, 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . 27

United States v. Neustadt, 366 U.S. 696 (1961) . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

United States v. OCCI Company,
758 F.2d 1160 (7th Cir. 1985) . . . . . . . . . . . . . . . . 15

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . 23

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . 23, 30, 27

United States v. Victory Highway Village, Inc.,
662 F.2d 488 (8th Cir. 1981) . . . . . . . . . . . . . . . . 15

United States v. View Crest Gardens Apts. Inc,
268 F.2d 380 (9th Cir. 1959) . . . . . . . . . . . . . . . . 15

United States v. Wennick,
645 F. Supp. 103 (D. De. 1986) . . . . . . . . . . . . . . . 15

Wheeler v. United States,
11 F.3d 156 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . 30

FEDERAL STATUTES

11 U.S.C. § 362(a) . . . . . . . . . . . . . . . . . . . . . . 7

12 U.S.C. § 1701 . . . . . . . . . . . . . . . . . . . . . . . 3

12 U.S.C. § 1713(k) . . . . . . . . . . . . . . . . . . . . 4, 15

12 U.S.C. § 1715 . . . . . . . . . . . . . . . . . . . . . 4, 18

12 U.S.C. § 1715b . . . . . . . . . . . . . . . . . . . . . . 12

12 U.S.C. § 1715l(d)(4) . . . . . . . . . . . . . . . . . . . 4

12 U.S.C. § 1715z-4a(a) . . . . . . . . . . . . . . . 20, 21, 22

12 U.S.C. § 3701 . . . . . . . . . . . . . . . . . . . . . 7, 15

## TABLE OF AUTHORITIES Con't

## FEDERAL STATUTES


| | Page(s) |
|---|---|
| 12 U.S.C. § 3703 | 15 |
| 12 U.S.C. § 3705 | 27 |
| 12 U.S.C. §§ 3705-3708 | 3, 27 |
| 12 U.S.C. § 3706 | 27 |
| 12 U.S.C. § 3707 | 28 |
| 12 U.S.C. § 3708 | 28 |
| 12 U.S.C. § 3712 | 28 |
| 26 U.S.C. § 501(c)(3) | 30 |
| 26 U.S.C. § 7428 | 30 |
| 28 U.S.C. § 1491(a)(1) | 24, 30, 33 |
| 28 U.S.C. § 1507 | 30 |
| 28 U.S.C. § 2680(h) | 25 |
| 41 U.S.C. §§ 601-613 | 30 |


## FEDERAL REGULATIONS


| | |
|---|---|
| 24 C.F.R. § 27.1 | 15 |
| 24 C.F.R. § 200.105 | 12, 13 |
| 24 C.F.R. § 207.255 | 6 |

# INDEX TO APPENDIX


| | Page |
|---|---|
| Deed of Trust dated September 1, 1979 . . . . . . . . . . . . . | 1 |
| Deed of Trust Note dated September 1, 1979 . . . . . . . . . . | 8 |
| Security Agreement dated September 30, 1979 . . . . . . . . . | 10 |
| May 9, 2000, response by Regatta to notice of violation . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| July 19, 2000 instruction to accelerate mortgage . . . . . . . | 20 |
| July 26, 2000 letter to Regatta from Reilly . . . . . . . . . | 22 |
| August 2, 2000 letter to Reilly from HUD confirming HUD's July 19, 2000 notice . . . . . . . . . . . . . . . . . . | 23 |
| September 8, 2000 Regatta voluntary bankruptcy petition . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| September 11, 2000, email regarding Reilly election to assign the mortgage in exchange for insurance benefits . . . | 28 |
| October 18, 2000, letter from Reilly to HUD acknowledging assignment of the mortgage . . . . . . . . . . . . . . . . . . | 32 |
| December 5, 2000 appraisal report (selected portions) . . . . | 33 |
| February 21, 2001 Regatta bankruptcy proof of claim . . . . . | 48 |
| April 4, 2001 stipulation of facts . . . . . . . . . . . . . . | 51 |

INDEX TO APPENDIX Con't

Page

April 25, 2001 order granting relief from automatic stay . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

May 7, 2001 final settlement of insurance benefits . . . . . . 55

May 17, 2001 Regatta motion to dismiss bankruptcy case . . . 57

May 22, 2001 notice of intent to foreclosure . . . . . . . . . 58

June 12, 2001, Regatta's written response to proposed foreclosure . . . . . . . . . . . . . . . . . . . . . . . . 60

June 20, 2001 decision to proceed to foreclosure . . . . . . . 62

July 10, 2001 order granting Regatta's motion to dismiss bankruptcy petition . . . . . . . . . . . . . . . . 63

October 31, 2001 notice of default and foreclosure sale . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

November 20, 2001 agreement . . . . . . . . . . . . . . . . . . 69

January 25, 2002 deed . . . . . . . . . . . . . . . . . . . . . 74

January 31, 2002 memorandum regarding statement of expenses and amount due Regatta . . . . . . . . . . . . . . . . 78

November 4, 2003 MDDR report . . . . . . . . . . . . . . . . . 82

December 18, 2003 Declaration of Janet L. Browder . . . . . . . 85

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REGATTA BAY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1403C |
| | ) | (Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, pursuant to RCFC 56, respectfully requests that the Court issue summary judgment in favor of defendant.[1] In support of this motion, we rely upon the complaint, the following brief, and documents set forth in the attached appendix.[2]

[1] The Court issued an order dated December 15, 2004, in response to our motion for an enlargement of time to respond to plaintiff's complaint. The court's order granted us until January 14, 2005 to file our answer, and set an additional deadline of March 4, 2005, for filing the JPSR. Rather than file an answer, we have filed this motion for summary judgment, which properly is filed as a response to the complaint pursuant to RCFC 12 and 56. We respectfully request that the deadline for filing the JPSR be stayed until after resolution of our motion for summary judgment.

