No. 04-1403C
(Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REGATTA BAY LTD.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

APPENDIX, VOLUME NO. TWO,
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

MARK A. MELNICK
Assistant Director

GEOFFREY L. PATTON
LUC ODABASHIAN
Department of Housing
& Urban Development

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

January 14, 2005

Attorneys for Defendant

# Index to Appendix


| | Page |
|---|---|
| Deed of Trust dated September 1, 1979 | 1 |
| Deed of Trust Note dated September 1, 1979 | 8 |
| Security Agreement dated September 30, 1979 | 10 |
| May 9, 2000, response by Regatta to notice of violation | 17 |
| July 19, 2000 instruction to accelerate mortgage | 20 |
| July 26, 2000 letter to Regatta from Reilly | 22 |
| August 2, 2000 letter to Reilly from HUD confirming HUD's July 19, 2000 notice | 23 |
| September 8, 2000 Regatta voluntary bankruptcy petition | 24 |
| September 11, 2000, email regarding Reilly election to assign the mortgage in exchange for insurance benefits | 28 |
| October 18, 2000, letter from Reilly to HUD acknowledging assignment of the mortgage | 32 |
| December 5, 2000 appraisal report (selected portions) | 33 |
| February 21, 2001 Regatta bankruptcy proof of claim | 48 |
| April 4, 2001 stipulation of facts | 51 |

Index to Appendix (Cont.)

Page

April 25, 2001 order granting relief from automatic stay . . . . . . . . . . . . . . . . . . . . . . . . . 53

May 7, 2001 final settlement of insurance benefits . . . . . . 55

May 17, 2001 Regatta motion to dismiss bankruptcy case . . . 57

May 22, 2001 notice of intent to foreclosure . . . . . . . . . 58

June 12, 2001, Regatta's written response to proposed foreclosure . . . . . . . . . . . . . . . . . . . . . . . 60

June 20, 2001 decision to proceed to foreclosure . . . . . . . 62

July 10, 2001 order granting Regatta's motion to dismiss bankruptcy petition . . . . . . . . . . . . . . . . 63

October 31, 2001 notice of default and foreclosure sale . . . . . . . . . . . . . . . . . . . . . . . . . 65

November 20, 2001 agreement . . . . . . . . . . . . . . . . . 69

January 25, 2002 deed . . . . . . . . . . . . . . . . . . . . 74

January 31, 2002 memorandum regarding statement of expenses and amount due Regatta . . . . . . . . . . . . . . . 78

November 4, 2003 MDDR report . . . . . . . . . . . . . . . . 82

December 18, 2003 Declaration of Janet L. Browder . . . . . . . 85

DorotheaChristopher@reilly.com on 03/12/2001 02:20:08 PM

To: gloria_j._burton@hud.gov, roger_p._balane@hud.gov
cc:
Subject: Election to Assign Approval

---------------------- Forwarded by Dorothea Culpepper/RMG on 03/12/2001 02:19 PM ---------------------------

mddr_help@hud.gov on 09/11/2000 07:30:28 AM

To: Dorothea Christopher/RMG@RMG
cc: cindy_w._bridges@hud.gov, gloria_j._burton@hud.gov

Subject: Election to Assign Approval

DOROTHEA CHRISTOPHER
REILLY MORTGAGE GROUP

SUBJECT: REGATTA APARTMENTS
FHA Project Number: 12535073
LAS VEGAS,NV

We received your election to assign to the Secretary the mortgage secured by the captioned project in exchange for mortgage insurance benefits.

Pending recording an assignment of the mortgage to the Secretary, you should take such actions as are necessary to protect the Secretary?s interest in the mortgage, including seeking and assuming mortgagee-in-possession status in case of abandonment, waste of assets, equity skimming or bankruptcy. Further, until recording the assignment of the mortgage naming the Secretary the new mortgagee, you should continue to bill for and accept all payments.

You can obtain the following: (i) Legal Instructions, (ii) form of assignment of related claims (Form 289), and (iii) model Assignment of Mortgage on HUD's Multifamily Delinquency and Default Reporting System (MDDR). This form of Assignment of Mortgage to the Secretary may be used without any further approvals. No insertions or deletions of any kind may be made to the form or assignment, except (i) modifications as are necessary to complete the missing information required to be inserted in

the appropriate spaces and (ii) modifications or additions required in order to comply with applicable state law, local law and/or the requirements of the applicable recording or filing office. The assignment of mortgage is to be recorded no later than 30 days from the date of this letter. Regarding Part A of the Legal Instructions, requiring that a copy of the proposed assignment of mortgage and assignment of chattel security instrument be submitted for prior approval, said requirement is waived. Regarding Part B of the Legal Instructions, stating that our counsel will confirm the date for recording of the assignment, said notice is no longer required. The model form of Assignment of Mortgage included herein is to be used to assign the mortgagee?s interest in the mortgage loan to the Secretary without prior review. The mortgagee will not receive any further approval to assign the mortgage to the Secretary.

Please read the Legal Instructions carefully. All Legal documents mentioned therein, except the telefax described in Part B, should be sent to the Multifamily Mortgage Division, ATTN: Millicent Potts, Esquire. In order to expedite our counsel?s review of the requirements upon recordation of the assignment and delivery of the documents by you in accordance with Part B of the Legal Instructions, all Legal correspondence should be addressed to Ms. Potts, Esquire. Also, please indicate the following at the top of the letter whenever you send these legal documents to our counsel: "CLAIMS CORRESPONDENCE - DIRECT TO REVIEWING ATTORNEY." Only claims correspondence should be addressed in this manner.

Also the Fiscal Instructions and forms are to be used in computing the Claim for Insurance Benefits and a listing of information which must be inlcuded in the telefax.

Please execute Form HUD-2537, Mortgagee?s Application for Partial Settlement, and return it immediately. Your attention is directed to Section 207.258(b)(1) of the HUD regulations which provides that on the date the assignment of mortgage is filed for record, the mortgagee shall notify the Secretary by telegram of such recordation. A telefax of the recordation is aceptable and should be sent to HUD?s Fax number (202) 619-8259. The telefax must be addressed to the Chief, Multifamily Claims Branch, at the address listed below and include all the data requested in Exhibit A.

Chief, Multifamily Claims Branch
Multifamily Financial Operations Division
Department of Housing and Urban Development
P.O. Box 44003
Washington, D.C. 20026

If any of the funds accumulated in the Reserve for Replacement Fund were invested in United States Government Bonds (limited to U.S. Treasury Bonds, Notes and Bills), such bonds must be

transferred to the Department of Housing and Urban Development. On the date of assignment, please contact A. Judy Hicks at the phone number listed below for transfer instructions.

If, however, the bonds held in the reserve are not in bearer form, they should be redeemed on assignment of the mortgage and the proceeds thereof placed in the fund. It is necessary that an accounting be furnished showing all transactions relating to the purchase and sale of bonds and all interest accruals.

If the mortgage is subject to a Debenture Lock Agreement, please forward a copy of the agreement with your Application for Partial Settlement (Form HUD-2537).

Inform the mortgagor that mortgage payments, after the mortgage has been assigned, must be sent to:

Multifamily Payment Processing Center
P.O. Box 70764
Chicago, IL 60673

The Department of Housing and Urban Development and the Department of Treasury use electronic funds transfer to pay multifamily claims payable in cash. If your claim is payable in cash, payment of $5,000 or more will be made through the Treasury Financial Communication System (TFCS). The TFCS provides on-line access to the Federal Reserve Communication System (FRCS). This enables payment to be made to financial institutions that do not have access to Federal Reserve Banks.

In order to make payments by TFCS to the holding mortgagee, complete the enclosed payment information form and return it to the Multifamily Claims Branch, with the Form HUD-2537 and/or Form HUD-2747.

Please note that no insurance benefits will be paid and debenture interest will be curtailed if TFCS information and other appropriate forms are not completed and returned within desginated time frames.

If additional Fiscal Forms are needed or if you have any questions concerning the Fiscal Instructions, please call A. Judy Hicks at (202) 708-3423, Extension 2812. If you have additional questions concerning the Legal Instructions, please call Millicent Potts at (202) 708-4090, Extension 5255.

Sincerely,

Kenneth Hannon
Supervisory Project Manager
Office of Portfolio
Management
Western Pacific Servicing
Branch

Exhibit A

Information that must be included on the Telefax for Assigned Mortgages

(1) Date of Default

(2) Unpaid Principal Balance

(3) Monthly Amount due for Principal and Interest, Tax Escrow and Reserve for Replacement (listed separately)

(4) Date and Amount of Last Taxes Paid

(5) Due Date of Next Taxes Payable

(6) Escrow Balance for Taxes, MIP, and Hazard Insurance

(7) Initial and Final Endorsment Dates

(8) Date of Commitment

(9) Your Telefax Number

(10) Mortgagor Name, Address and Tax Identification Number

(11) Mortagor Type of Entity (individual, partnership, corporation, etc.)

(12) Name and Address of Company Managing the Project

(13) For Section 1002 projects, state the unpaid principal balance as of the date of default and as of the date of assignment

(14) Is there a Debenture Lock Agreement involved with the mortgage? (yes/no)

Please note that Items 7 through 14 are new requirements

# REILLY MORTGAGE GROUP, INC.

2000 CORPORATE RIDGE, SUITE 925
McLEAN, VIRGINIA 22102
(703) 760-4700
Fax: (703) 760-4760
FINANCIAL SERVICES

October 18, 2000

Mr. Luc Odabashian
U.S. Department of Housing and Urban Development
Departmental Enforcement Center
Los Angles Satellite Office
611 West Sixth Street, Suite 3800
Los Angeles, CA 90017

DEPARTMENTAL
ENFORCEMENT CENTER
OCT 24 2000
LOS ANGELES

Re: Regatta Apartments
~~FHA Number 125-35073~~
Loan # 012535073

Dear Mr. Odabashian:

This is in response to your inquiry concerning the referenced project. Please be advised that the project has been assigned to the Secretary of Housing and Urban Development. The recordation date was October 6th.

Also, enclosed is a the account summary as of September 8, 2000. If we may be of any futher help do not hesitate to call.

Sincerely,

Sharon B. Lightner
Supervisor, FHA Servicing

# A Complete Appraisal, Self-Contained Report
of the Existing

## Regatta Bay Apartments
(A 120-Unit Development)

**Currently Owned**
by

**Regatta Bay Limited**

**Located**
at

**2101 Sandy Lane,**
**Las Vegas, Clark County, Nevada**

**Legally Described**
as a

**Portion of the South ½ of the Northwest ¼**
**of Section 19, Township 20 South, Range 62 East, M.D.B.&M.**

**For the Purpose of**
**Developing an Opinion of the "As Is" Market Value**
**as of**

**December 5, 2000**

**Date of Appraisal Report**

**December 6, 2000**

**File Number**
**379-00-GA**

December 6, 2000

Mr. Paul C. Ray, Esq.
John Peter Lee Limited
Attorneys at Law
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101

**File No. 379-00-GA**
**Tax ID #88-0121119**

Dear Mr. Ray:

In compliance with your request and authorization, we have inspected the property which can commonly be identified as the Regatta Bay Apartment Complex, generally located at 2101 Sandy Lane, Las Vegas, Clark County, Nevada, for the purpose of preparing the enclosed, complete appraisal, self-contained report. Briefly, the subject property was developed in 1980 and consists of a 120 unit apartment complex, consisting of one and two bedroom apartment configurations. The subject does not have frontage on a major arterial and has access off of an interior collector street. The subject has been developed to a relatively low density of approximately 15 units per acre, which has left a considerable amount of open space on the property, as will be identified later within this report. The subject site is located in zip code 89115 and Census Tract Number 4120-47.02. The subject can further be identified as Assessor's Parcel Number 140-19-202-001.

Based on the analysis of the data utilized within this complete appraisal, self-contained report, we have developed an opinion of the market value of the subject property, as of the effective date of the valuation, "As Is", as of December 5, 2000, at:

**Two Million Four Hundred Twenty Thousand Dollars**
**($2,420,000.00)**

This appraisal report has been prepared with the intent to comply with the Uniform Standards of Professional Appraisal Practice and the Code of Professional Ethics, as adopted by the Appraisal Institute and the Appraisal Foundation.

GARY H. KENT, INC.
*Real Estate Appraisers and Consultants*
2950 S. RANCHO DRIVE SUITE 200A, LAS VEGAS, NV 89102-0727
Phone (702) 876-9151 Fax (702) 876-9813
Website: WWW.GARYHKENT.COM E-mail: GARYKENT@VEGAS.INFI.NET

Mr. Paul C. Ray, Esq.
John Peter Lee Limited
December 6, 2000
Page Two

**File No. 379-00-GA**

This Letter of Transmittal must be used in conjunction with the following enclosed descriptive details, appraisal procedures and analysis and is therefore, not considered a report standing on its own merit.

Thank you for giving us the opportunity of appraising this property for you.

Sincerely,
**Gary H. Kent, Inc.**

Gary H. Kent, MAI
*Certified General Appraiser*
*Nevada License Nº 00039*
*Expiration Date: April 30, 2001*

Glenn M. Anderson, MAI, SRA
*Certified General Appraiser*
*Nevada License Nº 00555*
*Expiration Date: January 31, 2002*

GHK/GMA/ric

# Table of Contents


Title Page . . . . . . . . . . i
Letter of Transmittal . . . . . . . . . . ii
Table of Contents . . . . . . . . . . iii

Summary of Salient Facts . . . . . . . . . . 1
Purpose of the Appraisal . . . . . . . . . . 4
Definitions . . . . . . . . . . 4
Owner of Record & Three Year Sale History . . . . . . . . . . 6
Estimated Typical Marketing/Exposure Time . . . . . . . . . . 6
Scope of Work . . . . . . . . . . 7
Area and City Location Map . . . . . . . . . . 10
Area and City Data . . . . . . . . . . 11
Quarterly Economic Indicators . . . . . . . . . . 28
Neighborhood Map Location . . . . . . . . . . 41
Neighborhood Description . . . . . . . . . . 42
Subject Photographs . . . . . . . . . . 45
Assessor's Parcel Map . . . . . . . . . . 53
Description of Subject Property Site . . . . . . . . . . 54
Description of Subject Improvements . . . . . . . . . . 61
Highest and Best Use Analysis . . . . . . . . . . 65
Valuation Process . . . . . . . . . . 78
Income Capitalization Approach to Value . . . . . . . . . . 79
Rental Comparable Location Map . . . . . . . . . . 81
Rental Photographs . . . . . . . . . . 82
Rental Comparable Analysis . . . . . . . . . . 86
Income Capitalization Approach to Value Summary . . . . . . . . . . 102
Sales Comparison Approach to Value . . . . . . . . . . 103
Improved Sales Chart . . . . . . . . . . 104
Improved Sales Location Map . . . . . . . . . . 105
Sales Discussion . . . . . . . . . . 113
Sales Comparison Approach - Summarized . . . . . . . . . . 117
Reconciliation . . . . . . . . . . 118
Assumptions and Limiting Conditions . . . . . . . . . . 120
Certification of Value . . . . . . . . . . 123

**Addenda**
Appraiser's Qualifications
R-3 Zoning Code - Clark County
Rent Roll
Income and Expense Statements
Reduced Plans

## Summary of Salient Facts

### Property Location:

The subject property is located at 2101 Sandy Lane, Las Vegas, Clark County, Nevada. This is a location in zip code 89115 and the property can further be identified as Assessor's Parcel Number is 140-19-202-001.

### Highest and Best Use:

The current highest and best use of the subject, as improved, includes the existing apartment improvements, as few alternative developments are considered feasible at this location.

### Land Size:

According to Public Record information, the subject site contains 8.01 net acres.

### Existing Improvements:

Developed in 1980, the subject property consists of two story, frame and stucco multiple residence buildings. The apartment configurations include one and two bedroom apartments, generally in eight plex buildings arranged conveniently around the property, near asphalt paved parking. Specifically, the unit mix and total building area summary can be summarized as follows:

| Unit Mix/Total Building Area Summary | | | |
|---|---|---|---|
| **No. of Units** | **Unit Type** | **Sq.Ft. Size** | **Total Rentable Sq.Ft.** |
| 24 | One Bedroom/One Bathroom | 677 | 16,248 |
| 96 | Two Bedroom/One Bathroom | 806.5 | 77,424 |
| **Net Rentable Area** | | | **93,672** |
| Plus: | Office/Laundry Building<br>Storage Rooms | | 1,784<br>2,856 |
| **Gross Building Area** | | | **98,312** |

As will be discussed in the Description of the Improvements section of this report, some disrepair or deferred maintenance is noted on the property. Specifically, according to the managing partner and onsite maintenance personnel, five apartment units are currently not available for rent, as these have been "stripped", of cabinets, appliances and other items which have been salvaged from these units to complete repairs of other units onsite. Other units inspected were generally in rentable condition; however, deferred maintenance was noted on some units and generally around the subject property. From inspection, the existing pool has been drained and repairs are necessary on that facility. Lighting fixtures around the property are damaged and the landscaping also requires significant upgrades. The parking lot requires resealing and patching and a wide range of other items are considered necessary in the form of deferred maintenance at the present time. This will be further discussed in the context of this report.

**Effective Date of Report:**

December 6, 2000.

**Effective Date of Valuation "As Is" (Last Date of Inspection):**

December 5, 2000

**Property Rights Appraised:**

Fee Simple Ownership.

**Market Value Approach Indications:**

| | |
|---|---|
| **Cost Approach** .................... | **Not Applicable** |
| **Income Capitalization Approach** .......... | **$2,420,000.00** |
| **Sales Comparison Approach** .............. | **$2,560,000.00** |

**Market Value Estimate(s):**

We have developed an opinion of the market value of the subject property, as of the effective date of the valuation, in fee simple ownership, at:

**$2,420,000.00**

## Purpose of the Appraisal

The purpose of this appraisal report is to develop an opinion of the "As Is" market value of the subject property, in the property's "As Is" condition, as of the effective date of the valuation. The market value opinion is based on the assumption the subject property is free and clear of all liens and encumbrances, aside from normal and typical market financing. We have based our market value opinion also on the current "As Is" condition of the property, as deferred maintenance currently exists. We have not attempted to estimate rehabilitation costs but instead, have analyzed the effect of the condition and location on the current income stream.

The function of this report may serve for a variety of purposes, but primary to assist in litigation relative to a current bankruptcy.

## Definitions

### Market Value, Defined:

The following definition of market value is used by agencies that regulate federal financial institutions in the United States:

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- **buyer and seller are typically motivated;**
- **both parties are well informed or well advised, and acting in what they consider their own best interests;**
- **a reasonable time is allowed for exposure in the open market;**
- **payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and**

- **the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.**

Source: Federal Register, vol. 55, no. 163, August 22, 1990, pp 34228 & 34229.

## Reasonable Marketing Time, Defined:

The reasonable marketing time is an estimate of the amount of time it might take to sell a property interest in real estate at the estimated market value level during the period immediately **after** the effective date of an appraisal.

## Reasonable Exposure Time, Defined:

The estimated length of time the property interest being appraised would have been offered on the market **prior** to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective estimate based upon an analysis of past events assuming a competitive and open market.

**Exposure time is always presumed to precede the effective date of the appraisal.**

As market conditions preceding the effective date of this valuation are anticipated to remain relatively stable, the presumed exposure time is considered similar to our estimate of 'marketing time.'

## Highest and Best Use, Defined:

The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. **The four criteria the highest and best use must meet are *legal permissibility*, *physical possibility*, *financial feasibility*, and *maximum profitability*.**

## Fee Simple Ownership, Defined:

The absolute ownership unencumbered by any other interest or estate subject only to the four powers of government.

## Owner of Record & Three Year Sale History

No arm's length transactions have occurred on the subject property over the course of the past three years from the date of the valuation. The current owner of record is identified as the Regatta Bay Limited. The appraisers are not aware of any pending sales, listings or offerings at the present time.

## Estimated Typical Marketing/Exposure Time

As will be outlined within this appraisal, as identified by general market information on the subject, as well as sales contained within the Sales Comparison Approach section of this report, a marketing time of 12 months is considered applicable for the subject property. Sales of apartments throughout the metropolitan area are generally occurring, based on a marketing and exposure times of approximately 12 months and this is considered applicable for the subject, assuming adequate representation and pricing, consistent with our opinion of market value opinion, as developed in this report.

## Scope of Work

Briefly, the subject property consists of a 120 unit apartment complex, developed in 1980. One and two bedroom apartment configurations exist and various forms of deferred maintenance were found from inspection. Specifically, a least five of the apartment units are not currently available for rent, due to the lack of appliances and other deficiencies in the units. This will be further described in the Description of the Improvements section of this report.

When estimating the market value of a property such as the subject, three approaches to value are given consideration; the Cost Approach, the Income Capitalization Approach and the Sales Comparison Approach. Only the Income Capitalization Approach and the Sales Comparison Approach have been used in the valuation of the subject property, as these are considered the most applicable techniques for this individual development.

The Cost Approach to Value is based on the principal of replacement, where a prospective investor may consider developing a similar property in a like location. This scenario is typically irrelevant when actual investors are seeking stable income streams for multiple residence apartment properties, such as the subject. Most investors of these types of properties, are not developers but instead, investors and operators seeking stable income streams. Furthermore, the age of the subject property and the general condition, would make the estimation of base cost factors and accurate estimates of depreciation, highly speculative. For these reasons, the Cost Approach is not considered applicable in the subject's case and has not been used in the valuation of the subject.

The Income Capitalization Approach is given the greatest weight towards the final estimate of value. Prospective investors of income producing properties, such as the subject, are most interested in the income production potential of the property, as opposed to the physical attributes of the development. The Income Capitalization Approach involves the conversion of net operating income to value, using a market derived capitalization rate. The fist step in this process, is the estimation of the total potential gross income, which comes in primarily the form of rental revenue

from operations. Deductions are made for appropriate vacancy and credit loss, as well as expenses, which results in a net operating income. Vacancy, as well as appropriate expenses, are based on actual historical operations, as income and expense information was available for review and this information has been supported from the marketplace. As the Income Capitalization Approach is the most recognized valuation technique by most income property investors, the Income Capitalization Approach is given the greatest weight towards the final estimate of value.

The Sales Comparison Approach has also been utilized in the valuation of the subject. The Sales Comparison Approach is based on the principal of substitution, where a prospective investor would consider acquiring a similar property in a like location. Due to the unique characteristics of the subject, with respect to income production potential, the Sales Comparison Approach is given only secondary and supportive weight towards the final estimate. Truly like for like sales are limited in the marketplace, due to the current condition of the subject and the operations which have fallen below an economic level. Therefore, the Sales Comparison Approach does provide an indication of value; however, is given only secondary and supportive weight towards the final estimate.

In the final analysis, the Income Capitalization Approach is given the greatest weight towards the final estimate of value. Historical operations, as supported by market information, provides an indication that this analysis best emulates the attitudes of investors in the marketplace.

All of the information contained within this report, was obtained through a variety of sources; including various sources purchased by this office, a review of Public Record information, as well as primary research. All of the information has been confirmed with knowledgeable parties in the marketplace.

This appraisal report has been prepared as a complete appraisal, self-contained report, intended to comply with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice and the Code of Professional Ethics, as adopted by the Appraisal Institute and the Appraisal

Foundation. The date of the valuation is the same as the last date of the inspection, December 5, 2000.

The preceding pages would tend to indicate that apartment housing is an economically feasible use in the general market area, based on overall occupancies, moderately increasing rents and declining total construction, valleywide. However, as will be indicated in the Income Capitalization Approach section of this report, current operations at the subject property are considered sub-economic, with respect to current rents being commanded, occupancies, as well as total expenses. This, in our opinion, can be attributed primarily to the locational aspects of the property, the current condition and the amenities offered at the development.

Location is the primary influential factor. The subject property does not have direct frontage on Lake Mead Boulevard, which would provide advertising appeal and contribute to occupancy. Furthermore, no signage or other identifying characteristics were available, either at the site or providing direction for prospective occupants from Lake Mead Boulevard. The amenities on the site have fallen below economic levels and the existing amenities are in disrepair. Most new projects offer gated access and other security features. Furthermore, overall occupancy and average trends in rents, in the subject's submarket, are somewhat below other submarkets, valleywide. These characteristics combine, for a current sub-economic operation. Although locational characteristics cannot change, upgrading amenities, performing repairs, reconfiguring the property for security purposes and more advertising, would likely result in higher revenues and higher occupancies.

From a vacant standpoint, alternative uses at the site would be limited. A multifamily development, either for sale or for rent, is a reasonable and feasible use of this site; however, better management, including advertising, maintenance and maintaining consistent market appeal, with respect to changes and upgrades, is necessary. The subject property remains an economically feasible use of this site; however, changes are necessary.

## Highest and Best Use/Maximally Productive

In our opinion, the subject property as developed, remains the highest and best use of the property, from a vacant and form an improved standpoint. It would not be reasonable to assume any alternative uses feasible at this property, based on the location off of the major arterial and the overlying zoning code. With modest changes to the property, repairs, rehabilitation and more significant advertising, the subject property, in our opinion, could command economic rents and maintain economic occupancy.

Therefore, the subject property remains the highest and best use of the subject site, from a vacant and from an improved standpoint; however, some changes are deemed necessary for more profitable operations, as described.

B10 (Official Form 10)
(Rev. 7/95)

RECEIVED U.S. ATTORNEY'S
FEB 22 3 45 PM '01

| United States Bankruptcy Court District of Nevada | PROOF OF CLAIM |
|---|---|
| In re (Name of Debtor) Regatta Bay, LTD. | Case Number 00-16865 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor United States of America - U.S. Dep't. of Housing & Urban Development
(The person or other entity to whom the debtor owes money or property)

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and Address Where Notices Should be Sent

Seth B. Shapiro, Esq.
U.S. Department of Justice
P.O. Box 875 - Ben Franklin Station
Washington, D.C. 20044

Telephone No. (202)514-7164

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☒ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: ____

1. BASIS FOR CLAIM
☐ Goods sold
☐ Services performed
☒ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (Describe briefly) HUD insured note and deed of trust, assigned to HUD by Reilly Mortgage Group.
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number ____
Unpaid compensation for services performed from ____ (date) to ____ (date)

2. DATE DEBT WAS INCURRED
September 1979

3. IF COURT JUDGMENT, DATE OBTAINED:

4. CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.
CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM $ $2,420,000.00
Attach evidence of perfection of security interest
Brief Description of Collateral:
☒ Real Estate ☐ Motor Vehicle ☒ Other (Describe briefly) Rents/Personalty
Amount of arrearage and other charges at time case filed included in secured claim above, if any $ ____

☒ UNSECURED NONPRIORITY CLAIM $ 642,808.63
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM $ ____
Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4000),* earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan—11 U.S.C. § 507(a)(4)
☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use—11 U.S.C. § 507(a)(6)
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child—11 U.S.C. § 507(a)(7)
☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(8)
☐ Other—Specify applicable paragraph of 11 U.S.C. § 507(a) ____
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

5. TOTAL AMOUNT OF CLAIM AT THE TIME CASE FILED: $ 642,808.63 (Unsecured) $ 2,420,000.00 (Secured) $ ____ (Priority) $ 3,062,808.63 (Total)

☒ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. TIME-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| February 21, 2001 | SCOTT M. HUNLEY, DIRECTOR LASO DEC [signature] |

048

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

STATEMENT OF INDEBTEDNESS
AS OF 09/08/2000

(Date Run:)
(01/22/2001)

FHA: 125-35073
Mortgagor: REGATTA APARTMENTS PARTNERSHIP

| | |
|---|---|
| Unpaid Principal Balance | 3,057,712.44 |
| ~~Unpaid Accrued Mortgage Interest~~ | ~~5,096.19~~ |
| at 7.50000% per annum | |
| Unpaid Service Charge | 0.00 |
| Unpaid Other Charge | 0.00 |
| | 3,062,808.63 |
| ADD: | |
| Advances For Taxes | 0.00 |
| Interest on Tax Advances | 0.00 |
| at 7.50000% per annum | |
| Advances for Operating Property | 0.00 |
| Interest on Operating Advances | 0.00 |
| at 7.50000% per annum | |
| Advances for Foreclosure Cost | 0.00 |
| Interest on Foreclosure Advances | 0.00 |
| at 7.50000% per annum | |
| Current Month MIP Operating Advances | 0.00 |
| | 3,062,808.63 |
| LESS Funds Held By FHA: | |
| Tax Escrow | 0.00 |
| Replacement Reserve | 0.00 |
| Hazard Insurance | 0.00 |
| Other Escrow | 0.00 |
| Outside Deposits | 0.00 |
| | 3,062,808.63 |

Daily Interest Factor

| | Mortgage | Tax Advance | Operating Advance | Foreclosure Advance |
|---|---|---|---|---|
| RATE | 7.50000% | 7.50000% | 7.50000% | 7.50000% |
| 28 Day Month | 682.52510 | 0.00000 | 0.00000 | 0.00000 |
| 29 Day Month | 658.98975 | 0.00000 | 0.00000 | 0.00000 |
| 30 Day Month | 637.02342 | 0.00000 | 0.00000 | 0.00000 |
| 31 Day Month | 616.47428 | 0.00000 | 0.00000 | 0.00000 |

Monthly Service Charge in the amount of 1,266.41 will be due for each month thru 3/2001 after which the amount will change.

STATEMENT OF INDEBTEDNESS
AS OF 01/22/2001

(Date Run:)
(01/22/2001)

FHA: 125-35073
Mortgagor: REGATTA APARTMENTS PARTNERSHIP

| | |
|---|---|
| Unpaid Principal Balance | 3,057,712.44 |
| Unpaid Accrued Mortgage Interest at 7.50000% per annum | 147,337.33 |
| Unpaid Service Charge | 3,799.23 |
| Unpaid Other Charge | 975.87 |
| | 3,209,824.87 |
| ADD: | |
| Advances For Taxes | 8,065.00 |
| Interest on Tax Advances at 7.50000% per annum | 36.46 |
| Advances for Operating Property | 0.00 |
| Interest on Operating Advances at 7.50000% per annum | 0.00 |
| Advances for Foreclosure Cost | 0.00 |
| Interest on Foreclosure Advances at 7.50000% per annum | 0.00 |
| Current Month MIP Operating Advances | 0.00 |
| | 3,217,926.33 |
| LESS Funds Held By FHA: | |
| Tax Escrow | 0.00 |
| Replacement Reserve | 0.00 |
| Hazard Insurance | 0.00 |
| Other Escrow | 0.00 |
| Outside Deposits | 0.00 |
| | 3,217,926.33 |

Daily Interest Factor

| | Mortgage | Tax Advance | Operating Advance | Foreclosure Advance |
|---|---|---|---|---|
| RATE | 7.50000% | 7.50000% | 7.50000% | 7.50000% |
| 28 Day Month | 682.52510 | 1.65719 | 0.00000 | 0.00000 |
| 29 Day Month | 658.98975 | 1.65719 | 0.00000 | 0.00000 |
| 30 Day Month | 637.02342 | 1.65719 | 0.00000 | 0.00000 |
| 31 Day Month | 616.47428 | 1.65719 | 0.00000 | 0.00000 |

Monthly Service Charge in the amount of 1,266.41 will be due for each month thru 3/2001 after which the amount will change.

JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for the Debtor

RECEIVED AND FILED
2001 APR -4 AM 11:15
U.S. BANKRUPTCY COURT
PATRICIA GRAY, CLERK

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In Re:

REGATTA BAY, LTD., a Nevada limited partnership,

Debtor

604.021513 dp

Motion No. 84148-BL
Hearing Date: April 17, 2001
Hearing Time: 2:30p.m.

Case No.: BK-S-00-16865-LBR

Chapter 11

**STIPULATION OF FACTS PERTINENT TO MOTION AND SUPPORTING MEMORANDUM OF LAW BY THE UNITED STATES OF AMERICA FOR RELIEF FROM THE AUTOMATIC STAY**

The Debtor, Regatta Bay, Ltd., by and through its counsel, John Peter Lee, Ltd., and the Unites States of America, U.S. Department of Housing & Urban Development, represented by their counsel, the Civil Division, Department of Justice, stipulate to the following facts:

1. The Debtor owns a HUD-insured multifamily low and moderate income apartment complex located at 2101 Sandy Lane in Las Vegas, Nevada. The United States has a valid, allowed first priority secured claim against all of the Debtor's real and personal property, including, without limitation, all rents, profits and proceeds of the property in the total amount of $3,062,808.63. The allowed principal amount of the United States' claim is $3,057,712.44. The allowed amount of pre-petition interest on the United States claim is $5,096.19.

2. The Debtor's property has an "As Is" Fair Market Value of $2,360,000. (This amount represents the average of the Debtor's appraisal and the United States' appraisal.)

3. The Debtor has no equity in its property.

3.5. This Chapter 11 case is a "single asset real estate" case as defined in 11 U.S.C. §101(51B). PR

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

4. Based upon the fair market value of the Debtor's property, the United States' allowed secured claim against the Debtor's estate is $2,360,000 and the United States' allowed general unsecured claim is $702,808.44.

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
PAUL C. RAY, ESQ.
JAMIE J. RESCH, ESQ.
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 381-4044
*Attorneys for the Debtor*

UNITED STATES DEPARTMENT OF JUSTICE

J. CHRISTOPHER KOHN, ESQ.
TRACY J. WHITAKER, ESQ.
SETH B. SHAPIRO, ESQ.
Civil Division, Department of Justice
P.O. Box 875, Franklin Station
Washington, D.C. 20044
(202) 514-7164
*Attorneys for the United States of America, U.S. Department of Housing and Urban Development*

IT IS SO ORDERED.

LINDA B. RIEGLE
United States Bankruptcy Judge
United States Bankruptcy Court for
the District of Nevada

Respectfully submitted,

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
*Attorneys for the Debtor*

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

ORIGINAL

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

2001 APR 25 AM 11:26

ENTERED APR 26 2001

In Re:

REGATTA BAY, LTD., a Nevada limited partnership

Debtor.

Case No. BK-S-00-16865-LBR

Chapter 11

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY TO THE UNITED STATED OF AMERICA TO FORECLOSE UPON DEBTOR'S PROPERTY**

WHEREAS, The United States of America, on behalf of the United States Department of Housing and Urban Development, ("the United States") has moved for relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) and (3) to allow the United States to foreclose upon the Debtor's property located at 2101 Sandy Lane in North Las Vegas, Nevada and

WHEREAS, after reviewing the motion by the United States, the Debtor's opposition to the motion, the Debtor's proposed plan of reorganization and disclosure statement, dated December 7, 2000, the stipulation of facts, filed April 4, 2001, the evidence and the arguments of counsel, this Court has determined that the United States is entitled to relief from the automatic stay pursuant to Bankruptcy Code Section 362(d)(2) and (3) for all the reasons stated in its decision at the hearing on the United



82

States' motion held on April 17, 2001 at 2:30p.m.;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the automatic stay imposed by 11 U.S.C. §362(a) is hereby vacated to permit the United States (i) to foreclose upon the Debtor's real and personal property and (ii) to exercise whatever other legal remedies are available to it under federal and state law incident to such foreclosure, and the successful purchaser may obtain possession.

BY THE COURT:

DATED THIS __ DAY OF APR 25 2001 2001

HONORABLE LINDA B. RIEGLE
CHIEF JUDGE-U.S. BANKRUPTCY COURT

APPROVED:

Paul C. Ray, Esq.
Law Offices of John Peter Lee, Ltd.
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702)382-4044
Attorneys for the Debtor-Regatta Bay, Ltd.

05/25/01 10:20 FAX 4366588 CANON-8566 ENFORCE 002

MAY - 7 2001

cc: HQFMN Courtright 6248 HQCGM Straub 3140
HQFMC Hanscomb 6250 DPSC(2 copies)
9KS Las Vegas, NV Wilson(Brown)
HQFMC Claim folder

HQFMC:Hanscomb:pbd:05/03/01:Dsk:125-35073

Mr. John F. Bartlett
Emmet, Marvin & Martin, LLP
1351 Washington Boulevard, 2nd Floor
Stamford, CT 06902

Dear Mr. Barlett:

SUBJECT: Project No. 125-35073
Regatta Apartments
Las Vegas, NV

The examination of the claim for insurance benefits has been completed and we are proceeding with final settlement. Claim settlement data has been forwarded to the Department of the Treasury for issuance of payment as indicated on the enclosed Mortgage Insurance Claim Settlement Statement (Form HUD 27427).

Your claim, filed in the amount of $3,020,197.60 has been settled in the amount of $3,020,197.60.

A Certificate of Claim is enclosed.

Very sincerely yours,

/s/

Gary G. Zimmerman
Chief
Multifamily Claims Branch

Enclosures

LAS VEGAS, NEVADA
RECEIVED

01

U S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
MULTIFAMILY HOUSING
MORTGAGE INSURANCE CLAIM SETTLEMENT STATEMENT AND VOUCHER

| | | | | |
|---|---|---|---|---|
| FHA NO<br>125-35073 | VOUCHER NO<br>8983A | REQUISITION NO | SCHEDULE NO<br>9238 | |
| LAST PAYMT DT<br>06/01/2000 | EFFECTIVE DT<br>07/01/2000 | MATURITY DT<br>/ / | SERIES | INTEREST RATE<br>0.08250 |
| DATE OF CONVEYANCE<br>/ / | DATE ASSIGNED<br>10/06/2000 | SETTLEMENT DT<br>04/30/2001 | SECTION<br>221d4 | FUND<br>GI |
| PROJECT NAME AND LOCATION<br>REGATTA APTS.<br>Las Vegas, NV | MORTGAGE NAME AND LOCATION<br>RIGGS NATIONAL BANK<br>808 17TH STREET NW WASHINGTON DC 20006 | | | |

| | | |
|---|---|---|
| Section I Gross Claim | | |
| a. Unpaid principal balance of the mortgage | | $3,057,712.44 |
| b. Unpaid balances of advances by mortgagee for:<br>1. Mortgage insurance premiums | $0.00 | |
| 2. Taxes ground rents, water rates, etc. | $0.00 | |
| 3. Insurance on the property | $6,987.72 | $6,987.72 |
| c. Reasonable expenses for completion and preservation of property | | $0.00 |
| d. Undisbursed mortgage proceeds remitted to FHA | | $0.00 |
| Total Mortgage Balance and Disbursements | | $3,064,700.16 |
| Deductions<br>e. Funds in Escrow<br>1. Mortgage Insurance Premiums | $0.00 | |
| 2. Taxes, ground rents water rates etc. | $0.00 | |
| 3. Hazard Insurance Premium | $0.00 | |
| 4. Reserve for replacements | $13,925.44 | |
| 5. Other | $0.00 | $13,925.44 |
| f. Net income received from the property:<br>1. Total Collections (Schedule B) | $0.00 | |
| 2. Less: Operating Expenses (Schedule C) | $0.00 | $0.00 |
| g. Receipts from other sources after default date | | $0.00 |
| h. One percent of item (A) | | $30,577.12 |
| i. Other | | $0.00 |
| Total Deductions | | $44,502.56 |
| Net Claim | | $3,020,197.60 |
| Plus Interest on $2,751,900.00 — From 07/01/2000 — To 10/10/2000 — Rate 0.08250 | | $62,310.34 |
| Plus Interest on $268,297.60 — From 07/01/2000 — To 04/30/2001 — Rate 0.08250 | | $18,343.55 |
| Plus Interest on $0.00 — From / / — To / / — Rate 0.00000 | | $0.00 |
| ADJUSTED CLAIM | | $3,100,851.49 |
| Less Partial Settlement | | $2,814,210.34 |
| Less Offset-Project No | | $0.00 |
| Debentures | | $0.00 |
| Cash | | $286,641.15 |

| | |
|---|---|
| Section II Certificate Of Claim | |
| a. Amount due under the mortgage but not included for insurance benefits | $0.00 |
| b. Reasonable Attorney's Fees Paid | $0.00 |
| c. Interest Adjustment:<br>Mortgage Interest on $3,057,712.44 — From 06/01/2000 — To 10/06/2000 — Rate 0.07500 | $79,575.71 |
| Less Debenture Interest on $3,020,197.60 — From 07/01/2000 — To 10/06/2000 — Rate 0.08250 | $65,676.99 |
| Note: If mortgage interest is less than debenture interest the difference is set to 0 (Zero) — Difference: | $13,898.73 |
| Amount deducted under item H of Section I | $30,577.12 |
| CERTIFICATE OF CLAIM — DATE 10/06/2000 | $44,475.85 |

056

JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
*Attorneys for Debtor*

D

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>REGATTA BAY LIMITED<br><br>Debtor. | ) Case No. BK-S-00-16865-LBR<br>) Chapter 11<br>)<br>)<br>) DATE: June 19, 2001<br>) TIME: 9:30 a.m. |

604.021312.dp

**MOTION TO DISMISS CASE**

COMES NOW the Debtor, Regatta Bay Limited, by and through its counsel, John Peter Lee, Ltd. and files this Motion to Dismiss under 11 U.S.C. § 1112. This Motion is made and based upon the following Points and Authorities, all pleadings and papers on file herein and oral argument to be presented at the time of hearing.

Regatta Bay Limited requests the Court to enter an order dismissing this Chapter 11 case.

**POINTS AND AUTHORITIES**

The Debtor's major asset is the Regatta Bay Apartments located on Sandy Lane in North Las Vegas, Nevada. On April 25, 2001, the Court entered its Order Granting Relief From the Automatic Stay to the United States of America to Foreclose Upon Debtor's Property. The United States Department of Housing and Urban Development ("HUD") has indicated its intent to foreclose on the subject property. Because of the imminence of foreclosure and the expected loss of the Debtor's sole asset, the original purpose of filing the instant reorganization case no longer remains. The Debtor requests that the Court enter an order dismissing its case under 11 U.S.C. § 1112.

**CONCLUSION**

Regatta Bay Limited requests the Court to enter an order dismissing this Chapter 11 case.

DATED this 17th day of May, 2001.

JOHN PETER LEE, LTD.

[signature]

JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Blvd. So.
Las Vegas, NV 89101
(702) 382-4044
*Attorneys for Debtor*



JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
*Attorneys for Debtor*

D/C

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>REGATTA BAY LIMITED<br><br>Debtor. | ) Case No. BK-S-00-16865-LBR<br>) Chapter 11<br>)<br>)<br>) DATE: June 19, 2001<br>) TIME: 9:30 a.m. |

604.021313.dp

**NOTICE OF HEARING ON MOTION TO DISMISS CASE**

TO: ALL PARTIES IN INTEREST

NOTICE IS HEREBY GIVEN that a Motion to Dismiss Case was filed on May 15, 2001 by counsel for the Debtor pursuant to Bankruptcy Code § 1125 and, Fed.R.Bankr.P. 3016(b) and 2002(b). The Debtor seeks an entry of an order dismissing this Chapter 11 case.

Any objections must be served and filed in accordance with the Federal Rules of Bankruptcy Procedure and in compliance with local rules. If an objection is not timely filed and served, the relief requested may be granted without a hearing under Local Rule 9013(a)(1) and 9013(e)(1)(F) and (F).

NOTICE IS FURTHER GIVEN that the hearing on the Motion to Dismiss Case will be held before a United States Bankruptcy Judge, in the Foley Federal Building, 300 Las Vegas Boulevard South, Bankruptcy Courtroom No. 2, Las Vegas, Nevada on June 19, 2001 at the hour of 9:30 a.m.

////
////

Fax Shapiro

057

DATED this 17th day of May, 2001.

JOHN PETER LEE, LTD.

[signature]

JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard So.
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for the Debtor

**CERTIFICATE OF MAILING**

I hereby certify that a copy of the NOTICE OF HEARING ON MOTION TO DISMISS CASE in the above-entitled matter was mailed by me on May 17, 2001, by depositing a copy thereof in a sealed envelope, first-class postage prepaid, in the United States Mail, to the parties set forth on the attached Mailing Matrix.

[signature]

An employee of JOHN PETER LEE, LTD.



17 May 01

U.S. Department of Housing and Urban Development
Departmental Enforcement Center
Los Angeles Satellite Office
611 West Sixth Street, Suite 3800
Los Angeles, CA 90017

MAY 22 2001

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

DEPARTMENTAL
ENFORCEMENT CENTER
MAY 29 2001
LOS ANGELES

Regatta Bay, Ltd., a Nevada Limited Partnership
Attn: Mr. Phil R. Rosequist, General Partner
3401 W. Charleston Boulevard
Las Vegas, NV 89102

SUBJECT: Notice of Foreclosure
Project Name: Regatta Apartments
Project Number: FHA 125-35073

Dear Mr. Rosequist:

The U.S. Department of Housing and Urban Development (HUD) has determined that the mortgage on Regatta Apartments is in default because payments due for the months of July 1, 2000 through May 1, 2001 have not been made. Sufficient payments are not being made to cure the financial default. HUD's policy is that it will initiate foreclosure proceedings on mortgages in default and not under an approved reinstatement plan. By virtue of this default and your failure to submit an acceptable reinstatement plan, HUD declares the principal balance due and payable.

Before instituting foreclosure proceedings, however, HUD will provide you with an opportunity to show reasons why foreclosure should not take place. If you believe that no default exists, or if you know of some other reason why HUD should not foreclose, these reasons should be submitted in writing, in duplicate, within 21 days from the date you receive this letter. Where there are disputes of fact between you and HUD, your position should be supported with sworn affidavits from appropriate parties. Send all submissions to:

Alvin Braggs, Director
Property Disposition Center
801 Cherry Street, 27th Floor
P.O. Box 2905
Fort Worth, TX 76113-2905
(817) 978-5802

If you believe it would be beneficial, a meeting may be scheduled by written request to Alvin Braggs, at the above address, within seven (7) days of the date you receive this letter. All parties who have knowledge of the facts should attend the meeting. Although the meeting will be informal and no official transcript will be made, you may have an attorney present. The meeting will be held in the Fort Worth, Texas HUD office.

After consideration of the entire record, HUD will notify you of its decision either to proceed with or terminate foreclosure and will state the reasons for its decision. Under the provisions of the Title 24 Code of Federal Regulations, Part 27.25(b), the Commissioner may not withdraw the property from foreclosure more than once unless the Secretary consents, in writing, to such withdrawal.

If you do not request a meeting within seven days of the date you receive this letter, or do not submit a written statement as to why foreclosure should not take place, within 21 days of the date you receive this letter, we will proceed with foreclosure without further notice.

Sincerely,

Janet Browder
Director
San Francisco Multifamily Hub

cc: Alvin Braggs, Director
Property Disposition Center
801 Cherry Street, 27th Floor
P.O. Box 2905
Fort Worth, TX 76113-2905

Scott Hunley, Director
Departmental Enforcement Center
611 West Sixth Street, Suite 3800
Los Angeles, CA 90017

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
TELEPHONE
(702) 382-4044
TELECOPIER
(702) 383-9950
WEBSITE
www.vegasnet.net/~jpl

June 12, 2001

**Via Federal Express and**
**Certified Mail, Return Receipt Requested**

Mr. Alvin Braggs
Director of Property Disposition Center
801 Cherry Street, 27th Floor
P. O. Box 2905
Fort Worth, TX 76113-2905

Re: Regatta Apartments - Project No. FHA 125-35073

Dear Mr. Braggs:

This letter is in response to a letter from Janet Browder, Director, San Francisco Multi-Family Hub, dated May 22, 2001, which this office received on May 24, 2001. Pursuant to the instructions of Ms. Browder, this is to notify you that HUD should not foreclose on the subject property because of a number of miscommunications which have occurred in the instant case involving the inherently difficult task of communication and coordination of multiple offices located in San Francisco, Los Angeles and Washington, D.C. The Department of Justice has been instrumental in helping to coordinate any communications, but U.S. Department of Housing and Urban Development (HUD) has indicated a series of misunderstandings regarding the subject property.

Specifically, I am advised that HUD may incur some $4,800.00 per day in overhead expenses without addressing a proper, facilitated approach to maximizing HUD's recovery from the property such as Regatta Bay has repeatedly suggested. Because of a series of misunderstandings HUD appears to be pursuing, perhaps inadvertently, an ongoing policy of deterioration to this property with an unfortunate, however inadvertent, disregard for the effect upon the property and the tenants thereof through HUD's pursuit of a policy which fails to take into account the practical economic realities of this property. If HUD will reconsider its legal positions asserted to date and apply its policies of promoting the welfare of the tenants and the economic viability of the project consistent with HUD's own programs, rather than take a vindictive approach against Regatta Bay, Ltd. for its past involvement of a U.S. Senator to assist in the implementation of HUD's policies, HUD should find that opportunities abound which will bring a far more satisfactory economic treatment of this property than the present course which HUD has announced to be pursuing.



JAN.11.2005 15:42 213 894 4388 HUD ENFORCEMENT CENTER #3006 P.002/003

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW

Letter to A. Braggs
June 12, 2001
Page 2

Someone at HUD needs to break the bureaucratic inertia and authorize an economically feasible plan such as Regatta Bay, Ltd. has proposed for maximizing HUD's return on this property. For this reason, HUD should not foreclose, but should pursue its own correct policies of responsibilities to taxpayers and providing responsible management of the economics raised by the legal foreclosure of this property, as well as the legal issues raised by the economic issues of the foreclosure of this property.

Should HUD have an interest in addressing the economic and legal issues surrounding this foreclosure, please respond at your earliest convenience. Your cooperation will be appreciated.

Sincerely,

JOHN PETER LEE, LTD.

PAUL C. RAY, ESQ.

PCR/pp
604.021513
cc: Regatta Bay, Ltd.