IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REGATTA BAY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-1403C<br>(Judge Hodges) |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56, defendant, the United States, submits the following proposed findings of uncontroverted fact in support of our motion for summary judgment.

1. Plaintiff Regatta Bay Limited ("Regatta") was a Limited Partnership doing business in the State of Nevada. Comp. ¶ 3; Comp. Ex. 2.[1]

2. Regatta Bay Apartments ("the property") is a 120 unit, multi-family housing project located in Las Vegas, Nevada. Comp. ¶ 2.

3. Pursuant to the National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq., the Secretary of the Department of Housing and Urban Development ("HUD") is authorized to assist private industry in providing housing for low-and-moderate income families by insuring mortgages for the construction or

[1] "Comp. ¶ ___" refers to plaintiff's second amended complaint filed October 1, 2004. "Comp. Ex. ___" refers to exhibits attached to plaintiff's complaint. "A ___" refers to the appendix accompanying defendant's motion for summary judgment.

rehabilitation of existing multifamily housing projects which meet the eligibility requirements of 12 U.S.C. § 1713(c).

4. Section 221 of NHA, 12 U.S.C. § 1715, created several mortgage insurance programs "to assist private industry in providing housing for low and moderate income families and for displaced families." 12 U.S.C. § 1715.

5. The property was constructed with proceeds from a loan insured by HUD pursuant to section 221(d)(4) of NHA, 12 U.S.C. § 1715l(d)(4). HUD agreed to exculpate mortgagors from personal liability for repayment of the mortgage in return for the mortgagors' agreement to operate the multifamily project in accordance with the terms and conditions of regulatory agreement.

6. On or about October 28, 1983, Regatta acquired the property from the property's first owner, Regatta Apartments, a Nevada Limited Partnership. Comp. ¶ 3; Comp. Ex. 1. The property was subject to a deed of trust note and a deed of trust securing a deed of trust note for the original principal sum of $3,685,100.00. Id.

7. The deed of trust note provided, in part, as follows:

> If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this Note.

A 8.

8. The deed of trust provided that "[t]he Grantor will pay the Note at the time and in the manner provided." A 2. The deed of trust likewise provided that beneficiary of the deed of trust could sell the property in payment of the debt "[u]pon any default made in the payment of any installment of principal and/or interest under said Note or payment of any monthly sum as hereby provided . . . not made good prior to the due date of the next such payment." Id.

9. Regatta Apartments entered into a regulatory agreement with HUD dated September 1, 1979, the terms of which governed the operation of the property. Comp. Ex. 1; 12 U.S.C. § 1715b; 24 C.F.R. § 200.105.

10. The regulatory agreement restricted the owner's use of property funds. For example, paragraph 8 of the regulatory agreement prohibited the owner, without the prior approval of HUD, from making any distributions of assets or income except from surplus cash, as that term is defined in the regulatory agreement. Comp. Ex. 1.

11. HUD's Office of Multifamily Housing in San Francisco, California, referred the property to HUD’s Departmental Enforcement Center ("DEC") in Los Angeles, California, for review and evaluation of repeated withdrawals of property funds by Regatta's general partner, Phil Rosequist, when there was no surplus cash. Comp. Ex. 4; A 86.

12. On March 24, 2000, pursuant to the regulatory agreement, DEC issued a notice of violations and demand for corrective action, concerning the general partner's withdrawals and concerning physical deficiencies of the property. Comp. Ex. 4.

13. On May 9, 2000, Regatta responded to the notice of violation. A 17. The response "rejected" allegations contained in HUD's March 24, 2000, concerning Regatta's violation of the regulatory agreement. Id. However, the response did admit that "timing of the withdrawals was, perhaps, not appropriate, even if approved by HUD" and that "findings with respect to the conditions of the property have some validity." A 18. The response stated, in part:

> It has become clear to our client over the past year that retaining ownership is not a viable solution to the range of concerns which the department has expressed. Recently, with our counsel, the owner initiated action which is both is [sic] realistic and consistent with the Department's goals. More positively and more appropriately given the limited resources available to both HUD and the owner, it is our intention to work with the Las Vegas field office and California State Office in achieving a transfer of the property to a responsible community based non-profit organization.

Id.

14. Commencing July 1, 2000, and thereafter, Regatta failed to make its monthly payments to Reilly Mortgage Group ("Reilly"

or "mortgagee"), the holder of the HUD-insured note and deed of trust. A 82.

15. The monthly Multifamily Delinquency and Default Reporting System ("MDDR") provided notification to HUD from Reilly that the deed of trust note was delinquent and owing for the months of June 1, 2000, and July 1, 2000. Id.

16. On July 19, 2000, HUD informed Reilly that it had received Reilly's

> notice that the subject Deed of Trust Note is delinquent and owing for the months of June 1, 2000, and July 1, 2000. As a result, Regatta Bay Ltd., (Mortgagor), as successor to Regatta Apartments, has violated the terms of the HUD-insured Deed of Trust Note and Deed of Trust (the Mortgage), both of which are dated September 1, 1979 and held by Reilly as mortgagee.

A 20.

17. HUD instructed Reilly to accelerate payment of the outstanding principal balance due on the mortgage, pursuant to 24 C.F.R. § 207.257, upon the basis of Regatta's failure to make the mortgage payments. Id.

18. On July 26, 2000, Reilly advised Regatta that it had "violated its contractual obligations under the Deed of Trust Note and Deed of Trust" and that HUD had "exercised its rights to require the mortgagee to accelerate payment of the outstanding principal balance due on the Mortgage on the basis of this violation." A 22.

19. Subsequent to HUD's July 19, 2000 letter referenced in paragraph 16 above, Regatta submitted its June 1, 2000 payment, on or about July 31, 2000. A 84. This payment, for June 1, 2000, represented the last mortgage payment made by Regatta. A 82-84.

20. On August 2, 2000, HUD issued to Reilly a confirmation of its July 19, 2000 instructions to accelerate the mortgage based upon Regatta's failure to make its mortgage payments for the months of June 1, 2000, and July 1, 2000, in violation of the deed of trust note and deed of trust. A 23.

21. On August 29, 2000, HUD issued a notice of default of the regulatory agreement based upon Regatta's failure to adequately respond to HUD's Notice of Violations. Comp. Ex. 5. The August 29, 2000 letter made no reference to Regatta's failure to submit its monthly mortgage payments commencing July 1, 2000. Id.

22. On September 8, 2000, Regatta filed for Chapter 11 bankruptcy protection. A 24.

23. On or about September 11, 2000, Reilly submitted to HUD an election to assign the mortgage on the property in exchange for insurance benefits. A 28.

24. On October 6, 2000, the assignment of the mortgage from Reilly to HUD was recorded. A 32. Pursuant to the assignment, HUD acquired Reilly's position as holder of a first priority lien

against the property and the right to any rents generated from the property. A 8, 32.

25. On or about October 10, 2000, HUD made a partial payment to Reilly of the FHA insurance claim. A 56.

26. On November 28, 2000, HUD requested representation by the Department of Justice, Commercial Litigation Branch, to bring a civil action against Mr. Rosequist for diversion of at least $275,920 in property funds for breach of the regulatory agreement. A 86.

27. On December 6, 2000, Regatta obtained an appraisal valuing the property at $2,420,000. A 33.

28. December 7, 2000, Regatta issued its Chapter 11 Plan of Reorganization. A 53.

29. HUD filed its proof of claim in the bankruptcy court on February 21, 2001, in the principal amount of $3,057,712.44, together with accrued and unpaid interest as of the filing date in the amount of $5,096.19 for a total claim of $3,062,808.63. A 48.

30. The United States filed a motion seeking relief from the automatic stay to permit the United States to foreclose upon the mortgage. A 53.

31. On or about April 4, 2001, Regatta stipulated that "[t]he United States has a valid, allowed first priority secured claim against all of Debtor's real and personal property,

including, without limitation, all rents, profits and proceeds of the property in the total amount of $3,062,808.63. A 51.

32. On or about April 4, 2001, Regatta stipulated that the property had "an 'As Is' Fair Market Value of $2,360,000," and that Regatta had "no equity in its property." Id.

33. On April 25, 2001, the bankruptcy court issued an order granting the Government's motion for relief from the automatic stay "to permit the United States to foreclose upon the Debtor's real property." A 53; 11 U.S.C. § 362(a)

34. On or about May 7, 2001, HUD settled the insurance claim with Reilly. A 55.

35. HUD served Regatta with a notice of intent to foreclose on May 22, 2001, stating that "the mortgage on Regatta Apartments is in default because payments due for the months of July 1, 2000, through May 1, 2001, have not been made". A 58. The notice advised Regatta that it had "an opportunity to show reasons why foreclosure should not take place." Id.

36. On June 12, 2001, Regatta submitted a written response. A 60. In that letter, Regatta did not set forth any legal reason why HUD should not proceed with the foreclosure. A 60-61. Regatta's response did not deny that it had failed to submit mortgage payments on the property since July 1, 2000. Id.

37. The June 12, 2001 response stated, in part:

> This letter is in response to a letter from Janet Browder, Director, San Francisco Multi-

> Family Hub, dated May 22, 1001, which this office received on May 24, 2001. Pursuant to the instructions of Ms. Browder, this is to notify you that HUD should not foreclose on the subject property because of a number of miscommunications which have occurred in the instant case involving the inherently difficult task of communication and coordination of multiple offices located in San Francisco, Los Angeles and Washington, D.C. The Department of Justice has been instrumental in helping to coordinate any communications, but U.S. Department of Housing and Urban Development (HUD) has indicated a series of misunderstandings regarding the subject property.
>
> * * *
>
> Someone at HUD needs to break the bureaucratic inertia and authorize an economically feasible plan such as Regatta Bay, Ltd. has proposed for maximizing HUD's return on this property. For this reason, HUD should not foreclose, but should pursue its own correct policies of responsibilities to taxpayers and providing responsible management of the economics raised by the legal foreclosure of this property, as well as the legal issues raised by the economic issues of the foreclosure of this property.

Id.

38. On June 20, 2001, HUD issued its Decision to Proceed to Foreclosure based upon Regatta's failure to present any legal reasons as to why HUD should not so proceed. A 62.

39. On July 10, 2001, the bankruptcy court entered an Order granting Regatta Bay's Motion to Dismiss the bankruptcy case with prejudice. A 63. Regatta's motion to dismiss, filed May 17, 2001, had informed the court that HUD "has indicated its intent

to foreclose on the subject property. Because of the imminence of the foreclosure and the expected loss of the Debtor's sole asset, the original purpose of filing the instant reorganization case no longer remains." A 57.

40. On or about October 31, 2001, HUD served Regatta with a notice of default and foreclosure sale. A 65. The basis for the foreclosure being "a default . . . in the covenants and conditions of the Deed of Trust." Id. Specifically, the notice stated:

> WHEREAS, a default has been made in the covenants and conditions of the Deed of Trust in that the payment due on July 1, 2000 was not made and remains wholly unpaid as of the date of this notice, and no payment has been made sufficient to restore the loan to currency.

Id.

41. On November 20, 2001, HUD, Regatta and Mr. Rosequist entered into an agreement by which HUD would cancel its foreclosure sale if a series of conditions were met, principally the payment to HUD of $3,062,808.63 by 5:00 p.m. E.S.T. on December 3, 2001. A 69.

42. On December 4, 2001, the foreclosure sale was held and HUD received a winning bid of $3.6 million for the property. A 75.

43. On January 25, 2002, escrow closed on the sale. A 79. The property sold for more than the indebted amount. A 78-79.

After deducting costs and fees, HUD returned $155,091.57 to Regatta, specifically, Mr. Rosequist. A 78.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

GEOFFREY L. PATTON
LUC ODABASHIAN
Department of Housing
& Urban Development

January 14, 2005

CERTIFICATE OF FILING

I hereby certify that on January 14, 2005, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON