JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for Plaintiff

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| REGATTA BAY LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-1403C<br>(Judge Hodges) |

604.022029 dp

**RESPONSE TO REQUESTED FINDINGS**

Pursuant to RCFC 56(h)(2), Plaintiff Regatta Bay, Ltd. ("Regatta" or "Regatta Bay"), submits the following Response to Requested Findings in support of Regatta's Opposition to Motion for Summary Judgment.

1. Plaintiff Regatta Bay Limited ("Regatta") was a Limited Partnership doing business in the State of Nevada. Comp. ¶ 3; Comp. Ex. 2.[1]

Response and/or Proposed Revision:

Not disputed.

2. Regatta Bay Apartments ("the property") is a 120 unit, multi-family housing project located in Las Vegas, Nevada. Comp. ¶ 2.

Response and/or Proposed Revision:

Not disputed.

---

[1] The Federal Defendant's Proposed Findings of Uncontroverted Fact states that "Comp. ¶___" refers to plaintiff's second amended complaint filed October 1, 2004. "Comp. Ex. ___" refers to exhibits attached to plaintiff's complaint. "A ___" refers to the appendix accompanying defendant's motion for summary judgment. "Ex. ___" refers to exhibits included in the Appendix attached to the Opposition to Defendant's Motion for Summary Judgment.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

3. Pursuant to the National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq., the secretary of the Department of Housing and Urban Development ("HUD") is authorized to assist private industry in providing housing for low-and-moderate income families by insuring mortgages for the construction or rehabilitation of existing multifamily housing projects which meet the eligibility requirements of 12 U.S.C. § 1713(c).

Response and/or Proposed Revision:

This statement is a legal conclusion rather than a fact and is so broadly stated that its relevance, if any, is difficult to discern.

4. Section 221 of NHA, 12 U.S.C. § 1715, created several mortgage insurance programs "to assist private industry in providing housing for low and moderate income families and for displaced families." 12 U.S.C. § 1715.

Response and/or Proposed Revision:

This is also a legal conclusion, and the legal citation does not match the text of that statute.

5. The property was constructed with proceeds from a loan insured by HUD pursuant to section 221(d)(4) of NHA, 12 U.S.C. § 17151(d)(4). HUD agreed to exculpate mortgagors from personal liability for repayment of the mortgage in return for the mortgagors' agreement to operate the multifamily project in accordance with the terms and conditions of regulatory agreement.

Response and/or Proposed Revision:

This is another legal conclusion for which the citation does not support the statement as to the first sentence. The second sentence is unsupported, lacks foundation and is overly broad to show any relevance to this case.

6. On or about October 28, 1983, Regatta acquired the property from the property's first owner, Regatta Apartments, a Nevada Limited Partnership. Comp. ¶ 3; Comp. Ex. 1. The property was subject to a deed of trust note and a deed of trust securing a deed of trust note for the original principal sum of $3,685,100.00. Id.

Response and/or Proposed Revision:

On or about October 28, 1983 Regatta acquired the property from Phil Robert Rosequist. (Ex. 1.) The rest of this statement is not disputed.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

7. The deed of trust note provided, in part, as follows:

> If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this Note.

A 8.

Response and/or Proposed Revision:

Not disputed.

8. The deed of trust provided that "[t]he Grantor will pay the Note at the time and in the manner provided." A 2. The deed of trust likewise provided that beneficiary of the deed of trust could sell the property in payment of the debt "[u]pon any default made in the payment of any installment of principal and/or interest under said Note or payment of any monthly sum as hereby provided . . . not made good prior to the due date of the next such payment." Id.

Response and/or Proposed Revision:

No paragraph citation to the Deed of Trust is provided, and the first quotation appears to be slightly but immaterially inaccurate. The second sentence recognizes a 28- to 31-day grace period (depending upon the month) and omits the relevant conditions to exercise of the power of sale which include a right to cure are as follows:

> . . . [A]fter (1) the elapse of 15 days during which the Grantor shall have failed to make good such default, (2) after due recording in the office of the recorder in the county where the property lies of notice of such default and election by the Beneficiary to cause the trust property to be sold in payment of the debt after (3) the elapse of at least 3 months and (4) after the Trustee shall have given notice by publication and/or otherwise has of the time and place of such sale, all as required by law, to sell and in case of any default of any purchaser, to resell at public auction for cash in one or more parcels the mortgaged premises and property herein described and to convey the same in fee simply upon compliance with the terms of the sale to and at the cost of the purchaser or purchasers thereof, who shall not be required to see the application of the purchase money; and to apply the proceeds of said sale or sales; . . . .

(Ex. 2, p. 2, emphasis added.) The Federal Defendant's omission of this language further shows the Federal Defendant's tendency from the beginning of this case through the present to ignore the contractual and statutory requirement that the mortgagor be entitled to receive written notice of the



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

right to cure any default before any acceleration be allowed, "all as required by law."

The statute which provides for the mortgagor's right to written notice of the right to cure prior to acceleration is NRS 107.080(2) & (3), which provide as follows:

> 2. The power of sale must not be exercised, however, until:
>
> (a) In the case of any trust agreement coming into force:
>
> (1) On or after July 1, 1949, and before July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 15 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment; or
>
> (2) On or after July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 35 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment;
>
> (b) The beneficiary, the successor in interest or the beneficiary or the Trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of his election to sell or cause to be sold the property to satisfy the obligation; and
>
> (c) Not less than 3 months have elapsed after the recording of the notice.
>
> 3. The 15- or 35-day period provided in paragraph (a) of subsection 2 commences on the first day following the date upon which the notice of default and election to sell is recorded in the office of the county recorder of the county in which the property is located and a copy of the notice of default and election to sell is mailed by registered or certified mail, return receipt requested and with postage prepaid to the grantor, and to the person who holds the title of record on the date the notice of default and election to sell is recorded, at their respective addresses, if known, otherwise to the address of the trust property. The notice of default and election to sell must describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the Deed of Trust, <u>but acceleration must not occur if the deficiency in performance of payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency in performance or payment are paid within the time specified in subsection 2.</u>

(Underscoring added.) Although the subject deed of trust referenced a contractual 15-day opportunity to cure following the provision of written notice, the deed of trust apparently followed

an old form (which at the time it was signed dated back some 22 years) when the cure period prior to acceleration was 15 days. (Ex. 2.) Under the statute, the cure period is 35 days. Of course, the deed of trust includes within the requirements for acceleration that notice shall be given "all as required by law", which includes the statutory requirement of a 35-day cure period prior to acceleration.

9. Regatta Apartments entered into a regulatory agreement with HUD dated September 1, 1979, the terms of which governed the operation of the property. Comp. Ex. 1; 12 U.S.C. § 1715b; 24 C.F.R. § 200.105.

Response and/or Proposed Revision:

Regatta does not dispute the entry into the Regulatory Agreement. The terms speak for themselves.

10. The regulatory agreement restricted the owner's use of the property funds. For example, paragraph 8 of the regulatory agreement prohibited the owner, without the prior approval of HUD, from making any distributions of assets or income except from surplus cash, as that term is defined in the regulatory agreement. Comp. Ex. 1.

Response and/or Proposed Revision:

Again, the terms of the Regulatory Agreement speak for themselves. Regatta disputes the accuracy of any paraphrasing by the Federal Defendant which may be designed to support the Federal Defendant's strained attempts to excuse its violation of the Regulatory Agreement described in more detail below.

11. HUD's Office of Multifamily Housing in San Francisco, California, referred the property to HUD's Departmental Enforcement Center ("DEC") in Los Angeles, California, for review and evaluation of repeated withdrawals of property funds by Regatta's general partner, Phil Rosequist, when there was no surplus cash. Comp. Ex. 4; A 86.

Response and/or Proposed Revision:

The Federal Defendant's statement lacks foundation. Regatta did not withdraw funds when there was no surplus cash. Regatta did pay back working capital loans authorized by the limited partnership agreement which HUD approved at the outset of the transaction and which were

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

consistently made within the approved policies by HUD over seventeen years when Regatta operated the property. (Ex. 2; Rosequist Affidavit, ¶ 12.) The Federal Defendant incorrectly suggests payment of working capital loans to be for the personal benefit of the general partner, but the loans were made at below market rates, and the general partner lost money on the loans which allowed the property to operate and meet the HUD-insured debt obligations. Id. Regatta's payment of the loans, which were used to meet operating expenses, was not a violation of the Regulatory Agreement, contrary to the Federal Defendant's insinuations. (Id.; Comp. Ex. 1.)

12. On March 24, 2000, pursuant to the regulatory agreement, DEC issued a notice of violations and demand for corrective action, concerning the general partner's withdrawals and concerning physical deficiencies of the property. Comp. Ex. 4.

Response and/or Proposed Revision:

The Regulatory Agreement in no way authorized HUD's March 24, 2000 letter. The March 24, 2000 letter wrongfully demanded that Regatta pay to HUD $1,327,420.00 to which HUD was not entitled, plus $152,665.00 in interest to which HUD was not entitled. Regatta did not violate the Regulatory Agreement, and HUD's March 24, 2000 letter was not a "corrective action". The amounts HUD demanded pertain to payment of working capital loans for operating expenses which HUD had long ago approved by its actions and for which the statute of limitations for HUD to seek any recovery had long since passed. HUD knew that its demands were unreasonable and in bad faith in asserting entitlement to payment of more than $1 million within thirty (30) days based upon transactions which HUD knew it could not recover under any theory because of the barring of any such recovery under the statute of limitations.

David Ewing was a HUD representative in the Las Vegas office, which was given full authority to make decisions "as a partner to build better, stronger, communities . . . transforming HUD into an activist, enabling agency that is customer-oriented . . . working with [Regatta] in full partnership . . . .( Ex. 3.) Mr. Ewing, correctly explained and confirmed to Mr. Rosequist for Regatta that HUD's March 24, 2000 letter was an announcement of HUD's stated intention to take back the property regardless of the lack of merit to HUD's demand for payment back by Regatta of monies spent for operating expenses and the working capital loan payments. In its March 24, 2000 letter,

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

HUD made clear its intention to dishonor the Regulatory Agreement so as to effectuate a repudiation and anticipatory breach.

The May 3, 2001 letter from Luc-Andre Odabashian shows that HUD's calculations to support its wrongful demands in the March 24, 2000 letter are based upon working capital loans to meet operating expenses from 1986 through 1993. Recovery by HUD of any payments made by Regatta during this period was barred by the limitations in the very statute which HUD strains invalidly to argue as supporting HUD's position, 12 U.S.C. § 1715z-4a (six year statute of limitations provided under subsection (d). (Browder Declaration, ¶ 4 A. 86; Ex. 4.)

13. On May 9, 2000, Regatta responded to the notice of violation. A 17. The response "rejected" allegations contained in HUD's March 24, 2000, concerning Regatta's violation of the regulatory agreement. Id. However, the response did admit that "timing of the withdrawals was, perhaps, not appropriate, even if approved by HUD" and that "findings with respect to the conditions of the property have some validity." A 18. The response stated, in part:

> It has become clear to our client over the past year that retaining ownership is not a viable solution to the range of concerns which the department has expressed. Recently, with our counsel, te owner initiated action which is both is [sic] realistic and consistent with the Department's goals. More positively and more appropriately given the limited resources available to both HUD and the owner, it is our intention to work with the Las Vegas field office and California State Office in achieving a transfer of the property to a responsible community based non-profit organization.

Id.

Response and/or Proposed Revision:

The March 24, 2000 letter from HUD is not fairly characterized as a "notice of violation". As shown above from HUD's own documentation, the March 24, 2000 letter was an unreasonable, wrongful demand that more than $1 million be paid within thirty (30) days on meritless claims that were plainly barred by the statute of limitations. T

The May 9, 2000 letter from Regatta's prior counsel was arguably inartfully drafted, but the reference that the HUD-approved payments were "perhaps" not appropriate was not an admission of any violation of the Regulatory Agreement. Regatta did not violate the Regulatory Agreement in any way that HUD has ever shown, and Regatta is not aware of any violation by Regatta of any

type of Regulatory Agreement. The fact that Regatta's then counsel recognized that retaining ownership was not a viable solution in light of HUD's unreasonable demands does not excuse the fact that HUD made such unreasonable demands for the purpose of taking back the property or for any other purpose.

Similarly , HUD's repudiation and anticipatory breach of the Regulatory Agreement is not excused or excusable but was known by HUD to be unreasonable. HUD provides no other reason why it made such demands other than that HUD wanted to take the property back regardless of Regatta's rights, just as HUD's authorized official in Las Vegas explained and confirmed to Mr. Rosequist and just as HUD's subsequent conduct confirmed, as described below.

14. Commencing July 1, 2000, and thereafter, Regatta failed to make its monthly payments to Reilly Mortgage Group ("Reilly" or "mortgagee"), the holder of the HUD-insured note and deed of trust. A 82.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Response and/or Proposed Revision:

It is undisputed that Regatta made its June 1, 2000 payment. Reilly returned Regatta's payment dated July 28, 2000 as being a "duplicate payment". (Ex. 5.) Reilly's cover letter returning the check followed HUD's "requirement" that Reilly accelerate the Note. Reilly's notice of acceleration, described below, shows that Reilly rejected not only any payments for July made within the 30-day grace period but also any payments to cure the lateness of any overdue payments at HUD's instruction. (Id. See also A 20-23.)

The Federal Defendant's statement that Reilly held the note and deed of trust lacks foundation. (A 56, showing HUD's voucher naming Riggs National Bank on the mortgage.) It is only known that HUD assumes Reilly Mortgage Group ("Reilly") held the note.

15. The monthly Multifamily Delinquency and Default Reporting System ("MDDR") provided notification to HUD from Reilly that the deed of trust note was delinquent and owing for the months of June 1, 2000, and July 1, 2000. Id.

Response and/or Proposed Revision:

The so-called Multifamily Delinquency and Default Reporting System ("MDDR") lacks foundation. To the extent it has reliability, the citation of it provided by HUD at A82 indicates other

delinquent payments from February, March, April and May of 2000, for which neither Reilly nor HUD ever considered the payment of late charges to be a material breach or default. (See also Ex. 6, demonstrating Regatta's payment of late charges and Reilly and HUD's acceptance of late charges on many occasions prior to July 2000 when for the first time HUD (and Reilly at HUD's instruction) considered a late payment to be a "continuing material breach" after more than twenty (20) years of consistent performance on the loan.) The MDDR does not show any valid reason for HUD deciding to take back the property as announced through its anticipatory repudiation of the Regulatory Agreement in the March 24, 2000 letter.

16. On July 19, 2000, HUD informed Reilly that it had received Reilly's

> notice that the subject Deed of Trust Note is delinquent and owing for the months of June 1, 2000, and July 1, 2000. As a result, Regatta Bay, Ltd. (Mortgagor), as successor to Regatta Apartments, has violated the terms of the HUD-insured Deed of Trust Note and Deed of Trust (the Mortgage), both of which are dated September 1, 1979 and held by Reilly as mortgagee.

A 20.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Response and/or Proposed Revision:

HUD correctly quotes from the July 19, 2000 letter, which speaks for itself. The letter also demonstrates HUD's search for a reason to take the property back from Regatta despite the lack of excuse for HUD's anticipatory repudiation of the Regulatory Agreement. In this July 19, 2000 letter, HUD further demonstrates its bad faith by interpreting 24 C.F.R. § 207.257 as authorizing HUD to require the holder of the mortgage to accelerate the debt regardless of the contractual and statutory right to a written notice of the right to cure.

Rather than take the reasonable step of directing Reilly to provide written notice of the right to cure, HUD took the unreasonable step of demanding immediate acceleration without acknowledging Regatta's right to cure, much less Regatta's right to a written notice of such right prior to any acceleration. The plain meaning of the regulation cited by HUD in the letter, 24 C.F.R. § 207.257, is that HUD can only require acceleration where there is entitlement to acceleration. HUD consistently ignored Regatta's rights in 2000 and HUD continues to ignore the fact of Regatta's grace period, right to cure and right to receive written notice 35 days prior to any acceleration as HUD continues to argue to the present day that the July 19, 2000 letter was

supposedly only about protecting HUD's rights under this 20-year, consistently performing loan for which any past delinquent payments had been cured, including the payment of any required late charges. (Ex. 6.) The July 19, 2000 letter demonstrates bad faith by HUD, not good faith.

Regatta was not copied with the July 19, 2000 letter. (A 20.)

17. HUD instructed Reilly to accelerate payment of the outstanding principal balance due on the mortgage, pursuant to 24 C.F.R. § 207.257, upon the basis of Regatta's failure to make the mortgage payments. Id.

Response and/or Proposed Revision:

Again, HUD's cited regulation, 24 C.F.R. § 207.257, does not purport to authorize acceleration where there is no entitlement to acceleration. Rather, this regulation assumes that HUD will only require a mortgagee to accelerate payment where the mortgagee has such right. 24 C.F.R. § 207.257 states:

> Upon receipt of notice of violation of a covenant, as provided for in § 207.256(b), or otherwise being appraised thereof, the Commissioner reserves the right to require the mortgagee to accelerate payment of te outstanding principal balance due in order to protect the interests of the Federal Housing Commissioner.

The cited regulation by HUD does not purport to eliminate any grace periods, any contractual or statutory rights to cure or any contractual or statutory rights to written notice of the right to cure. HUD's instruction to Reilly to accelerate without allowing such a grace period, right to cure or written notice of the right to further evidences HUD's bad faith. (A 20; Ex. 5.)

18. On July 26, 2000, Reilly advised Regatta that it had "violated its contractual obligations under the Deed of Trust Note and Deed of Trust" and that HUD had "exercised its rights to require the mortgagee to accelerate payment of the outstanding principal balance due on the Mortgage on the basis of this violation." A 22.

Response and/or Proposed Revision:

Reilly's July 26, 2000 letter speaks for itself. The fact that Reilly attributed its statements to HUD in its July 26, 2000 letter shows that HUD was the instigator of the idea of characterizing a late payment as "the continuing material breach" and that HUD instigated the proposition of acceleration without recognition of Regatta's grace period, right to cure and right to receive notice

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

of its right to cure under both the deed of trust and under NRS 107.080 quoted above. Neither HUD nor Reilly provided any explanation to Regatta, other than David Ewing's statements described above, as to why Reilly's letter followed HUD's instruction to accelerate without providing a grace period, right to cure or a written notice of the right to cure. (A 20-23; Ex. 5.)

19. Subsequent to HUD's July 19, 2000 letter referenced in paragraph 16 above, Regatta submitted its June 1, 2000 payment, on or about July 31, 2000. A 84. This payment, for June 1, 2000, represented the last mortgage payment made by Regatta. A 82-84.

<u>Response and/or Proposed Revision:</u>

Reilly described Regatta's July 28, 2000 payment as "a duplicate payment for June 1, 2000." (Ex. 5.) HUD's cited reference of the MDDR lacks foundation and, as described above, to the extent it is reliable, it demonstrates HUD's bad faith in straining to characterize late payments, including the July payment made within the grace period before a cure period could have even started had it ever commenced by written notice, which it did not, as "the continuing material breach." (A 82-84.) HUD knew that all prior late payments had been accepted with the payment of any required late charges throughout this 20-year, fully performing loan. (Ex. 6.)

20. On August 2, 2000, HUD issued to Reilly a confirmation of its July 19, 2000 instructions to accelerate the mortgage based upon Regatta's failure to make its mortgage payments for the months of June 1, 2000 and July 1, 2000, in violation of the deed of trust note and deed of trust. A 23.

<u>Response and/or Proposed Revision:</u>

Neither HUD nor Reilly provided a copy of the August 2, 2000 letter to Regatta. (A 23.) This letter further shows HUD's lack of regard to Regatta's grace period, right to cure and right to a written notice of its right to cure as provided by both the deed of trust and by the applicable Nevada statute quoted above. This August 2, 2000 letter further evidences and confirms HUD's bad faith. <u>Id</u>.

21. On August 29, 2000, HUD issued a notice of default of the regulatory agreement based upon Regatta's failure to adequately respond to HUD's Notice of Violations. Comp. Ex. 5. The August 29, 2000 letter made no reference to Regatta's failure to submit its monthly mortgage



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

payments commencing July 1, 2000. Id.

Response and/or Proposed Revision:

Regatta did not fail to adequately respond to HUD's wrongful demand for Regatta's payment of more than $1 million within thirty (30) days to which HUD knew it had no right. As stated above, HUD's "Notice of Violations" was a wrongful demand and a repudiation and anticipatory breach of the Regulatory Agreement. (Comp. Ex. 4.)

HUD's August 29, 2000 letter wrongfully declared the Regulatory Agreement to be in default and constituted the wrongful cancellation by HUD of the insurance endorsement HUD covenanted to provide for Regatta's benefit by express agreement with Regatta's predecessor in interest in the Regulatory Agreement. (Comp. Ex. 1.)

There is no dispute that HUD's wrongful declaration of default through its August 29, 2000 letter made no reference to Regatta's late payments. (Comp. Ex. 5.) This further demonstrates that the lateness of Regatta's payments were not the reason why HUD canceled the insurance, contrary to the Federal Defendant's arguments. It also demonstrates that HUD intended to take the property back regardless of whether it had correctly found any material breach or not, further demonstrating HUD's bad faith.

22. On September 8, 2000, Regatta filed for Chapter 11 bankruptcy protection. A 24.

Response and/or Proposed Revision:

Not disputed.

23. On or about September 11, 2000, Reilly submitted to HUD an election to assign the mortgage on the property in exchange for insurance benefits. A 28.

Response and/or Proposed Revision:

HUD's cited document lacks foundation. It does not demonstrate that Reilly submitted an election to assign the mortgage to HUD on September 11, 2000. (A 28.) If HUD did not withhold any materially related documents, and if this document can be assumed to be reliable, the document demonstrates bad faith by HUD through its encouragement of expeditious assignment by Reilly to HUD of the Note and Deed of Trust to allow HUD to take the property back. It demonstrates that while HUD was taking bureaucratic steps to acquire the property, it was ignoring Regatta's grace

period, right to cure and right to written notice of its right to cure. Again, if this document accurately portrays the extent of HUD's analysis of its entitlement to the assignment, HUD had no reasonable basis to believe the acceleration to be proper or the cancellation of the insurance to be based upon any valid demand that Regatta pay more than $1 million within 30 days of the March 24, 2000 letter, which was a repudiation and anticipatory breach made by HUD for the purpose of taking back the property regardless of its lack of merit and the lack of reasonableness of HUD's position. (See also Comp. Ex. 4, 5.)

Neither Reilly nor HUD sent a copy of this document to Regatta. (A 28-31.)

24. On October 6, 2000, the assignment of the mortgage from Reilly to HUD was recorded. A 32. Pursuant to the assignment, HUD acquired Reilly's position as holder of a first priority lien against the property and the right to any rents generated from the property. A 8, 32.

Response and/or Proposed Revision:

HUD did not send a copy of the cited document to Regatta. (A 32.) The assignment documentation and date lack foundation, but Regatta does not dispute that HUD represented itself as having acquired an assignment from Reilly.

25. On or about October 10, 2000, HUD made a partial payment to Reilly of the FHA insurance claim. A 56.

Response and/or Proposed Revision:

Regatta did not receive a copy of the cited document, and the statement lacks foundation. (A 56.)

26. On November 28, 2000, HUD requested representation by the Department of Justice, Commercial Litigation Branch, to bring a civil action against Mr. Rosequist for diversion of at least $275,920 in property funds for breach of the regulatory agreement. A 86.

Response and/or Proposed Revision:

HUD has never provided documentation to support this allegation. Either HUD is intentionally withholding the documentation, or HUD asserts and presumably would have the Court believe that its request to the Department of Justice to bring the civil action which Mr. Rosequist was made verbally. (A 86.) Certainly the Department of Justice's admitted non-pursuit of a civil action



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

against Mr. Rosequist does not support any allegation of either an actual request to bring an action against Mr. Rosequist or the reasonableness of any such request. The opposite is true however: HUD's indication that it wanted to sue Mr. Rosequist evidences HUD's ill will towards Regatta and bad faith. Further, its assertion that Mr. Rosequist might have been liable for $275,920.00, to the extent this allegation by the Federal Defendant can be believed, further shows the bad faith of HUD's demand in its March 24, 2000 letter for more than $1.4 million to be paid within thirty days. (Comp. Ex. 4.) Neither Regatta nor Mr. Rosequist diverted any property or funds for or in breach of the Regulatory Agreement.

27. On December 6, 2000, Regatta obtained an appraisal valuing the property at $2,242,000.00. A 33.

Response and/or Proposed Revision:

Not disputed.

28. December 7, 2000, Regatta issued its Chapter 11 Plan of Reorganization. A 53.

Response and/or Proposed Revision:

Regatta filed and served its Chapter 11 Disclosure statement on or about December 7, 2000. Regatta complied with the rules for issuance of a plan of reorganization, which requires Court approval of the disclosure statement prior to circulation of any signed, or issued plan of reorganization under 11 U.S.C. § 1125. (Ex. 7.)

29. HUD filed its proof of claim in the bankruptcy court on February 21, 2001, in the principal amount of $3,057,712.44, together with accrued and unpaid interest as of the filing date in the amount of $5,096.19 for a total claim of $4,072,808.63. A 48.

Response and/or Proposed Revision:

Not disputed.

30. The United States filed a motion seeking relief from the automatic stay to permit the United States to foreclose upon the mortgage. A 53.

Response and/or Proposed Revision:

Not disputed.

31. On or about April 4, 2001, Regatta stipulated that "[t]he United States had a valid,

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

allowed first priority secured claim against all of Debtor's real and personal property, including, without limitation, all rents, profits and proceeds of the property n the total amount of $3,062.,808.53 A 51.

Response and/or Proposed Revision:

The cited stipulation speaks for itself. (A 51.) The allowance of the priority and the amount of a claim only means that it can by paid as such. The stipulation makes no reference to the validity of the acceleration or of the cancellation of insurance. Id. Regatta has never waived its right to cure, its right to receive notice of its right to cure, its right to insurance of its loan by HUD and the honoring of such insurance by HUD, and Regatta has never waived any of its claims against HUD for HUD's violation of these or any other of its related rights. Id.

32. On or about April 4, 2001, Regatta stipulated that the property had "an 'As Is' Fair Market Value of $2,360,000," and that Regatta had "no equity in its property."

Response and/or Proposed Revision:

Again, the cited stipulation speaks for itself. (A 51.) The stipulated value was based upon an average of the appraisals obtained by Regatta and HUD, as represented by HUD's counsel. Id. HUD never provided Regatta with a copy of its appraisal, which was represented to be lower than Regatta's appraisal.

Once HUD followed through with its anticipatory breach by canceling the insurance through the August 29, 2000 wrongful declaration of default of the Regulatory Agreement, HUD treated the mortgage holder in fact as having a right to assign the mortgage to HUD for payment of its insurance claim. (Comp. Ex. 4, 5; A 28.) Once HUD wrongfully canceled the insurance, the loan was no longer marketable and HUD sealed its ability to effectuate its intent stated in the March 24, 2000 letter of taking back the property regardless of the lack of reasonableness of HUD's demand. (Comp. Ex. 4, 5.) HUD's lack of reasonableness and bad faith showed the futility and lack of business purpose to continuing to make monthly payments on the uninsured note held by HUD which HUD regarded and treated as accelerated and ripe for foreclosure. (See also A 28-31; Ex. 5.)

While Regatta met its obligation to continue to manage the property, Regatta did not pour any further investment into the property such as was needed for the dire security problems the

property was facing involving believed gang activities, drugs and other crime problems. (Ex. 8, p. 8, ll. 5-11.) Regatta's efforts to save the property through a reorganization plan ultimately failed, and the lack of investment and reasonableness of investing in the project during this period resulted in plummeting occupancy rates. Id. The low occupancy rates caused the property values by the appraisers under the income approach to plummet. (A 43.) At the same time, real properties in Las Vegas have increased, and the opportunity denied by HUD to have business incentives to reasonably invest in capital improvements such as security gates, fences, and needed roadway configuration were non-existent because of HUD's intent on taking back the property without regard to Regatta's rights. (Ex. 8, p. 11, ll. 13-27; Comp. Ex. 4, 5; A 20-23; Ex. 5.) HUD's position violated its own policies of promoting the welfare of the tenants and the business viability of the project which had fully performed for twenty years before HUD revealed its intention in March 2000 to take back the property. (Comp. Ex. 4.)

33. On April 25, 2001, the bankruptcy court issued an order granting the Government's motion for relief from the automatic stay "to permit the United states to foreclose upon the Debtor's real property. A 53; 11 U.S.C. § 362(a).

Response and/or Proposed Revision:

The cited order speaks for itself. (A 53.) The bankruptcy court's permission to proceed to foreclose did not purport to rule upon HUD's right to cancel the insurance or upon Regatta's grace period, right to cure or right to notice of the right to cure. The lifting of the automatic stay under HUD's citation of 11 U.S.C. § 362(a) did not relieve HUD of the obligation to comply with the Mortgagor's rights as HUD proceeded to foreclosure. Id.

34. On or about May 7, 2002 HUD settled the insurance claim with Reilly. A 55.

Response and/or Proposed Revision:

HUD provides no foundation for its citation concerning insurance claim settlement with Reilly. (A 55.) According to the record HUD provides, Reilly (or Riggs National Bank) had a right to recover under its insurance claim because HUD canceled the insurance and violated HUD's obligation under the Regulatory Agreement. (Comp. Ex. 5; A 28, 56.) HUD's manner of demanding acceleration of the note without recognizing or allowing Regatta's grace period, right to

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

cure and right to written notice of the right to cure does not comply with a reasonable, good faith interpretation of 24 C.F.R. § 207.257, the terms of the Deed of Trust or the controlling statute of NRS 107.080 quoted above. (A 20-23 and Ex. 2.) Further, HUD's actions do not comply with its duties of good faith and fair dealing under the Regulatory Agreement which obligates HUD to provide insurance for Regatta's loan. (Comp. Ex. 1.)

35. HUD served Regatta with a notice of intent to foreclose on May 22, 2001, stating that "the mortgage on Regatta Apartments is in default because payments due the for the months of July 1, 2000, through May 1, 2001, have not been made". A 58. The notice advised Regatta that it had "an opportunity to show reasons why foreclosure should not take place." Id.

Response and/or Proposed Revision:

HUD's May 22, 2001 letter speaks for itself. (A 58.) The recitation in the letter that Regatta would have an opportunity to show why the foreclosure should not take place does not mean that HUD acted in good faith. HUD's ignoring of Regatta's right to HUD's endorsement of its insurance, right to a grace period, right to cure and right to receive written notice of its right to cure evidence HUD's bad faith. (Comp. Ex. 1; Ex. 2.)

36. On June 12, 2001, Regatta submitted a written response. A 60. In that letter, Regatta did not set forth any legal reason why HUD should not proceed with the foreclosure. A 60-61. Regatta's response did not deny that it had failed to submit mortgage payments on the property since July 1, 2000. Id.

Response and/or Proposed Revision:

The cited letter speaks for itself. (A 60.) Regatta cited HUD's violation of its own economic and legal policies ranging from expense of management to HUD's vindictiveness as being improper and reasons not to foreclose, including the following:

> Specifically, I am advised that HUD, may incur some $4,800.00 per day in overhead expenses without addressing a proper, facilitated approach to maximizing HUD's recovery from the property such as Regatta Bay has repeatedly suggested [but which HUD denied in the form of approval of expenditure of project capital on a badly needed, upgraded security improvement program]. Because of a series of misunderstandings HUD appears to be pursuing, perhaps inadvertently, an ongoing policy of deterioration to this property is an unfortunate, however inadvertent, disregard for the effect upon the



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

property and the tenants thereof through HUD's pursuit of a policy which fails to take into account the practical economic realities of this property. If HUD will reconsider its legal positions asserted to date [such as the wrongful cancellation of insurance, HUD's intent to take the property back regardless of the unreasonableness of its demands, including payment of more than $1 million to which HUD was never entitled within 30 days and including the requirement of acceleration in violation of Regatta's right to a grace period, right to cure and right to written notice of the cure] and apply its policies of promoting the welfare of the tenants and the economic viability of the project consistent with HUD's own programs, rather than take a vindictive approach against Regatta Bay, Ltd. for its past involvement of a U.S. Senator [See Ex. 9,.] to assist in the implementation of HUD's policies, HUD should find that opportunities abound which will bring a far more satisfactory economic treatment of this property than the present course which HUD has announced to be pursuing [which at that time based upon the income approach appraisals, appeared to have the possibility of resulting in a shortfall to HUD in addition to the economic devastation to Regatta through the loss of the property ( 43.)].

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

37. The June 12, 2001 response stated, in part:

This letter is in response to a letter from Janet Browder, Director, San Francisco Multi-Family Hub, dated May 22, 2001, which this office received on May 24, 2001. Pursuant to the instructions of Ms. Browder, this is to notify you that HUD should not foreclose on the subject because of a number of miscommunications which have occurred in the instant case involving the inherently difficult task of communication and coordination of multiple offices located in San Francisco, Los Angeles and Washington, D.C. The Department of Justice has been instrumental in helping to coordinate any communications, but U.S. Department of Housing and Urban Development (HUD) has indicated a series of misunderstandings regarding the subject property.

* * *

Someone at HUD needs to break the bureaucratic inertia and authorize an economically feasible plan such as Regatta Bay, Ltd. has proposed for maximizing HUD's return on this property. For this reason, HUD should not foreclose, but should pursue its own correct policies of responsibilities to taxpayers and providing responsible management of the economics raised by the legal foreclosure of this property, as well as the legal issues raised by th economic issues of the foreclosure of this property.

<u>Id.</u>

////

<u>Response and/or Proposed Revision:</u>

As stated, Regatta's June 12, 2000 letter set forth HUD's own policy reasons not to foreclose

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

on the property. (A 60.) The letter attempts to give HUD a graceful way to reverse its bad faith course of conduct in the first paragraph.

Regatta concludes:

> Should HUD have an interest in addressing the economic and legal issues surrounding this foreclosure, please respond at your earliest convenience. Your cooperation will be appreciated.

(A 61.) HUD never expressed any interest in addressing the economic and legal issues raised by Regatta's letter. Also, HUD never denied any aspect of the letter, including the statement that HUD was taking a vindictive approach against Regatta Bay. (A 60.) HUD has instead suggested that it was entitled to take a vindictive approach against Regatta Bay, which further evidences HUD's bad faith.

38. On June 20, 2001, HUD issued its Decision to Proceed to Foreclosure based upon Regatta's failure to present any legal reasons as to why HUD should not so proceed. A 62.

<u>Response and/or Proposed Revision:</u>

HUD states in its June 20, 2001 letter that Regatta did not show any legal reasons why HUD should not foreclose. (A 62.) This statement by HUD does not excuse HUD's bad faith, which HUD did not deny or tend to refute in any way. At best from HUD's point of view, these letters show a difference of opinion. (A 58-62.) To the extent HUD's logic has any validity, HUD's failure to deny the bad faith is an admission of bad faith. The June 20, 2001 letter in no way purports to reinstate or remedy HUD's wrongful cancellation of insurance, HUD's wrongful demand that Reilly issue a notice of acceleration without recognizing or allowing Regatta's grace period, right to cure and right to written notice to right to cure. (A 62; Comp. Ex. 5; A 20-23; Ex. 5.)

39. On July 10, 2001, the bankruptcy court entered an Order granting Regatta Bay's Motion to Dismiss the bankruptcy case with prejudice. A 63. Regatta's motion to dismiss, filed May 17, 2001, had informed the court that HUD "has indicated its intent to foreclose on the subject property. Because of the imminence of the foreclosure and the expected loss of the Debtor's sole asset, the original purpose of filing the instant reorganization case no longer remains." A 57.

<u>Response and/or Proposed Revision:</u>

The bankruptcy court's July 10, 2001 entry of order is not disputed, but the order speaks for

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

itself, as does Regatta's Motion to Dismiss Case dated May 17, 2001. (A 57, 63.) As HUD's quoted portion explains, the subject property was Regatta's sole asset. HUD's decision to proceed with foreclosure in violation of Regatta's rights show the futility and lack of purpose of further proceeding with the Chapter 11 case, the dismissal of which has no adverse legal consequence to Regatta other than Regatta is limited in its ability to file another Chapter 11 reorganization case, which ability has no relevance to this case. The dismissal is not a reflection or admission of any type of merit to HUD's factual contentions or characterizations. Id.

40. On or about October 31, 2001, HUD served Regatta with a notice of default and foreclosure sale. A 65. The basis for the foreclosure being "a default . . . in the covenants and conditions of the Deed of Trust." Id. Specifically, the notice stated:

> WHEREAS, a default has been made in the covenants and conditions of the Deed of Trust in that the payment due on July 1, 2000 was not made an remains wholly unpaid as of the date of this notice, and no payment has been made sufficient to restore the loan to currency.

Id.

Response and/or Proposed Revision:

The notice of default and foreclosure sale speaks for itself. (A 65.) Its statements do not excuse HUD's wrongful actions described above. Id.

41. On November 20, 2001, HUD, Regatta and Mr. Rosequist entered into an agreement by which HUD would cancel its foreclosure sale if a series of conditions were met, principally the payment to HUD of $3,062,808.63 by 5:00 p.m. E.S.T. on December 3, 2001. A 69.

Response and/or Proposed Revision:

The November 20, 2001, agreement between HUD and Regatta did not include any releases by either side. (A 69.) The proposed sale was never consummated, but the property went to HUD's scheduled foreclosure instead, which HUD does not dispute.

42. On December 4, 2001, the foreclosure sale was held and HUD received a winning bid of $3.6 million for the property. A 75.

////

Response and/or Proposed Revision:

Regatta does not dispute this statement, but the forced sale price is not an accurate indication



of the fair market value of the property which Regatta should still own today but for HUD's breaches of duty as set forth in Regatta's Complaint and hereinabove. (Comp. ¶¶ 1-67; A 15.)

On January 25, 2002, escrow closed on the sale. A 79. The property sold for more [illegible] deducting costs and fees, HUD returned $155,091.57 to [illegible]

of the fair market value of the property which Regatta should still own today but for HUD's breaches of duty as set forth in Regatta's Complaint and hereinabove. (Comp. ¶¶ 1-67; A 15.)

43. On January 25, 2002, escrow closed on the sale. A 79. The property sold for more than the indebted amount. A 78-79. After deducting costs and fees, HUD returned $155,091.57 to Regatta, specifically, Mr. Rosequist. A 78.

Response and/or Proposed Revision:

Not disputed, but Regatta did not waive or release any of its claims against HUD. (A 78.)

DATED this 28th day of April, 2005.

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, NV 89101
(702) 382-4044 Fax: (702) 383-9950
*Attorneys for Plaintiff*

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950