JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for Plaintiff

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| REGATTA BAY LIMITED,<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 04-1403C<br>(Judge Hodges) |

604.022029 dp

**REGATTA BAY, LTD.'S CROSS-MOTION FOR CONTINUANCE**
**<u>TO PERMIT DEPOSITIONS TO BE TAKEN AND DISCOVERY TO BE HAD</u>**

COMES NOW, Plaintiff Regatta Bay, Ltd. ("Regatta Bay" or "Regatta"), by and through its counsel, John Peter Lee, Ltd., and files this Regatta Bay, Ltd.'s Cross-Motion for Continuance to Permit Depositions to Be Taken and Discovery to Be Had. This Cross-Motion is made and based upon the following brief, all pleadings and papers on file herein, the Affidavit of Phil R. Rosequist being filed herewith and the Affidavit of Paul C. Ray, Esq. being filed herewith as well as oral argument to be presented at the time of hearing, if permitted.

Regatta Bay requests the Court to enter an order permitting depositions to be taken and discovery to be had prior to the hearing of the Defendant's Motion for Summary Judgment.

**<u>STATEMENT OF FACTS</u>**

On or about September 1, 1979, HUD insured a secured loan by Weyerhaeuser Mortgage Company to Regatta Apartments, a Nevada limited partnership, which secured loan was later assumed by Regatta Bay and assigned to Reilly Mortgage Group, Inc. ("Reilly"). Regatta's

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

assumption included the assumption of a Regulatory Agreement which provides in the first paragraph that its purpose is:

> [i]n consideration of the endorsement for insurance by the Secretary [of the Department of Housing and Urban Development ("HUD")].

(Comp. Ex. 1.)[1] Without such endorsement for insurance, investors would have little incentive to seek financing for multifamily housing projects because the lending market for these projects relies heavily upon HUD's agreement to insure the projects.

The subject Deed of Trust provides the following conditions for acceleration of the Note and foreclosure of the Deed of Trust:

> Upon any default . . . not made good prior to the due date of the next such payment [on the first of the month] . . . at the option of the Beneficiary and thereupon the Trustee . . . shall have power [of sale] . . .
>
> * * * *
>
> . . . [a]fter (1) the elapse of 15 days during which the Grantor shall have failed to make good such default, (2) after due recording in the office of the recorder in the county where the property lies of notice of such default and election by the Beneficiary to cause the trust property to be sold in payment of the debt after (3) the elapse of at least 3 months and (4) after the Trustee shall have given notice by publication and/or otherwise has of the time and place of such sale, <u>all as required by law</u>, to sell and in case of any default of any purchaser, to resell at public auction for cash in one or more parcels the mortgaged premises and property herein described and to convey the same in fee simply upon compliance with the terms of the sale to and at the cost of the purchaser or purchasers thereof, who shall not be required to see the application of the purchase money; and to apply the proceeds of said sale or sales; . . . .

(Ex. 2, p. 2, emphasis added.) The Deed of Trust requires that the mortgagor be entitled to receive written notice of the right to cure any default before any acceleration be allowed, "all as required by law."

The statute which provides for the mortgagor's right to written notice of the right to cure

---

[1] "Comp. ¶ ___" refers to plaintiff's Second Amended Complaint filed October 1, 2994. "Comp. Ex. ___" refers to exhibits attached to plaintiff's complaint. "A ___" refers to the appendix accompanying Defendant's Motion for Summary Judgment. Unless otherwise indicated, "Ex.__" refers to exhibits attached hereto. "RRF ___" refers to Regatta's Response to Requested Findings. "Rosequist Aff. ¶___" refers to the Affidavit of Phil R. Rosequist dated March 5, 2004, being refiled herein.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

prior to acceleration is NRS 107.080(2) & (3), which provide as follows:

> 2. The power of sale must not be exercised, however, until:
>
> (a) In the case of any trust agreement coming into force:
>
> (1) On or after July 1, 1949, and before July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 15 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment; or
>
> (2) On or after July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 35 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment;
>
> (b) The beneficiary, the successor in interest or the beneficiary or the Trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of his election to sell or cause to be sold the property to satisfy the obligation; and
>
> (c) Not less than 3 months have elapsed after the recording of the notice.
>
> 3. The 15- or 35-day period provided in paragraph (a) of subsection 2 commences on the first day following the date upon which the notice of default and election to sell is recorded in the office of the county recorder of the county in which the property is located and a copy of the notice of default and election to sell is mailed by registered or certified mail, return receipt requested and with postage prepaid to the grantor, and to the person who holds the title of record on the date the notice of default and election to sell is recorded, at their respective addresses, if known, otherwise to the address of the trust property. The notice of default and election to sell must describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the Deed of Trust, <u>but acceleration must not occur if the deficiency in performance of payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency in performance or payment are paid within the time specified in subsection 2.</u>

(RRF 8, underscoring added.)

During the course of Regatta's assumption of the loan between 1983 and 2000, Regatta borrowed working capital loans from its general partner, Phil Rosequist, to meet current obligations such as operating expenses and repairs as authorized by the limited partnership agreement, which

Regatta provided to HUD for approval of Regatta's assumption of the loan in accordance with HUD's policies. (Comp. Ex. 2, ¶ 10.) The working capital loan arrangement in the limited partnership agreement which HUD approved as part of the assumption requires Rosequist to limit his interest charges to the prime rate. (RRF 11.)

On March 24, 2000, HUD's Director, Multifamily Hub in San Francisco, Janet Browder, and HUD's Director, DEC, Los Angeles, satellite office for HUD, Scott Hunley, demanded that Regatta pay back $1,327,420.00 in working capital loan repayments to Rosequist, plus a reversal of accrued interest of $152,665.00 totaling some $1.48 million dollars. (Comp. Ex. 4.) Regatta's General Partner, Rosequist reviewed the March 24, 2000 letter with David Ewing for HUD in the Las Vegas office, which HUD had given full authority to make decisions "as a partner to build better, stronger, communities . . . transforming HUD into an activist, enabling agency that is customer oriented . . . working with [Regatta] in full partnership . . . . (Ex. 3; RRF 12.) Mr. Ewing recommended that Regatta not waste any more money on the project because HUD intended to enforce the $1.48 million dollar demand by foreclosing on the property regardless of the lack of merit to the demand. (Rosequist Aff. ¶ 7; RRF 12.) HUD thereby repudiated its obligation to Regatta under the Regulatory Agreement to provide an endorsement of insurance on the property. (Comp. Ex. 1.)

From Regatta's assumption of the loan in 1983 through June 2000, Regatta made numerous late payments, which the lender and HUD had always accepted by course of performance, including Regatta's payment of any required late charges throughout the sixteen (16) plus years of this fully performing loan. (Ex. 6; RFF 19.) No dispute exists that Regatta made its June 1, 2000 payment. (RFF 14.) However, Reilly returned Regatta's payment dated July 28, 2000 at HUD's instruction that Reilly accelerate the Note. (A 22.) HUD's instruction and Reilly's acceleration violated the Deed of Trust provisions for Regatta's 30-day grace period and Regatta's right to cure, as well as its right to receive written notice of the right to cure, all to which Regatta was entitled prior to acceleration. (RRF 14.)

Regatta learned after sending its July 28, 2000 payment to Reilly that Reilly was following the instructions in HUD letters dated July 19, 2000 and August 2, 2000 through taking the position of acceleration of the Note as stated in Reilly's July 26, 2000 letter to Regatta. (RRF 16, 18, 20.)



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Next, on August 29, 2000, HUD followed through with its repudiation of the Regulatory Agreement in its March 24, 2000 letter by wrongfully declaring Regatta to be in breach of the Regulatory Agreement. HUD thereby wrongfully canceled Reilly's insurance in violation of HUD's duty to Regatta under the Regulatory Agreement. (RRF 21; Comp. Ex. 1.) HUD went on to fulfil its purpose from the repudiation in the March 24, 2000 letter and the cancellation of Regatta's insurance through the August 29, 2000 letter for the purpose of taking the property back by encouraging Reilly's expeditious submittal of a mortgage insurance claim and assignment over to HUD of the subject Note and Deed of Trust. (RRF 23, 24.)

After the lender refused to accept any payments either under the grace period or the right to cure provided by the Deed of Trust and by statute, Regatta no longer had an incentive to invest in the property and to meet the property's needs, which at that time included capital improvements for security fences, and redesign of the property's driveway configurations to address severe crime problems. Some of the results of the lack of investment incentive caused by HUD's wrongful declaration of default were drastically reduced occupancy rates and deteriorated conditions for the tenants in the face of the severe crime and drug trafficking problems at the property, even while HUD elected to leave Regatta in management until HUD could foreclose on the property. (RRF 32.)

On May 22, 2001, HUD formally stated its intent to commence foreclosure proceedings. (RRF 35.) Regatta objected by letter dated June 12, 2001. (RRF 36.) Regatta specifically objected to HUD's violation of its own economic and legal policies and to HUD's vindictive purpose. (RRF 36, 37.) On July 10, 2001, HUD rejected Regatta's request that HUD not foreclose. (RRF 39.) HUD eventually sold the property at foreclosure for $3.6 million dollars at a forced sale below fair market value. (RRF 42, 43.)

Regatta seeks damages for the loss of its property resulting from HUD's breaches and wrongful conduct described herein. For a full statement of the disputed material facts, see RRF 1 through 42.

The Ray Affidavit shows that the parties have been informally discussing discovery through their counsel. Exhibits 1 and 2 of the Ray Affidavit identify the documents Regatta needs to be able to depose the Persons Most Knowledgeable for HUD and Reilly to discover the intent of the

individuals who signed and received the relevant documents, particularly the March 24, 2000 letter from Browder to Regatta, the July 19, 2000 letter from HUD to Reilly, the July 26, 2000 letter from Reilly to Regatta, the August 2, 2000 letter from HUD to Reilly, the August 8, 2000 letter from Reilly to Regatta, the August 29, 2000 letter from HUD to Regatta and the correspondence regarding Reilly's insurance claim to HUD and assignment of the Note and the Deed of Trust, as well as the other correspondence between and among these persons pertaining to this property from March 24, 2000 through the sale in January 2002, and to the present, if any, and other documents described in the letters attached to the Ray Affidavit.

Counsel for the Federal Defendant was willing to provide the documentation within approximately four more weeks on condition that Regatta stipulate not to conduct any depositions. Because the intent of the persons writing and receiving the documents is relevant to the tortious breach of contract and other claims, Regatta cannot waive its right to take depositions. Counsel have discussed these issues and have agreed that they are acting in good faith and that counsel have not been guilty of any dilatory conduct herein pertaining to discovery or otherwise.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

## LAW IN SUPPORT OF PLAINTIFF'S ARGUMENT

### A. PLAINTIFF REQUESTS AN OPPORTUNITY TO CONDUCT DISCOVERY PURSUANT TO RULES OF THE FEDERAL COURT OF CLAIMS 56(f).

Federal Court of Claims Rule of Civil Procedure 56(f) mirrors the Federal Rule of Civil Procedure 56(f). The rule states:

> (f) **When Affidavits are Unavailable.**
>
> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other orders as just.
>
> Rule of the Federal Court of Claims 56(f).

In the case at bar, Plaintiff has not had an opportunity for discovery. In such circumstances, courts generally grant Rule 56(f) postponement requests freely. *See,* Burlington No. Santa Fe R. Co. v. Assinboine & Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773-74 (9th Cir. 2003). As this Court is well aware, summary judgment is only rare cases where the plaintiff has not had an

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

opportunity for discovery. *See*, Miller v. Wolpoff & Abramson, L.L.P., 321 F.2d 292, 303-304 (2d Cir.2003), *cert. denied*, ___U.S. ___, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003) (No. 02-1820). When parties have filed motions for summary judgment at an early point in cases, or before discovery has proceeded, the courts recognize that the Rule 56(f) affiant may not be capable of framing its postponement request with great specificity. *See*, Burlington No. Santa Fe R. Co. v. Assinboine & Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773-74 (9th Cir. 2003), (noting that affiant cannot be expected to frame a motion with great specificity as to the nature of discovery likely to develop useful information because ground for such specificity has not been laid).

The party moving to postpone the summary judgment ruling bears the burden of demonstrating that the requisite basis for relief under Rule 56(f) has been met. *See*, Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004); Chance v. Pac-Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir.2001); Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir.1999).

Here, the Federal Defendant relies on the case of United States v. Wennick, 645 F. Supp. 103, 105 (D.E. 1986), stating, "summary judgment is appropriate...if (1) default on the mortgage covering has occurred; (2) under the mortgage the Plaintiff (lender) is entitled to foreclosure; and (3) the Defendant (owner) has no valid or meritorious defense as a matter of law. Plaintiff opposes summary judgment as there are issues of fact related to Plaintiff's allegations that HUD wrongfully declared Regatta Bay in default of the regulatory agreement governing the property, wrongfully ordered that the private holder of the deed of trust accelerate the mortgage payments due under the deed of trust securing the property without time to cure, which led to wrongfully revoking Federal insurance, and wrongfully foreclosing upon the property, resulting in Regatta Bay losing title to the property.

In addition, the basis for the Federal Defendant's motion is misplaced. Plaintiff seeks damages arising from wrongful foreclosure arising out of a breach of contract between the Federal Defendant, and Plaintiff of the terms of the deed of trust. The Federal Defendant failed to permit Plaintiff his contractual grace period, failed to permit the Plaintiff to cure and wrongfully accelerated the Note.

Plaintiff requests discovery that will establish that the U.S. knew or should have known that

these terms pursuant to the deed of trust and note were not complied with or by it. The Federal Defendant has conditionally agreed to permit Plaintiff to conduct some discovery but not any of the depositions necessary to build its case, to prove to this Court that a trial is necessary, and to present its case at trial.

**B. PLAINTIFF HAS MET THE PREREQUISITES FOR POSTPONING SUMMARY JUDGMENT.**

The courts generally require a Rule 56(f) movant to make three showings before the courts will postpone a summary judgment ruling pending further discovery: (1) a description of the particular discovery the movant intends to seek; (2) an explanation showing how that discovery would preclude the entry of summary judgment; and (3) a statement justifying why his discovery had not been or could not have been obtained earlier. *See*, Ball v. Union Carbide Corp., 376 F.3d 554, 561 (6th Cir.2004); Velez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir.2004); Price ex rel. Price v. Western Resources, Inc., 232 F.3d 779, 783-84 (10th Cir.2000); In re Silicon Graphics Inc. Secs. Litig., 183 F.3d 970 (9th Cir. 1999); Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir.1996).

Regatta seeks leave to conduct discovery pertaining to the Federal Defendant's production of the Inspector General's audit of Regatta Bay and all correspondence relating to HUD's allegations that Regatta Bay defaulted in any way as would justify HUD's declaration of default and foreclosure. Regatta Bay also seeks depositions of David Ewing, Janet Browder, Ali Moghadam, HUD's Custodian of Records and Person(s) Most Knowledgeable pertaining to Regatta Bay and any undisclosed witnesses HUD would use to support its defense. (Rosequist Affidavit, ¶43.) The Inspector General's audit is expected to show HUD's knowledge of Regatta's course of performance and course of conduct pertaining to the advances which HUD apparently did not consider a material breach in the Inspector General's audit, but which HUD for the first time referred to as a "continuing material breach" in the year 2000.

HUD would depose David Ewing to confirm that he recommended to Bob Rosequist that Janet Browder's March 24, 2000 letter meant that HUD intended to foreclose regardless of what Regatta Bay did. Mr. Ewing's testimony is expected to further support Regatta Bay's showing of

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950



HUD's anticipatory breach excusing any nonperformance by Regatta Bay following HUD's anticipatory breach or anticipatory repudiation, by failing to permit Regatta Bay the time to cure the alleged delinquencies pursuant to the Note before acceleration of the Note and Deed of Trust. E.g., Franconia Assocs. v. United States, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002); Restatement (Second) of Contracts Section 253; UCC 2-610 (repudiation or anticipatory breach excuses nonperformance of the other party to a contract).

The deposition of Janet Browder is expected to show that Ms. Browder knew that the assertion of a violation by Regatta Bay in the March 24, 2000 letter was not based on a thorough, competent analysis of the facts. Regatta's deposition of Ali Moghadam is expected to show that the value of Regatta Bay was much more than the $3.6 million foreclosure sale price. Mr. Moghadam is believed to be the present owner of the subject apartment complex, and Mr. Moghadam stated to Mr. Rosequist that Mr. Moghadam was willing to pay up to $4 million for the subject apartments even under distressed sale conditions at the time of the foreclosure sale, supporting Regatta Bay's

LEE, LTD.
T LAW
EVARD SOUTH
ADA 89101
382-4044
383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

HUD's anticipatory breach excusing any nonperformance by Regatta Bay following HUD's anticipatory breach or anticipatory repudiation, by failing to permit Regatta Bay the time to cure the alleged delinquencies pursuant to the Note before acceleration of the Note and Deed of Trust. E.g., Franconia Assocs. v. United States, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002); Restatement (Second) of Contracts Section 253; UCC 2-610 (repudiation or anticipatory breach excuses nonperformance of the other party to a contract).

The deposition of Janet Browder is expected to show that Ms. Browder knew that the assertion of a violation by Regatta Bay in the March 24, 2000 letter was not based on a thorough, competent analysis of the facts. Regatta's deposition of Ali Moghadam is expected to show that the value of Regatta Bay was much more than the $3.6 million foreclosure sale price. Mr. Moghadam is believed to be the present owner of the subject apartment complex, and Mr. Moghadam stated to Mr. Rosequist that Mr. Moghadam was willing to pay up to $4 million for the subject apartments even under distressed sale conditions at the time of the foreclosure sale, supporting Regatta Bay's contention that the market value is substantially greater than the foreclosure sale price. (Rosequist Affidavit, ¶¶43, 44.)

Regatta Bay would discover HUD's correspondence and files pertaining to Regatta Bay to show HUD's knowledge of the detailed record keeping and reporting by Regatta which kept HUD fully informed concerning the course of performance and course of conduct pertaining to the alleged, but nonexistent, "continuing material breach". The depositions of HUD's Custodian of Records and Person(s) Most Knowledgeable should also allow these facts to be demonstrated with particularity concerning HUD's knowledge and waiver of objection to Regatta's course of performance and course of conduct. E.g., Central Ill. Pub. Serv. Co. v Atlas Minerals, 965 F. SUPP. 1162, 1173 (C.D. Ill. 1997) (waiver an intentional relinquishment of a known right); Westinghouse Credit Corp. v. Shelton, 645 F,2d 869 (10th Cir. 1981) (under the weight of authority even anti-waiver clauses are subject to waiver or modification by course of performance a question of fact). The obtaining of an appraisal should show the actual market value of the property. (Rosequist Affidavit, ¶¶43, 44.)

The Court should grant Regatta a continuance to permit its discovery to be made. E.g., Fed. R. Civ. P. 56(f) Visa International Service Assoc. v. Bankcard Holders of America, 784 F.2d 1472,

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

1475 (9th Cir. 1986). Regatta Bay and the Federal Defendant agree that there has been no lack of due diligence and that there is no element of bad faith pursuant to Plaintiff's motion. (Affidavit of Paul C. Ray, Esq.)

Regatta Bay requests the opportunity to conduct discovery. Regatta Bay's application is timely; it specifically identifies relevant information; and there is a basis for believing the information sought actually exists in compliance with Visa International Service Assoc., supra. Regatta Bay makes this request for discovery in good faith and not for purposes of delay.

## CONCLUSION

Regatta Bay requests the Court to enter an order permitting depositions to be taken and discovery to be had prior to the hearing of the Defendant's Motion for Summary Judgment.

DATED this 28th day of April, 2025.

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, NV 89101
(702) 382-4044 Fax: (702) 383-9950
*Attorneys for Plaintiff*