[2] This motion primarily seeks relief pursuant to RCFC 56, and, accordingly, is styled a motion for summary judgment. However, as discussed more fully below, certain claims contained in plaintiff's eight-count complaint are properly dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1).

DEFENDANT'S BRIEF

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiff Regatta Bay Limited ("Regatta") seeks damages arising from an alleged unlawful foreclosure of the mortgage of Regatta Apartments ("the property") by the Department of Housing and Urban Development ("HUD"). Regatta alleges that HUD foreclosed based upon Regatta's default of a Regulatory Agreement entered into between Regatta Apartments and HUD. Comp. ¶ 22.[3] Regatta seeks damages in excess of $2,000,000, together with fees and costs. Comp. prayer for relief.

Prior to filing this action, Regatta filed a complaint in the United States District Court for the District of Nevada. The district court dismissed Regatta's complaint for lack of jurisdiction and transferred the action to this Court.

II. Issues Presented

1. Whether defendant is entitled to summary judgment upon plaintiff's claim that HUD breached the regulatory agreement, where the foreclosure at issue here was instituted based upon

[3] "Comp. ¶ ___" refers to plaintiff's second amended complaint filed October 1, 2004. "Comp. Ex. ___" refers to exhibits attached to plaintiff's complaint. "A ___" refers to the appendix accompanying defendant's motion for summary judgment. "DPFUF ___" refers to defendant's proposed findings of uncontroverted fact.

plaintiff's undisputed failure to submit its monthly mortgage payments in breach of the deed of trust.

2. Whether this Court lacks jurisdiction to consider plaintiff's tort claims of wrongful foreclosure, breach of fiduciary duty, and tortious interference with a contractual relationship.

3. Whether defendant is entitled to summary judgment upon plaintiff's claim that the Government breached the covenant of good faith and fair dealing.

4. Whether the Court possesses jurisdiction to consider plaintiff's claim that the Government violated the Multi-Family Mortgage Foreclosure Act ("MMFA"), 12 U.S.C. §§ 3705-3708, where none of the provisions of that statute identified by plaintiff are money-mandating.

5. Whether Regatta is entitled to declaratory relief where the relief sought is not properly tied to a money claim.

6. Whether defendant is entitled to summary judgment upon plaintiff's takings claim based upon an alleged breach of the regulatory agreement.

III. Statement Of Facts

Regatta was a Limited Partnership doing business in the State of Nevada. DPFUF 1. Pursuant to the National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq., HUD assists private industry in providing housing for low-and-moderate income families by

insuring mortgages for the construction or rehabilitation of existing multifamily housing projects which meet the eligibility requirements of 12 U.S.C. § 1713(c). DPFUF 3. Section 221 of NHA, 12 U.S.C. § 1715, created several mortgage insurance programs "to assist private industry in providing housing for low and moderate income families and for displaced families." 12 U.S.C. § 1715. DPFUF 4.

The property at issue in this case is a multi-family housing project located in Las Vegas, Nevada. DPFUF 2. Its first owner, Regatta Apartments, was a Nevada Limited Partnership that constructed the property with proceeds from a loan insured by HUD pursuant to section 221(d)(4) of NHA, 12 U.S.C. § 1715l(d)(4). DPFUF 5. Regatta Apartments secured the property with a deed of trust in the amount of $3,685,100.00. DPFUF 6.

The deed of trust note provided that, in the event of a default, "the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this Note." DPFUF 7. The deed of trust likewise provided that, in the event of a default, the beneficiary of the deed of trust could sell the property in payment of the debt "[u]pon any default made in the payment of any installment of principal and/or interest under said Note or payment of any monthly sum as hereby provided." DPFUF 8.

Regatta Apartments entered into a regulatory agreement with HUD dated September 1, 1979, setting forth terms governing the operation of the property. DPFUF 8. Pursuant to the Federal financing scheme, HUD agreed to exculpate mortgagors from personal liability for repayment of the mortgage in return for the mortgagors' agreement to operate the multifamily project in accordance with the terms and conditions of the regulatory agreement. DPFUF 5. These terms restricted the owner's use of project funds. DPFUF 10.

Plaintiff Regatta acquired the property from the project's first owner Regatta Apartments, on October 28, 1983, subject to the deed of trust insured by HUD. DPFUF 6. Commencing July 1, 2000, and thereafter, Regatta failed to make its monthly payments to Reilly Mortgage Group ("Reilly" or "mortgagee"), the holder of the HUD-insured note and deed of trust. DPFUF 14.

On July 19, 2000, HUD instructed Reilly to send notice to Regatta that, pursuant to the terms of the note and deed of trust, HUD was exercising its right to require the mortgagee to accelerate payment on the mortgage. DPFUF 16. On July 26, 2000, Reilly advised Regatta that it had "violated its contractual obligations under the Deed of Trust Note and Deed of Trust" and that HUD was exercising its rights to require the mortgagee to accelerate Regatta's payment on the outstanding principal balance. DPFUF 18.

On September 8, 2000, Regatta filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court, District of Nevada. DPFUF 22. On October 6, 2000, the Reilly assigned deed of trust to HUD in exchange for insurance benefits. DPFUF 24; 24 C.F.R. § 207.255 et seq. On December 6, 2000, Regatta obtained an appraisal valuing the property at $2,420,000, significantly less than the secured amount of the loan insured by HUD. DPFUF 27. HUD filed its proof of claim on February 21, 2001, in the principal amount of $3,057,712.44, together with accrued and unpaid interest as of the filing date in the amount of $5,096.19, for a total claim of $3,062,808.63. DPFUF 29.

The United States filed a motion seeking relief from the automatic stay to permit it to foreclose upon the property. DPFUF 30. During the bankruptcy proceedings, Regatta stipulated "[t]he United States has a valid, allowed first priority secured claim against all of Debtor's real and personal property, including, without limitation, all rents, profits and proceeds of the property in the total amount of $3,062,808.63. DPFUF 31. Regatta likewise stipulated that the property had "an 'As Is' Fair Market Value of $2,360,000," and that Regatta had "no equity in its property." DPFUF 32.

On April 25, 2001, the bankruptcy court granted the Government's motion and lifted the automatic stay provisions of

Bankruptcy Code, Section 362(a) "to permit the United States to foreclose upon the Debtor's real property." DPFUF 33; 11 U.S.C. § 362(a). HUD served Regatta with a notice of intent to foreclose on May 22, 2001, reflecting "the mortgage on Regatta Apartments is in default because payments due for the months of July 1, 2000, through May 1, 2001, have not been made". DPFUF 35. On June 12, 2001, Regatta submitted a written response which did not deny that Regatta had failed to submit mortgage payments on the property since July 1, 2000. DPFUF 36.

On June 20, 2001, HUD notified Regatta of its intention to proceed with foreclosure because Regatta had failed to present any legal reasons as to why HUD should not so proceed. DPFUF 38. On or about October 31, 2001, HUD served Regatta with a notice of default and foreclosure sale. DPFUF 40.

HUD's basis for the foreclosure, as set forth in the notice, was stated as follows:

> WHEREAS, a default has been made in the covenants and conditions of the Deed of Trust in that the payment due on July 1, 2000 was not made and remains wholly unpaid as of the date of this notice, and no payment has been made sufficient to restore the loan to currency.

Id.

On December 4, 2001, HUD conducted the foreclosure sale pursuant to the MMFA, 12 U.S.C. § 3701, and accepted a winning bid of $3,600,000 – more than the amount of debt owed on the

deed of trust note. DPFUF 41. After deducting costs and fees, HUD paid $155,091.57 to Regatta. DPFUF 42.

## SUMMARY OF THE ARGUMENT

Summary judgment is appropriate because Regatta is not entitled to relief as a matter of law. Regatta has couched its complaint in terms of a violation of the regulatory agreement. Regatta's complaint confuses actions that were taken by the lender and HUD pursuant to the note and deed of trust with Regatta and the various violations by Regatta and its general partner of the regulatory agreement concerning use of property funds and upkeep of the property. HUD's request that the lender accelerate the mortgage and the subsequent foreclosure on the property were pursuant to the deed of trust, and Regatta's violation of the deed of trust, not the regulatory agreement. Accordingly, Regatta's unlawful foreclosure claim does not properly arise out of, or depend upon, any alleged breach of the regulatory agreement.

Several of Regatta's tortious breach of contract claims should be dismissed for lack of jurisdiction, as the Tucker Act does not grant this Court jurisdiction to consider claims sounding in tort. Assuming for the sake of argument that HUD somehow acted improperly with regard to the foreclosure, this Court has long held that careless performance of a duty is a claim sounding in tort. Thus, this Court lacks jurisdiction to

consider Regatta's "wrongful foreclosure" claim. Relevant case law likewise establishes that the court lacks jurisdiction to consider plaintiff's claims for tortious interference with contractual relations and tortious breach of fiduciary duty. Even assuming that jurisdiction exists to consider these tort claims, the Government is entitled to summary judgment upon these claims as a matter of law. Regarding Regatta's fourth tort claim - alleged breach of covenant of good faith and fair dealing - Regatta's complaint fails completely to allege sufficient facts to establish a prima facie case.

Regatta's request for declaratory relief likewise should be dismissed as the complaint fails to set forth any legitimate monetary claim that would provide a sufficient basis upon which to grant such relief. The Government likewise is entitled to summary judgment upon Regatta's takings claim. Regatta's takings theory is based upon HUD's alleged denial of Regatta's "rights to insurance" pursuant to the regulatory agreement. Remedies for alleged infringement of any rights established contractually generally lie in contract, not the Fifth Amendment. Moreover, for Regatta to maintain an action based upon a Fifth Amendment taking, Regatta must concede the validity of the Government action. Regatta's complaint maintains that the Government action here was illegal.

ARGUMENT

I. Summary Judgment Is Appropriate Here

Defendant is entitled to summary judgment. Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed "to secure the just, speedy and inexpensive determination of every action."'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

As the court of appeals emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' — that is, pointing out to the [Court of Federal Claims] — that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Id. As we discuss below, the Government is entitled to summary judgment as there is no dispute as to any material fact regarding HUD's foreclosure resulting from Regatta's default upon its obligation to make payments pursuant to the note and deed of trust.

## II. Regatta's Unlawful Foreclosure Claim Does Not Properly Arise Out Of Or Depend Upon Any Alleged Breach Of The Regulatory Agreement

Regatta has couched its complaint in terms of a violation of the regulatory agreement. For example, in count I, Regatta alleges that "HUD anticipatorily repudiated and breached the Regulatory Agreement." Comp. ¶ 30. Indeed, much of Regatta's complaint challenges the propriety of HUD's determination that Regatta had improperly withdrawn certain monies in violation of the regulatory agreement. Comp. ¶¶ 31, 40, 45, 54-57, 64-65.

Based upon these alleged violations of the regulatory agreement, Regatta avers that HUD improperly foreclosed upon the property in violation of the regulatory agreement. Comp. ¶¶ 31-32, 34, 41, 46, 51, 61, 65. For example, Regatta alleges that, "[a]t the time the power of sale was exercised and the foreclosure occurred based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement which would have authorized the foreclosure or

exercise of the power of sale." Comp. ¶ 35. Likewise, Regatta alleges that "HUD knew or should have known that at the time the power of sale was exercised and the foreclosure occurred, based upon the alleged default of the Regulatory Agreement, no material breach of condition or failure of performance existed on Regatta Bay's part of the Regulatory Agreement." Comp. ¶ 41.

Regatta's complaint confuses violations of the regulatory agreement (improper use of property funds and improper upkeep of the property actions) with actions taken by the lender and HUD pursuant to the deed of trust note and the deed of trust to foreclose upon the property. HUD's request that the lender accelerate the mortgage, and HUD's subsequent foreclosure on the property, were made pursuant to the deed of trust note and deed of trust, not the regulatory agreement.

The regulatory agreement governed the operation of the property. DPFUF 9; see 12 U.S.C. § 1715b; 24 C.F.R. § 200.105. For example, the regulatory agreement restricted the owner's use of property funds. DPFUF 10. The deed of trust governed the mortgage. For example, the deed of trust allowed the Government to seek foreclosure upon a failure of Regatta to make promptly all payments due under the note.

In requesting acceleration of the loan, and ultimately foreclosing upon the property, the Government acted fully within its rights pursuant to the deed of trust note and deed of trust,

completely separate and apart from any terms of the regulatory agreement. Regatta's attempt to base its claim upon alleged violations of the regulatory agreement should be rejected.

The documentary record reflects that acceleration of the mortgage and foreclosure upon the property were initiated pursuant to Regatta's breach of the deed of trust, based upon Regatta's failure to make timely payments pursuant to the deed of trust note. The deed of trust note provided, in part, as follows:

> If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next installment, the entire principal sum and accrued interest shall at once become due and payable with out notice at the option of the holder of this Note.

DPFUF 7.

The deed of trust provided that "[t]he Grantor will pay the Note at the time and in the manner provided." DPFUF 8. The deed of trust likewise provided that the beneficiary of the deed of trust could sell the property in payment of the debt "[u]pon any default made in the payment of any installment of principal and/or interest under said Note or payment of any monthly sum as hereby provided . . . not made good prior to the due date of the next such payment." Id.

The record further reflects that, subsequent to Regatta's failure to submit its monthly mortgage payments to Reilly, HUD

notified Reilly that "the subject Deed of Trust Note is delinquent and owing for the months of June 1, 2000, and July 1, 2000" and that Regatta "has violated the terms of the HUD-insured Deed of Trust Note and Deed of Trust." DPFUF 16 (emphasis added); see also DPFUF 20. Thereafter, by letter dated July 26, 2000, Reilly advised Regatta that it "has violated its contractual obligations under the Deed of Trust Note and Deed of Trust." DPFUF 18 (emphasis added).

On May 22, 2001, HUD served Regatta with a notice of intent to foreclose "because payments due for the months of July 1, 2000, through May 1, 2001, have not been made." DPFUF 35. On October 31, 2001, HUD served Regatta with a notice of default and foreclosure sale (December 4, 2001), the basis for the foreclosure being "a default . . . in the covenants and conditions of the Deed of Trust." DPFUF 40 (emphasis added).

At the time HUD provided Regatta with its May 22, 2001, notice of intent to foreclose, Regatta was eleven months in arrears. DPFUF 35. At the time HUD provided Regatta with its October 31, 2001, notice of default and foreclosure sale, Regatta had not submitted a mortgage payment in sixteen months. DPFUF 14. There can be no legitimate dispute that Regatta was in default of the deed of trust at the time of foreclosure.

HUD's authority to foreclose, as discussed above, stems from Federal statutes and the four corners of the deed of trust

and deed of trust note. Section 3701(b) of title 12, United States Code, provides the Secretary of HUD with a "uniform Federal foreclosure remedy for multifamily mortgage." 12 U.S.C. § 3701(b). Section 3703 provides that "multifamily mortgages held by the Secretary [of HUD] . . . may be foreclosed by the Secretary in accordance with this chapter." 12 U.S.C. § 3703. The procedures for foreclosure and sale pursuant to MMFA are set forth in 24 C.F.R. §§ 27.1 et seq. ("Non-Judicial Foreclosure of Multifamily Mortgages"); see also section 207k of the NHA, 12 U.S.C. § 1713(k).

There is no legitimate dispute that the United States was entitled to foreclosure. In the context of foreclosure proceedings, "[s]ummary judgment is appropriate . . . if (1) default on the mortgage covering [default] has occurred; (2) under the mortgage the plaintiff [lender] is entitled to foreclosure; and (3) the defendant [owner] has no valid or meritorious defense as a matter of law." United States v. Wennick, 645 F. Supp. 103, 105 (D. De. 1986). "After a default the sole situation presented is one of remedies." United States v. OCCI Company, 758 F.2d 1160 (7th Cir. 1985); United States v. Victory Highway Village, Inc., 662 F.2d 488 (8th Cir. 1981); United States v. View Crest Gardens Apts. Inc, 268 F.2d 380, 383 (9th Cir. 1959).

The documentary evidence presented here speaks for itself and is not refuted. Regatta can present no evidence to support its claim that HUD initiated a wrongful foreclosure pursuant to the regulatory agreement or based upon Regatta's improper use of project funds. Regatta can present no evidence that HUD based its decision to foreclose upon alleged financial improprieties in violation of the regulatory agreement. Regatta's claims are pure speculation and without evidentiary support.

Finally, we note that, when presented the opportunity to challenge HUD's decision administratively, Regatta did not provide any legal basis to challenge HUD's decision to foreclose upon the property. DPFUF 36. Specifically, when HUD served Regatta with the notice of intent to foreclose on May 22, 2001, HUD advised Regatta that it had "an opportunity to show reasons why foreclosure should not take place." DPFUF 35. Regatta's written response did not dispute the existence of the financial default, which had existed for nearly a year, nor did it set forth any other legal reason why HUD should not proceed with the foreclosure. DPFUF 36-37.

Indeed, Regatta's response expressed no interest in Regatta's even retaining the property. DPFUF 36-37. This is consistent with Regatta's statement, approximately one year earlier, that it did not believe that retaining ownership of the

property was a "viable solution." DPFUF 13.[4] By failing to administratively challenge in any meaningful way HUD's decision to foreclose, Regatta waived its right to challenge HUD's actions now. See Millmaster Int'l, Inc. v. United States, 427 F.2d 811, 814 (C.C.P.A. 1970) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (waiver is "an intentional relinquishment or abandonment of a known right or privilege").

III. The Government Is Entitled To Judgment Upon Regatta's Breach Of Contract Claim

According to count I of the complaint, HUD "breached the Regulatory Agreement by failing to insure the loan as promised under the Regulatory Agreement." Comp. ¶ 31. Regatta also alleges that HUD "falsely" and "wrongfully" declared Regatta to be in default of Regulatory Agreement." Id. Regatta's arguments should be rejected.

With regards to the allegation that HUD failed to insure the loan, presumably Regatta's allegation is based upon acceleration of the mortgage by Reilly, and Reilly's election to assign the mortgage to HUD in exchange for insurance benefits.

[4] This is likewise consistent with Regatta's admission two months earlier that it had no equity in the property and its decision to dismiss its bankruptcy case with prejudice. DPFUF 32, 39. It also is consistent with an agreement entered by the parties. DPFUF 41. HUD agreed to authorize sale of the property to a third party suggested by Regatta if certain monies were paid to HUD prior to the foreclosure date. Ultimately, the third party suggested by Regatta apparently was unwilling or unable to abide by the terms that had been negotiated by Regatta.

DPFUF 18, 23. As discussed above, acceleration of the mortgage and assignment of the mortgage to HUD were taken pursuant to the deed of trust note and deed of trust which were entered into between the lender and Regatta. As we discuss below, at the time those actions were taken, there was no privity of contract between HUD and Regatta under the deed of trust.

Assuming for the sake of argument that HUD had a duty to insure, any such duty extended only to Reilly as the lender and not to Regatta as the borrower. See 12 U.S.C. § 1715(b) (authorizing HUD, upon application by the mortgagee, to insure a mortgage); see, e.g., United States v. Neustadt, 366 U.S. 696, 709 (1961) ("the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees and that there is no legal relationship between the FHA and the individual mortgagor"). Thus, Regatta lacks standing to assert such a duty. Anderson v. United States, 344 F.3d 1343, 1351 (Fed. Cir. 2003) ("To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States").

In Cienega Gardens v. United States, 194 F.3d 1231 (Fed. Cir. 1998), the Court of Appeals for the Federal Circuit recognized the importance of the distinction, in the context of HUD-insured mortgages, between claims brought pursuant to a regulatory agreement and claims brought pursuant to a deed of

trust. In deciding that privity of contract did not exist between owners of HUD-insured properties and the Government with respect to prepayment of mortgage loans, the court held:

> Although there was a contract – the regulatory agreement – between each of the Owners and HUD, the Owners' claims are based on the prepayment terms in the deed of trust notes and the attached riders. HUD and the owners had no contractual relationship with respect to prepayment rights, and HUD's involvement in the contracts between the private lending institutions and the Owners could not create such a contractual relationship.

194 F.3d at 1245.

In Cienega, the terms governing prepayment of mortgage loans were set forth in the deed of trust, not the regulatory agreement. 194 F.3d at 1242. The court explained that: "[t]he only document that addressed prepayment was the deed of trust note, with its attached Rider A. However, the agreement represented by each deed of trust note was between the relevant Owner and its private lending institute." Id. The court likewise stated that "[a]lthough HUD did provide its insurance endorsement, it was not expressly made a party to any deed of trust note or its attached Rider A." Id.

To the extent Regatta is challenging Reilly's decision to accelerate the mortgage and assignment of the mortgage to HUD, those actions were taken pursuant to the deed of trust at a time when there was no privity of contract between HUD and Regatta

under the deed of trust. As such, Regatta's attempt to challenge them here should be rejected.

Regatta's allegations that HUD "falsely" and "wrongfully" declared Regatta to be in default of the regulatory agreement likewise should be rejected. Comp. ¶ 31. Regatta's allegations are based upon two letters from HUD to Regatta. Comp. ¶¶ 30-31. The first is a March 24, 2000 notice of violations and demand for corrective action. Comp. Ex. 4. The second is a August 29, 2000 notice of default. Comp. Ex. 5. Both documents outline Regatta's violation of the regulatory agreement prohibiting certain use or disposal of project funds and the requirement that the property be maintained in good repair and condition. Comp. Ex. 4-5.

As established above, Regatta's complaint misconstrues the instant foreclosure with the Government's statutory authority to enforce the regulatory agreement. HUD notified Regatta that it was in breach of paragraph 8 of the regulatory agreement and directed Regatta to take corrective action. Comp. Ex. 4. Both HUD's March 24 and August 29 letters address bookkeeping, repairs, and fiscal violations. Comp. Ex. 4-5. Both letters were triggered by HUD's enforcement authority set forth in 12 U.S.C. § 1715z-4a(a).

Regatta's apparent confusion is premised upon the mistaken claim that an alleged violation of the regulatory agreement

resulted in HUD seeking foreclosure of the property. Here, neither HUD's March 24, 2000 letter nor HUD's August 29, 2000 letter suggests or even assumes foreclosure.

Indeed, the August 29, 2000 letter advises Regatta "as an immediate effect of the default, the Department intends to take other enforcement action which may include, but not be limited to, the imposition of other administrative and/or civil sanctions as determined appropriate by the Department." Comp. Ex. 5. These two letters reflect HUD's notice of default of the regulatory agreement. 12 U.S.C. § 1715z-4a(c).

HUD requested the United States Attorney for the District of Nevada file a civil action in district court against Regatta or its general partner for alleged violations regarding project funds. DPFUF 26.; see Presidential Gardens Assocs. v. U.S. Department of Housing and Urban Development, 175 F.3d 132, 136, (2nd Cir. 1999) (It is the Attorney General, and not the Secretary of HUD, who has the exclusive authority to authorize the initiation of proceedings under 12 U.S.C. § 1715z-4a(b). HUD's request to the United States Attorney did not involve, nor seek, foreclosure upon the property. A 86-88. Ultimately, the United States Attorney did not file any action pursuant Regatta or its general partner pursuant to section 1715z-4a(b).

While we dispute Regatta's allegation that HUD's letters were a "breach" of the regulatory agreement, assuming for the

sake of argument that HUD somehow breached the regulatory agreement by issuing to Regatta the March 24 and August 29 letters, Regatta can demonstrate no prejudice or harm. First, it is undisputed that no civil action pursuant to 12 U.S.C. § 1715z-4a, or any other judicial or administrative action, ever was filed taken against plaintiff involving the property that is the subject of this case. Second, as reflected in the settlement letter attached to plaintiff's complaint, Regatta did not make any payments to HUD in response to either letter. Comp. Ex. 6. Third, Regatta readily admitted during bankruptcy proceedings that it had no equity in the property and ultimately moved to dismiss its own bankruptcy case with prejudice. DPFUF 32, 39.

Ultimately, HUD foreclosed upon the property based upon Regatta's breach of the deed of trust. Regatta never was required to make any repayment to HUD. Indeed, subsequent to completion of the foreclosure, Regatta received approximately $155,000. DPFUF 42. Thus, Regatta can demonstrate no harm or prejudice from any alleged violation of the regulatory agreement by HUD.

Regatta's complaint contains no proper allegation of damages allegedly resulting from the alleged breach of the regulatory agreement. As such, the Government is entitled to summary judgment on this issue.

## IV. Plaintiff's Tortious Breach Of Contract Claims Should Be Dismissed

Regatta asserts the following tortious breach of contract claims: (1) wrongful foreclosure, Complaint ¶¶ 33-37; (2) breach of covenant of good faith and fair dealing, Complaint ¶¶ 38-42; (3) breach of fiduciary duty, Complaint ¶¶ 43-47; and (4) tortious interference with contractual relations or prospective business advantage, Complaint ¶¶ 48-52. As we discuss below, this Court lacks jurisdiction to consider plaintiff's claims of wrongful foreclosure, breach of fiduciary duty, and tortious interference with a contractual relationship. Defendant is entitled to summary judgment upon plaintiff's claim that the Government breached the covenant of good faith and fair dealing.

It is a well settled principle that the United States, as sovereign, is immune from suit, except to the extent that Congress otherwise consents. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed". United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act waives sovereign immunity for actions "founded either upon the Constitution, or any Act of Congress or any regulation of any executive department, or upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added).

Regatta alleges tortious action by the Government of "wrongful foreclosure." The Court lacks jurisdiction to consider this claim. As established above, HUD did not act improperly during the subject foreclosure. However, even assuming that HUD somehow acted improperly with regards to the foreclosure, this Court has long held that "the careless performance of a duty allegedly owed, are claims sounding in tort." Somali Development Bank v. United States, 205 Ct. Cl. 741, 749, 508 F.2d 817, 821 (1974); accord Smithson v. United States, 847 F.2d 791, 795 (Fed. Cir. 1988) ("any undue delay by [Farmers Home Administration] in making loan, or failure to provide alternative loans or loan servicing relief, is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction."); McCauley v. United States, 38 Fed. Cl. 250, 264 (1997) (dismissing allegations of misconduct and fraud by Government officials); DeRoo v. United States, 12 Cl. Ct. 356, 362 (1987) (dismissing claim that HUD officials negligently issued conditional commitment).

This court likewise lacks jurisdiction to consider plaintiff's claim of tortious interference with contractual relationship. Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533, 536 (1979); Cottrell v. United States, 42 Fed. Cl.

144, 149 (1998); Pinkston v. United States, 6 Cl. Ct. 263, 267 (1984). Indeed, pursuant to 28 U.S.C. § 2680(h), the Government specifically has not waived sovereign immunity to bring such tort claims against the United States. 28 U.S.C. § 2680(h).

Also, this Court lacks jurisdiction to consider tortious breach of fiduciary duty. Newby v. United States, 57 Fed. Cl. 283, 294 (2003). In Newby, this Court rejected a similar argument in the context of a HUD foreclosure, stating:

> the causes of action described by the plaintiff as a breach of fiduciary duty and a violation of the parties' supposed relationship of trust and confidence appear to the court to allege tortious behavior by government officials. Breach of fiduciary duty is generally classified as a tort. See, e.g., Regents of University of New Mexico v. Knight, 321 F.3d 1111, 1116 (Fed. Cir.2003) (classifying breach of fiduciary duty as a tort); Hoover Group, Inc. v. Custom Metalcraft, Inc., 84 F.3d 1408, 1411 (Fed. Cir.1996) (same). As a claim for review of tortious conduct, the plaintiff's allegations are beyond the scope of this court's jurisdiction.

57 Fed. Cl. at 294.

Assuming for the sake of argument that the Court possesses jurisdiction to consider Regatta's wrongful foreclosure claim, tortious breach of the covenant of good faith and fair dealing, and tortious breach of fiduciary duty, defendant is entitled to summary judgment on each of these claim. Each claim is based upon the allegation that HUD improperly foreclosed upon the property. Comp. ¶¶ 34, 35, 41, 46. As established above at

pages 11-17, the Government properly foreclosed upon the property.

We do not contest that the Court generally possesses jurisdiction to consider a breach of covenant of good faith and fair dealing. Southern California Edison v. United States, 58 Fed. Cl. 313, 325 (2003) ("[I]n every contract there exists an implied covenant of good faith and fair dealing"). However, Regatta's claim here should be dismissed as Regatta fails to set forth a prima facie case of such a breach.

As noted by the Court in Southern California, "[p]roving a breach of this covenant in a government contract is frequently difficult because of the presumption that a government employee performs his or her duties in good faith." Id. To state such a claim, "plaintiffs must allege facts which if proved would constitute malice or an intent to injure." Id. (quoting Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994)).

Here, Regatta fails to allege sufficient facts to establish a prima facie case. Indeed, facts contained in the complaint come nowhere near the "well nigh irrefragable proof" required to demonstrate "that the government had a specific intent to injure it." Industries v. United States, 905 F.2d 1518, 1521 (Fed. Cir. 1990); Caldwell & Santmyer, Inc. v. United States, 55 F.3d 1578,

1581 (Fed. Cir. 1995). As such, plaintiff's claim should be dismissed.

V. The Government Did Not Breach Any Statutory Duties Pursuant To The Multi-Family Mortgage Foreclosure Act

Regatta alleges that HUD foreclosed upon the "property without the existence [of] the prerequisites to foreclosure" of the MMFA, 12 U.S.C. §§ 3705-3708. Complaint ¶ 60. Regatta's allegation should be rejected.

"When a claim is not based upon breach of contract against the government, a plaintiff must assert a money-mandating provision of the Constitution, a statute, or regulation as a basis for jurisdiction in this court." Soeken v. United States, 47 Fed. Cl. 430, 433 (2000) (citing 28 U.S.C. § 1491(a)(1); Tippett v. United States, 185 F.3d 1250, 1255 (Fed. Cir. 1999)). Thus, plaintiff must point to an independent basis for its claim and "must demonstrate that the source of substantive law . . . relie[d] upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002 (1967).

None of the provisions of the MMFA cited by Regatta are money-mandating. See 12 U.S.C. § 3705 ("Prerequisites to foreclosure"); 12 U.S.C. § 3706 ("Notice of default and

foreclosure sale; condition and term of sale"); 12 U.S.C. § 3707 ("Commencement of foreclosure; powers and duties of foreclosure commissioner or substitute"); and 12 U.S.C. § 3708 ("Service of notice of default and foreclosure sale"). Each concerns only steps that must be taken prior to commencement of a foreclosure action. They do not mandate, in any way, the payment of money. As such, Regatta cannot successfully base its claim in this Court upon an alleged violation of these statutes.

We note that this Court has found one section of MMFA to be money-mandating. Kennedy Heights Apartments, Ltd. v. United States, 48 Fed. Cl. 574, 579 (2001) (finding 12 U.S.C. § 3712 money mandating). Regatta's complaint does not rely upon section 3712 of MMFA as a basis for its claim. That section establishes a set of priorities for payment of proceeds from the foreclosure. 12 U.S.C. § 3712. As such, it is irrelevant as to the alleged wrongful action suggested by plaintiff here, i.e., that HUD allegedly "undertook [the] foreclosure" and "wrongfully declared Regatta to be in breach." Indeed, Regatta does not claim that HUD somehow violated 12 U.S.C. § 3712. Ultimately HUD paid Regatta $155,091.57, the foreclosure proceeds pursuant to that provision. DPFUF 43. But Regatta does not allege that this amount was improperly calculated. As such, any attempted reliance upon this statute by Regatta should be rejected.

Regatta also alleges that "HUD wrongfully declared Regatta to be in breach and thereby failed to meet the prerequisites to foreclosure" pursuant to MMFA. Complaint ¶ 62. HUD complied with the requirements MMFA. The foreclosure was instituted by HUD pursuant to the deed of trust. As established above, Regatta did not, and cannot, properly challenge the propriety of the foreclosure.

VI. Regatta Is Not Entitled To Declaratory Judgment

Regatta requests this Court issue a declaratory judgment that certain of HUD's actions violated the regulatory agreement. For example, Regatta seeks "judgment declaring Regatta Bay's payments of $1,327,424.00 and charges of interest of $152,665,00 described in Mr. Malone's August 29, 2000 letter, not to be in violation of the Regulatory Agreement, including the course of performance between HUD and Regatta Bay since 1983." Complaint ¶ 55. What Regatta fails to note, however, is that, ultimately HUD never required the repayment of these amounts, and, ultimately, Regatta did not make such payments.

Thus, whether HUD somehow "breached" the regulatory agreement by exercising its rights under the agreement is at best moot as Regatta never actually abided by the request or repaid any amounts requested. While Regatta's complaint alleges that these alleged breaches "caused injury," Regatta's complaint

offers no description or explanation of the injury, monetary or otherwise.

With certain limited exceptions not applicable here, to invoke the court's jurisdiction, plaintiff must have a present claim for money damages. Testan, 424 U.S. at 397-99. This jurisdictional limitation is based upon the principle that the court's jurisdictional statutes generally do not grant the Court authority to issue injunctive or declaratory relief unless the relief is incident and subordinate to a monetary claim or otherwise is authorized by statute. United States v. King, 395 U.S. 1 (1969); see Wheeler v. United States, 11 F.3d 156, 159 (Fed. Cir. 1993) (Court of Federal Claims lacks jurisdiction to grant "equitable relief absent a 'concurrent colorable claim for monetary recovery'") (citing Bobula v. Department of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992)).[5] Here, Regatta has presented no legitimate monetary claim arising out of HUD's

[5] The exceptions to the money-damages jurisdictional limitation, none of which apply here, are (1) the statutory grant of the Court's authority pursuant to 28 U.S.C. § 1491(b)(1), "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," (2) certain non-monetary claims or disputes brought pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, and (3) declaratory judgments entered in connection with the tax-exempt status of organizations pursuant to 26 U.S.C. § 501(c)(3). 28 U.S.C. § 1507; 26 U.S.C. § 7428.

alleged breach of the regulatory agreement. As such, Regatta's request for declaratory relief should be dismissed.

VII. Defendant Is Entitled To Summary Judgment Upon Regatta's Takings Claim

Defendant likewise is entitled to summary judgment upon plaintiff's takings claim. The Takings Clause mandates "just compensation" when the Federal Government appropriates private property for "public use." U.S. Const. amend V; Bernaugh v. United States, 38 Fed. Cl. 538, 542 (1997), aff'd, 168 F.3d 1319 (Fed. Cir. 1998) (table). Before a party may recover compensation pursuant to the Fifth Amendment for a taking, under either a physical invasion (per se) or regulatory taking theory, it must establish a compensable property interest; i.e., a specific interest in physical or intellectual property. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014 (1992); Kaiser Aetna v. United States, 444 U.S. 164, 179-80 (1979).

The first issue for the Court to consider is whether plaintiff possessed any property interests for purposes of the Fifth Amendment. Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003) (court considers, first, nature of interest allegedly taken); Conti v. United States, 291 F.3d 1334, 1339 (Fed. Cir. 2002) (citing M&J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)(same)).

Here, the Government did not "take" plaintiff's property. Rather, according to Regatta, in actuality, its takings theory is based upon an alleged violation of a contract. According to Regatta, "HUD's denial of Regatta's rights to insurance under the Regulatory Agreement and to Regatta of its equitable rights in the subject property through HUD's pursuit of the wrongful declaration of default and foreclosure of the property constitutes a taking in violation of the Fifth Amendment." Complaint ¶ 65.

"This Court's predecessor has cautioned against commingling takings compensation and contract damages." Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001). "In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." Hughes Communications, 271 F.3d at 1070 (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978)); see J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969); Transpace Carriers, Inc. v. United States, 27 Fed. Cl. 269, 274 (1992); Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338-39 (1989).

That is, remedies for alleged infringement of any rights established contractually generally lie in contract, not the Fifth Amendment, as it is the terms of the contract that govern

the parties' respective rights and obligations. Sun Oil, 215 Ct. Cl. at 769-70, 572 F.2d at 818; see Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 703 n.27 (1949) (if there is a contract remedy, party cannot pursue takings claim in this Court); Sunrise Village Mobile Home Park, L.C. v. United States, 42 Fed. Cl. 392, 404 (1998) ("if the government's actions allegedly breached a contract, the appropriate remedy is a breach of contract claim, not a claim for compensation pursuant to the Takings Clause").

As noted by the Court, when a party alleges "an entitlement to compensation created by a contractual arrangement, any right to compensation depends entirely on the enforceability of that agreement." Howard v. United States, 31 Fed. Cl. 297, 315 n.14 (1994) (citing Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338- 39 (1989) (quoting Sun Oil, 215 Ct. Cl. at 770, 572 F.2d at 818). For the reasons discussed above, the regulatory agreement provides no basis upon which to grant Regatta any relief.

Moreover, for plaintiff to maintain an action based upon a Fifth Amendment taking, plaintiff "must concede the validity of the government action which is the basis of the taking claim." Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 803 (Fed. Cir. 1993) (citing Florida Rock Indus. Inc. v. United States, 791 F.2d 893, 899 (Fed. Cir. 1986)). This is because, for the

United States be held liable for taking by federal officers pursuant to fifth amendment and 28 U.S.C. § 1491, it is required that the acts of officers be authorized, expressly or by implication. Langenegger v. United States, 756 F.2d 1565, 1572 (Fed. Cir. 1985) (citing Regional Rail Reorganization Cases, 419 U.S. 104, 127 (1974)); Armijo v. United States, 229 Ct. Cl. 34, 37, 663 F.2d 90, 93 (1981); Landers v. United States, 39 Fed. Cl. 297, 302 (1997).

Here, plaintiff maintains that the Government's actions were unlawful, that is, that the Government breached the regulatory agreement. Any challenge to the propriety or lawfulness of a Government action sounds in tort, an action this Court does not possess jurisdiction to consider. Noel v. United States, 16 Cl. Ct. 166, 170 (1989) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 609, 372 F.2d 1002, 1010 (1967).

## CONCLUSION

For these reasons, defendant respectfully requests that the Court grant defendant's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:

GEOFFREY L. PATTON
LUC ODABASHIAN
Department of Housing
& Urban Development

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

January 14, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on January 14, 2005, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" and "APPENDIX, VOLUME NO. ONE," "APPENDIX, VOLUME NO. TWO," and "APPENDIX, VOLUME NO. THREE" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON