JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

v. United States, 58 Fed. Cl. 313, 325 (Ct. Cl., 2003); *See generally,* John W. Whelan, Understanding Federal Government Contracts, 6870 (1993). "'Since good faith is presumed unless bad faith is shown, the government is prevented only from engaging in actions motivated by a specific intent to harm plaintiff'. . . . Thus, in order to state a claim premised on a violation of the obligation of good faith and fair dealing, plaintiffs must allege facts which if proved would constitute malice or an intent to injure." Asco-Falcon, 32 Fed. Cl. at 604 (quoting Torncello v. United States, 681 F.2d 756, 760, 231 Ct. Cl. 20 (Ct. Cl. 1982); *See also,* Torncello, 681 F.2d at 770 (The government "is assumed always to act in good faith, subject only to an extremely difficult showing by the plaintiff to the contrary.").

However, difficult is not the same as impossible. *See*, Hubbard v. United States, 52 Fed. Cl. 192, 196 (2002), *stating,* "Plaintiff must ... overcome the rebuttable presumption that government officials act in good faith by proving malice, or bad faith; 'in other words, a specific intent to injure the plaintiff on the part of a government official.'" Morris v. United States, 33 Fed. Cl. 733, 752 (1995); Torncello, 681 F.2d at 771.

Regatta has stated a *prima facie* case through HUD's denial of its duty to insure the loan and HUD's denial that the plain meaning and spirit of the Regulatory Agreement required HUD to endorse insurance of the loan and to honor its own endorsement without making frivolous, strained demands for more than $1 million by Regatta which was not owed but the payment of which HUD required as a condition for continuing to honor its endorsement for insurance to which it obligated itself under the Regulatory Agreement. Such actions on behalf of and or at the direction of HUD may constitute, in other words, "a specific intent to injure the plaintiff on the part of a government official." Hubbard v. United States, 52 Fed. Cl. 192, 196 (2002); Beauchamp v United States, 6 Cl Ct 400 (1984). Discovery, and particularly depositions of the HUD and Reilly employees involved in these transactions, may reveal additional facts to overcome the rebuttable presumption that the HUD government officials acted in good faith.

As the Court is aware, no discovery has been conducted in this case. These allegations state a claim for breach of the implied covenant of good faith and fair dealing, particularly at this stage of the proceeding in this litigation S. Cal. Edison v. United States, 58 Fed. Cl. 313, 325 (Ct. Cl.,

2003).

**K. THIS COURT HAS JURISDICTION TO REVIEW REGATTA BAY'S CLAIMS FOR DAMAGES PURSUANT TO VIOLATION OF STATUTORY DUTIES REQUIRED IN THE MULTI-FAMILY MORTGAGE FORECLOSURE ACT.**

The Federal Defendant argues that Regatta's claim that HUD foreclosed upon "the property without the existence of the prerequisites to foreclosure" of the Multi-Family Mortgage Act, 12 U.S.C. §§ 3705-3708, (MMFA), in Regatta's complaint, should be rejected as non- money mandating, and that Regatta's arguments that "HUD wrongfully declared Regatta to be in breach and thereby failed to meet the prerequisites to foreclosure" pursuant to the MMFA, should be rejected. The Federal Defendant's arguments are misplaced.

First, as stated previously, Regatta's claims are based upon HUD's breach of contract and wrongful foreclosure of the property. The Federal Defendant does not recognize that Regatta does not claim that its violations of the MMFA equate to having caused Regatta its damages. Regatta's damages stem or arise from the Federal Defendant's breach of contract and wrongful declaration of default *well prior* to the procedure of notice and foreclosure mandated by the MMFA, that Regatta alleges was violated by the Federal Defendant. Simply stated, the breach of contract that Regatta complains of occurred well before HUD violated the MMFA, and the Federal Defendant's violations of the MMFA are subordinate to the gravamen of Regatta's case in chief.

The Federal Defendant states that Regatta is required to assert a money-mandating provision of the Constitution, a statute, or regulation, when a claim is not based upon breach of contract against the government, as a basis for this Court's jurisdiction. *See*, Soeken v. United States, 47 Fed. Cl. 430, 433 (2000). Regatta has established that its claims do have an independent basis and that the claims of the violations of the MMFA arise through the Federal Defendant's breach of the Regulatory Agreement and the Deed of Trust. This Court, as Regatta has shown above, has jurisdiction to hear Regatta's claim breach of contract claim independent of its claims that HUD violated the MMFA.

The MMFA establishes requirements that must be met before HUD may foreclose upon a property. *See*, MMFA §§ 3705-3708. Indeed, these requirements were not met because HUD breached the Deed of Trust months prior to when its violations of the MMFA occurred.

**JOHN PETER LEE, LTD.**
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

**L. DISCOVERY SHOULD PROVIDE ADDITIONAL SUPPORT FOR THIS COURT'S JURISDICTION TO UPHOLD AND REVIEW REGATTA BAY'S CLAIMS FOR DAMAGES PURSUANT TO A TAKING BY THE FEDERAL DEFENDANT.**

This is a breach of contract and wrongful foreclosure case. Regatta also claims for a taking by the Federal Defendant that entitles Regatta to damages. *See,* Palazzolo v. Rhode Island, 121 S. Ct. 2448, 2457 (2001) (a "regulatory taking" may occur when government action, although not encroaching upon or occupying private property, still affects and limits its use to such an extent that a taking occurs) (citing Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922)).

HUD argues that Regatta's taking theory is based upon a violation of contract, and that interference with contractual rights generally gives right to a breach claim, not a taking claim. The Federal Defendant argues that the two types of damages should not be commingled. The Federal Defendant has also argued that Regatta has no breach of contract claim, however.

Regatta's response is that, at this stage of the proceedings of this litigation, Regatta's takings claim is viable as an alternative claim for damages. *See,* Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 42 L. Ed. 2d 320, 95 S. Ct. 335 (1974) (In determining whether action under Tucker Act (28 USCS § 1491) may be maintained against government where claimant asserts taking of property for public use without just compensation in violation of Fifth Amendment, general rule is that whether or not United States so intended, if there is taking, claim is "founded upon Constitution" and within jurisdiction the U.S. Court of Federal Claims to hear and determine; if authorized governmental action constitutes taking of property for which there must be just compensation under Fifth Amendment, where the government has impliedly promised to pay such compensation and has afforded remedy for its recovery by suit in Court of Claims).

Regatta lost its right to alienate the property through HUD's exercise of the power of sale in the deed of trust. While HUD's action constitutes a breach of contract and a tortious breach of contract, Regatta's right to retain title, to receive written notice of the opportunity to cure the default and to control the alienation of its property are property rights which the government took through the exercise of the power of sale in the trust deed under the MMFA. Discovery in this case may reveal additional facts to show how the Federal Defendant used the MMFA to exercise the power

of sale to take Regatta's property rights. As to any alleged procedural shortcoming with the takings claim, Regatta requests that its "takings" claim not be dismissed until full discovery has been completed in this case.

## V. CONCLUSION.

Regatta requests the Court to enter an order denying the Federal Defendant's Motion for Summary Judgment.

DATED this 28th day of April, 2005.

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
Nevada Bar No. 001768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, NV 89101
(702) 382-4044 Fax: (702) 383-9950
*Attorneys for Plaintiff*

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

UNITED STATES CODE SERVICE

Copyright © 2005 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 109-7, APPROVED 4/15/05 ***

TITLE 12. BANKS AND BANKING

CHAPTER 13. NATIONAL HOUSING
MORTGAGE INSURANCE

12 USCS § 1715z-4a

(2005)

§ 1715z-4a. Double damages remedy for unauthorized use of multifamily housing project assets and income

(a) Action to recover assets or income.

(1) The Secretary of Housing and Urban Development (referred to in this section as the "Secretary") may request the Attorney General to bring an action in a United States district court to recover any assets or income used by any person in violation of (A) a regulatory agreement that applies to a multi-family project, nursing home, intermediate care facility, board and care home, assisted living facility, or hospital whose mortgage is insured or held by the Secretary under title II of the National Housing Act [12 USCS §§ 1707 et seq.]; (B) a regulatory agreement that applies to a multifamily project whose mortgage is or, at the time of the violations, was insured or held by the Secretary under section 202 of the Housing Act of 1959 [12 USCS § 1701q] (including property subject to section 202 of such Act as it existed before enactment of the Cranston-Gonzalez National Affordable Housing Act of 1990 [enacted Nov. 28, 1990]); (C) a regulatory agreement or such other form of regulatory control as may be imposed by the Secretary that applies to mortgages insured or held by the Secretary under section 542 of the Housing and Community Development Act of 1992 [12 USCS § 1707 note], but not reinsured under section 542 of the Housing and Community Development Act of 1992 [12 USCS § 1707 note]; or (D) any applicable regulation. For purposes of this section, a use of assets or income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation shall include any use for which the documentation in the books and accounts does not establish that the use was made for a reasonable operating expense or necessary repair of the property and has not been maintained in accordance with the requirements of the Secretary and in reasonable condition for proper audit.

(2) For purposes of a mortgage insured or held by the Secretary under title II of the National Housing Act [12 USCS §§ 1707 et seq.], under section 202 of the Housing Act of 1959 [12 USCS § 1701q] (including section 202 of such Act as it existed before enactment of the Cranston-Gonzalez National Affordable Housing Act of 1990 [enacted Nov. 28, 1990]) and under section 542 of the Housing and Community Development Act of 1992 [12 USCS § 1707 note], the term "any person" shall mean any person or entity that owns or operates a property, as identified in the regulatory agreement, including but not limited to--

(A) any stockholder holding 25 percent or more interest of a corporation that owns that property;

(B) any beneficial owner of the property under any business or trust;

(C) any officer, director, or partner of an entity owning or controlling the property;

(D) any nursing home lessee or operator;

(E) any hospital lessee or operator;

(F) any other person or entity that controls the property regardless of that person or entity's official relationship to the property; and

(G) any heir, assignee, successor in interest, or agent of any person or entity described in the preceding subparagraphs.

(b) Initiation of proceedings and temporary relief. The Attorney General, upon request of the Secretary, shall have the exclusive authority to authorize the initiation of proceedings under this section. Pending final resolution of any action under this section, the court may grant appropriate temporary or preliminary relief, including restraining orders, injunctions, and acceptance of satisfactory performance bonds, to protect the interests of the Secretary and to prevent use of assets or income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, and any applicable regulation and to prevent loss of value of the realty and personalty involved.

(c) Amount recoverable. In any judgment favorable to the United States entered under this section, the Attorney General may recover double the value of the assets and income of the property that the court determines to have been used in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation, plus all costs relating to the action, including but not limited to reasonable attorney and auditing fees. Notwithstanding any other provision of law, the Secretary may apply the recovery, or any portion of the recovery, to the property or to the applicable insurance fund under the National Housing Act or, in the case of any project for which the mortgage is held by the Secretary under section 202 of the Housing Act of 1959 [12 USCS § 1701q] (including property subject to section 202 of such Act as it existed before enactment of the Cranston-Gonzalez National Affordable Housing Act of 1990 [enacted Nov. 28, 1990]), to the project or to the Department for use by the appropriate office within the Department for administrative costs related to enforcement of the requirements of the various programs administered by the Secretary, as appropriate.

(d) Time limitation. Notwithstanding any other statute of limitations, the Secretary may request the Attorney General to bring an action under this section at any time up to and including 6 years after the latest date that the Secretary discovers any use of a property's assets and income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation.

(e) Continued availability of other remedies. The remedy provided by this section is in addition to any other remedies available to the Secretary or the United States.

**HISTORY:**

(Feb. 5, 1988, P.L. 100-242, Title IV, Subtitle A, § 421, 101 Stat. 1913.)
(As amended Oct. 27, 1997, P.L. 105-65, Title V, Subtitle C, Part 2, § 563, 111 Stat. 1420; Dec. 8, 2004, P.L. 108-447, Div I, Title II, § 220, 118 Stat. 3319.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

References in text:
The "National Housing Act", referred to in this section, is Act June 27, 1934, ch 847, which appears generally as 12 USCS §§ 1701 et seq. For full classification of such Act, consult USCS Tables volumes.

Explanatory notes:
This section was enacted as part of Act Feb. 5, 1988, P.L. 100-242, the Housing and Community Development Act of 1987, and not as part of Act June 27, 1934, ch 847, the National Housing Act, which generally comprises this chapter.

Amendments:

1997. Act Oct. 27, 1997, in subsec. (a), in para. (1), substituted "Act; (B) a regulatory agreement that applies to a multifamily project whose mortgage is insured or held by the Secretary under section 202 of the Housing Act of 1959 (including property subject to section 202 of such Act as it existed before enactment of the Cranston-Gonzalez National Affordable Housing Act of 1990); (C) a regulatory agreement or such other form of regulatory control as may be imposed by the Secretary that applies to mortgages insured or held by the Secretary under section 542 of the Housing and Community Development Act of 1992, but not reinsured under section 542 of the Housing and Community Development Act of 1992; or (D)" for "Act; or (B)" and inserted ", or such other form of regulatory control as may be imposed by the Secretary," and, in para. (2), inserted "under section 202 of the Housing Act of 1959 (including section 202 of such Act as it existed before enactment of the Cranston-Gonzalez National Affordable Housing Act of 1990) and under section 542 of the Housing and Community Development Act of 1992,"; in subsec. (b), inserted ", or such other form of regulatory control as may be imposed by the Secretary,"; in subsec. (c), inserted ", or such other form of regulatory control as may be imposed by the Secretary," and inserted "or, in the case of any project for which the mortgage is held by the Secretary under section 202 of the Housing Act of 1959 (including property subject to section 202 of such Act as it existed before enactment of the Cranston-Gonzalez National Affordable Housing Act of 1990), to the project or to the Department for use by the appropriate office within the Department for administrative costs related to enforcement of the requirements of the various programs administered by the Secretary, as appropriate"; and, in subsec. (d), inserted ", or such other form of regulatory control as may be imposed by the Secretary,".

2004. Act Dec. 8, 2004, in subsec. (a), in para. (1), in subpara. (A), inserted ", nursing home, intermediate care facility, board and care home, assisted living facility, or hospital", in subpara. (B), inserted "or, at the time of the violations, was", and, in the concluding matter, substituted "property" for "project", and, in para. (2), substituted "that owns or operates a property, as identified in the regulatory agreement, including but not limited to--" and subparas. (A)-(G) for "which owns a project, as identified in the regulatory agreement, including but not limited to any stockholder holding 25 percent or more interest of a corporation that owns the project; any beneficial owner under any business or trust; any officer, director, or partner of an entity owning the project; and any heir, assignee, successor in interest, or agent of any owner."; in subsec. (c), substituted "the property" for "the project" in two places; and, in subsec. (d), substituted "a property's" for "project".

**§ 107.080. Trustee's power of sale: Power conferred; required notices; effect of sale.**

1. Except as otherwise provided in NRS 107.085, if any transfer in trust of any estate in real property is made after March 29, 1927, to secure the performance of an obligation or the payment of any debt, a power of sale is hereby conferred upon the trustee to be exercised after a breach of the obligation for which the transfer is security.

2. The power of sale must not be exercised, however, until:

(a) In the case of any trust agreement coming into force:

(1) On or after July 1, 1949, and before July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 15 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment; or

(2) On or after July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 35 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment;

(b) The beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of his election to sell or cause to be sold the property to satisfy the obligation; and

(c) Not less than 3 months have elapsed after the recording of the notice.

3. The 15- or 35-day period provided in paragraph (a) of subsection 2 commences on the first day following the day upon which the notice of default and election to sell is recorded in the office of the county recorder of the county in which the property is located and a copy of the notice of default and election to sell is mailed by registered or certified mail, return receipt requested and with postage prepaid to the grantor, and to the person who holds the title of record on the date the notice of default and election to sell is recorded, at their respective addresses, if known, otherwise to the address of the trust property. The notice of default and election to sell must describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust, but acceleration must not occur if the deficiency in performance or payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency in performance or payment are paid within the time specified in subsection 2.

4. The trustee, or other person authorized to make the sale under the terms of the trust deed or transfer in trust, shall, after expiration of the 3-month period following the recording of the notice of breach and election to sell, and before the making of the sale, give notice of the time and place thereof in the manner and for a time not less than that required by law for the sale or sales of real property upon execution. The sale itself may be made at the office of the trustee, if the notice so provides, whether the property so conveyed in trust is located within the same county as the office of the trustee or not.

5. Every sale made under the provisions of this section and other sections of this chapter vests in the purchaser the title of the grantor and his successors in interest without equity or right of redemption. The

4

sale of a lease of a dwelling unit of a cooperative housing corporation vests in the purchaser title to the shares in the corporation which accompany the lease.

(1927, p. 292; 1949, p. 70; CL 1929 (1949 Supp.), § 7710; 1957, p. 631; 1959, p. 10; 1961, p. 23; 1965, pp. 611, 1242; 1967, p. 198; 1979, p. 708; 1987, ch. 685, § 8, p. 1644; 1989, ch. 750, § 12, p. 1770; 2003, ch. 465, § 11, p. 2893.)

**Editor's note.** - Pursuant to Acts 1987, ch. 685, § 9, subsection 6 of this section "applies to a guaranty, suretyship agreement or other document evidencing an obligation which was executed before December 23, 1986, or after passage and approval (June 21, 1987) of this act."

**Effect of Amendment.** - The 2003 amendment, effective October 1, 2003, inserted the exception at the beginning of subsection 1.

**Cross references.** - As to removal of person holding over after 3-day notice to quit where property has been sold under a power of sale, see NRS 40.255.

As to standards for conducting foreclosure sales and deficiency judgments, see NRS 40.451 to 40.459.

**CASE NOTES**

**Deed of trust establishes rights, responsibilities, and duties.** - The deed of trust establishes the rights and responsibilities of the parties and prescribes certain duties to be performed by the trustees. Edwards v. John Hancock Mut. Life Ins. Co., 973 F.2d 1027 (1st Cir. 1992).

**The judicial foreclosure pursuant to NRS 40.430 and the foreclosure procedure under this chapter are not inconsistent remedies.** Nevada Land & Mtg. Co. v. Hidden Wells Ranch, Inc., 83 Nev. 501, 435 P.2d 198 (1967).

Where a default has occurred, a beneficiary, under a deed of trust, can select the judicial process for foreclosure pursuant to NRS 40.430, or the procedure under this chapter, of foreclosure by a trustee's sale and then bring an action on the promissory note for any deficiency which may occur. Nevada Land & Mtg. Co. v. Hidden Wells Ranch, Inc., 83 Nev. 501, 435 P.2d 198 (1967).

**A purchaser under a recorded long-term real estate installment contract was entitled to notice** of a trustee's foreclosure sale as a successor in interest. Title Ins. & Trust Co. v. Chicago Title Ins. Co., 97 Nev. 523, 634 P.2d 1216 (1981).

**One who has acquired legal title by deed from a vendor** is entitled to the status of a successor in interest. Title Ins. & Trust Co. v. Chicago Title Ins. Co., 97 Nev. 523, 634 P.2d 1216 (1981).

**Pre-petition purchase at foreclosure of Chapter 13 debtor's property** terminated debtor's interest in the property upon the sale; post-petition recordation of the deed did not violate the automatic stay or render the sale void. In re Grant, 303 Bankr. 205 (Bankr. D. Nev. 2003).

**Bank failed to properly notice trustee's sale** as required by this section where the bank was prohibited by a stipulation that there would be no continuances of the foreclosure sale unless agreed to in writing by the bank and the debtor, and the bank continued the sale by public announcement without an agreement in writing to do so. Therefore, since the bank could not continue the sale, the bank would have had to renotice the sale pursuant to the statute. Nevada State Bank v. Jamison Family Partnership, 106 Nev. 792, 801 P.2d 1377 (1990).

**The fact that the trustor did not receive notice was immaterial because** subsection 3 of this section does not require proof that the notice of default and election to sell be received by the trustor. Turner v. Dewco Servs., Inc., 87 Nev. 14, 479 P.2d 462 (1971).

**As notice is presumed after compliance.** - NRS 21.130 obviously intends publication to give notice of the

5

sale of the premises to possible third-party buyers and the defaulting party should he not have received the notice provided in this section; thus, where there was publication as provided in NRS 21.130 all persons it was intended to inform must be presumed to have been so informed and the purpose of the statute fulfilled. Turner v. Dewco Servs., Inc., 87 Nev. 14, 479 P.2d 462 (1971).

**Notice of sale to successor in interest of grantor prior to sale.** - Under NRS 21.130 and subsection (4) a trustee is required to give notice of the sale of property to the successor in interest of the grantor of the deed of trust before proceeding with the sale. Rose v. First Fed. Sav. & Loan Ass'n, 105 Nev. 454, 777 P.2d 1318 (1989).

**Trustee has no duty to search for debtor.** - Where statutory notices of default and foreclosure sale were sent to debtor's former street address and post office box number the trustee was under no duty to search for the debtor when the notices were returned unclaimed as it was the debtor's responsibility to request that the post office transfer her mail from one post office box to another; however, the fact that first trustee of deed knew the debtor's last known address and failed to advise second trustee was moot since debtor's call to first trustee established the fact that debtor actually knew about the foreclosure sale. Madrid v. Del Mar Commerce Co., 10 Bankr. 795 (Bankr. D. Nev. 1981), rev'd on other grounds sub nom. Lawyers Title Ins. Corp. v. Madrid, 21 Bankr. 424 (Bankr. D. Nev. 1982), aff'd, 725 F.2d 1197 (9th Cir.), cert. denied, 469 U.S. 833, 105 S. Ct. 125, 83 L. Ed. 2d 66 (1984).

The fact that a debtor appeared at the office of a title company who was the trustee on a deed of trust to request a title report on another piece of real property and the order was sent to her at her new post office box number was not sufficient to put the title company on notice that the debtor was using a new box number rather than the old one. Madrid v. Del Mar Commerce Co., 10 Bankr. 795 (Bankr. D. Nev. 1981), rev'd on other grounds sub nom. Lawyers Title Ins. Corp. v. Madrid, 21 Bankr. 424 (Bankr. D. Nev. 1982), aff'd, 725 F.2d 1197 (9th Cir.), cert. denied, 469 U.S. 833, 105 S. Ct. 125, 83 L. Ed. 2d 66 (1984).

**Postponements of sale.** - Ordinarily where, in the first instance, notice of sale has been given by publication and posting as required by NRS 21.130, postponements may lawfully be made by oral public proclamation only. McLaughlin v. Mutual Bldg. & Loan Ass'n, 57 Nev. 181, 60 P.2d 272 (1936).

**Opportunity to cure defects.** - A purchaser of real estate who is a grantor of a deed of trust should have a reasonable opportunity to cure a default or deficiency before the property may be sold by the trustee, and such opportunity should be extended to one who holds under such a grantor. Title Ins. & Trust Co. v. Chicago Title Ins. Co., 97 Nev. 523, 634 P.2d 1216 (1981).

**No state action.** - This section confers a power of sale upon the trustee, it does not necessarily transform a private, nonjudicial foreclosure into state action for purposes of suits alleging violations of due process. Charmicor, Inc. v. Deaner, 572 F.2d 694 (9th Cir. 1978).

**Sale not a forfeiture.** - A lien foreclosure sale of a mobile home lot held to recover arrearages in past due assessments by the mobile homeowners' association was not a forfeiture where the sale was conducted under the association's declaration of covenants and in compliance with this section and the former owner had received notice of the sale and the excess of the sale price over the lien and costs. Long v. Towne, 98 Nev. 11, 639 P.2d 528 (1982).

**Cited in**: Kraemer v. Kraemer, 79 Nev. 287, 382 P.2d 394 (1963); Moore v. Prindle, 80 Nev. 369, 394 P.2d 352 (1964); Charmicor, Inc. v. Bradshaw Fin. Co., 92 Nev. 310, 550 P.2d 413 (1976); Hankins v. Administrator of Veterans Affairs, 92 Nev. 578, 555 P.2d 483 (1976); Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 623 P.2d 981 (1981); Bramham v. Nevada First Thrift, 38 Bankr. 459 (Bankr. D. Nev. 1984).

Prev Doc Next Doc

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS

Copyright (C) 2005, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE APRIL 21, 2005 ISSUE OF ***

*** THE FEDERAL REGISTER ***

TITLE 24 -- HOUSING AND URBAN DEVELOPMENT

SUBTITLE B -- REGULATIONS RELATING TO HOUSING AND URBAN DEVELOPMENT
CHAPTER II -- OFFICE OF ASSISTANT SECRETARY FOR HOUSING -- FEDERAL HOUSING COMMISSIONER, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SUBCHAPTER B -- MORTGAGE AND LOAN INSURANCE PROGRAMS UNDER NATIONAL HOUSING ACT AND OTHER AUTHORITES
PART 207 -- MULTIFAMILY HOUSING MORTGAGE INSURANCE
SUBPART B -- CONTRACT RIGHTS AND OBLIGATIONS
RIGHTS AND DUTIES OF MORTGAGEE UNDER THE CONTRACT OF INSURANCE

**CITE:** 24 CFR 207.257

§ 207.257 Commissioner's right to require acceleration.

Upon receipt of notice of violation of a convenant, as provided for in § 207.256(b), or otherwise being appraised thereof, the Commissioner reserves the right to require the mortgagee to accelerate payment of the outstanding principal balance due in order to protect the interests of the Federal Housing Commissioner.

**SOURCE-1:** 36 FR 24537, Dec. 22, 1971.

**AUTHORITY-1:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
12 U.S.C. 1701z-11(e), 1709(c)(1), 1713 and 1715b; 42 U.S.C. 3535(d).

# EXHIBIT "1"

# GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH: That PHIL ROBERT ROSEQUIST

FOR A VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, do hereby Grant, Bargain, Sell and Convey to Regatta Bay, Ltd., a Nevada Limited Partnership

all that real property situated in the ______ County of Clark State of Nevada, bounded and described as follows:

SEE EXHIBIT A ATTACHED HERETO.

Subject only to:

(1) Covenants, conditions, restrictions, reservations, and rights of way of record.

(2) Real estate taxes for the fiscal year 1982-1983.

(3) First deed of trust in favor of Weyerhaeuser Mortgage Company for the principal sum of $3,685,100.00.

(4) Second deed of trust in favor of Frank M. Blackburn and Lillian Ann Blackburn for the principal sum of $671,000.00.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Witness my hand this 28th day of October, 1983

Phil Robert Rosequist

STATE OF NEVADA
COUNTY OF Clark } SS.

On October 28th 1983 personally appeared before me, a Notary Public, Phil Robert Rosequist

who acknowledged that he executed the above instrument.

Signature ______
(Notary Public)

(Notarial Seal)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
JIM WARD
My Appointment Expires Jan. 14, 1984

ESCROW NO.
ORDER NO.
WHEN RECORDED MAIL TO:
CLARK, GREENE, RICHARDS & BROWN
ATTORNEYS AT LAW
5506 SO. EASTERN AVE.
LAS VEGAS, NEVADA 89119

FORM 4079

EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

Situate in the County of Clark, State of Nevada, described as follows:

A portion of the East Half (E½) of Government Lot 2, Section 19, T.20 S., R. 62 E., M.D.M., Clark County, Nevada, more particularly described as follows:

COMMENCING at the Southeast corner of said Government Lot 2; thence N. 01°03'25" W., along the Easterly line thereof, 425.05 feet to the TRUE POINT OF BEGINNING; thence continuing N. 01°03'25" W., 329.32 feet to a point on the Southerly boundary of Regatta Estates as shown by a plat on file as Book 22 of Plats, Page 98, on file in the Clark County, Nevada Official Records; thence along the said Southerly boundary the following courses: S. 88°56'35" W., 140.00 feet; N. 01°03'25" W., 457.72 feet; N. 89°38'21" W., 529.77 feet to a point on the West line of the aforesaid East Half (E½) of the Government Lot 2; thence along said line, S. 00°52'52" E., 503.92 feet; thence departing said line, S. 89°33'46" E., 314.35 feet; thence S. 00°44'27" E., 278.69 feet; thence S. 89°33'46" E., 358.57 feet to the TRUE POINT OF BEGINNING.

CLARK COUNTY NEVADA
JOAN L. SWIFT RECORDER
RECORDED AT REQUEST OF
LAND TITLE OF NEVADA
Nov 2 10 33 AM '83
FEE DEPUTY
OFFICIAL RECORDS
BOOK INSTRUMENT

1828 1787040

10

# EXHIBIT "2"

FHA FORM NO. 4146-C
(CORPORATE)

Weyerhaeuser Mortgage Co.
10839 Santa Monica Blvd.
Los Angeles, Ca. 90025
Attn: Project Loans

083580

# DEED OF TRUST

THIS DEED OF TRUST, made and entered into this 1st day of September, in the year 19 79, by and between REGATTA APARTMENTS, a Nevada limited partnership, a corporation organized and existing under the laws of the State of Nevada, having its principal place of business at Las Vegas, Nevada, party hereto of the first part, hereinafter sometimes referred to as the "Grantor," and WESTWOOD ASSOCIATES, a California corporation, of Los Angeles, California, as Trustee, party of the second part, hereinafter sometimes referred to as the "Trustee," and WEYERHAEUSER MORTGAGE COMPANY, a corporation organized and existing under the laws of the State of California, with its principal office in the City of Los Angeles, State of California, party hereto of the third part and hereinafter sometimes referred to as the "Beneficiary" (which designations shall include the respective successors and assigns and the successors in the interest of the several parties).

WHEREAS, the party of the first part is justly indebted to the party of the third part in full sum of Three Million Six Hundred Eighty-Five Thousand One Hundred and No/100 - - - - - - - - - - - - Dollars ($ 3,685,100.00), evidenced by its Note of even date herewith, bearing interest from date on outstanding balance at *seven and one-half per cent per annum, payable in monthly installments beginning on the first day of the month following the date hereof with a final maturity of March 1, 2021, which Note is identified as being secured hereby by a certificate thereon. Said Note and all of its terms are incorporated herein by reference; however evidenced.

AND WHEREAS, the Grantor desires to secure to the Beneficiary the full and punctual payment of said debt and interest thereon, and to secure the performance of the covenants herein contained, as well as any and all renewals or extensions of said Note, or of any part thereof, with interest thereon; and also to secure the reimbursement to the holder or holders of said Note and to the Trustee or substitute trustee, for all money which may hereafter be advanced for any purpose provided for by the terms of this Deed of Trust or the covenants hereof adopted by reference, and for any and all costs and expenses (including reasonable attorney's fees) incurred or paid on account of any litigation at law or in equity which may arise in respect to this trust, or to the indebtedness or to the property herein mentioned, or in obtaining possession of the premises after any sale which may be made as hereinafter provided for;

NOW, THEREFORE, THIS DEED OF TRUST WITNESSETH: That the said Grantor, in consideration of the premises and of One Dollar ($1), to it in hand paid by the Trustee (the receipt of which, before the sealing and delivery of these presents, is hereby acknowledged), has granted, bargined, sold, conveyed, and confirmed, and does hereby grant, bargain, sell, convey, and confirm unto the Trustee, his successors and assigns in trust forever, the following-described land and premises with the improvements thereon, together with all privileges, hereditaments, water rights, mineral rights, easements, rights, ways and appurtenances thereunto belonging, situated and lying in , in the County of Clark, State of Nevada, more particularly described as follows:

See Exhibit "A" attached hereto and made a part hereof.

See Exhibit "B" attached hereto and made a part hereof.

*From initial through final endorsement, the interest rate shall be at the rate of nine and one-half per centum (9½) per annum

12

BOOK 1124 1083580

7-2

TOGETHER with all of the rents, issues, and profits which may arise or be had therefrom; and all building materials and equipment now or hereafter delivered to said premises and intended to be installed therein;

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, including but not limited to all gas and electric fixtures, engines and machinery, radiators, heaters, furnaces, heating equipment, steam and hot water boilers, stoves, ranges, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating equipment, cabinets, mantels, refrigerating plant and refrigerators, whether mechanical or otherwise, cooking apparatus and appurtenances, furniture, shades, awnings, screens, venetian blinds and other furnishings; and

All articles of personal property owned by the party of the first part and now or hereafter attached to or used in and about the building or buildings now erected or hereafter to be erected on the lands herein described which are necessary to the complete and comfortable use and occupancy of such building or buildings for the purposes for which they were or are to be erected, including all goods and chattels and personal property as are ever used or furnished in operating a building or the activities conducted therein similar to the one herein described and referred to, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are, or shall be attached to said building or buildings in any manner. It is hereby agreed that to the extent permitted by law all of the foregoing property and fixtures are to be deemed and held to be a part of and affixed to the realty.

TO HAVE AND TO HOLD the above granted and bargained premises, together with all the privileges and appurtenances, unto said Trustee, its successors in this trust, and assigns, forever, to its and their proper use and behoof.

AND the said Grantor does hereby covenant for itself, its successors and assigns, that it is seized of said land and premises in fee simple and has the right to convey the same to the said Trustee, that the said Trustee shall have quiet possession thereof, free from all encumbrances, and that it, the said Grantor, will execute such further assurances thereof as may be requisite.

IN AND UPON THE USES AND TRUSTS FOLLOWING, that is to say:

Until any default in payment of any matter of indebtedness hereby secured as herein provided for, or until breach of any of the covenants herein contained, to permit the said Grantor, its successors and assigns, to possess and enjoy said land and premises, and to receive the rents, issues, and profits thereof; and on full payment of said Note, and of any extensions or renewals thereof, and interest thereon, and all sums advanced or expended as herein provided, and all other proper costs, charges, expenses, commissions, and half-commissions, at any time before the sale hereinafter provided for, to release and reconvey unto and at the cost of the said Grantor, or the party or parties then claiming under it, the aforesaid land and premises.

Upon any default being made in the payment of any installment of principal and/or interest under said Note or payment of any monthly sum as hereafter provided in paragraph 9 *(a)* or *(b)* hereof, not made good prior to the due date of the next such payment, or in payment of any ground rent, tax or assessment or water rate, or hazard insurance premium (it being hereby agreed that in default thereof, the Beneficiary may pay same and that any sum so paid or paid by Beneficiary for mortgage insurance premiums not otherwise provided for, or for repairs or for any proper cost or expense of this trust, shall be secured hereby, shall bear interest at the rate specified in the Note and shall be payable on demand), or upon failure to keep or perform any covenant agreement or condition hereunder, the entire unpaid balance of the principal sum and all advances with unpaid interest to date shall immediately become due at the option of the Beneficiary and thereupon the Trustee, or his successor in this trust, shall have power and it shall be his duty, after (1) the lapse of 15 days during which the Grantor shall have failed to make good such default, (2) after due recording in the office of the recorder in the county where the property lies of notice of such default and election by the Beneficiary to cause the trust property to be sold in payment of the debt after (3) the elapse of at least 3 months and (4) after the Trustee shall have given notice by publication and /or otherwise as of the time and place of such sale, all as required by law, to sell and in case of any default of any purchaser, to resell at public auction for cash in one or more parcels, the mortgaged premises and property herein described and to convey the same in fee simple upon compliance with the terms of the sale to and at the cost of the purchaser or purchasers thereof, who shall not be required to see to the application of the purchase money; and to apply the proceeds of said sale or sales; Firstly, to pay all proper costs, charges and expenses, including all attorneys' and other fees, herein provided for, and all moneys advanced for costs or expenses of litigation as aforesaid, or taxes or assessments, water rates, or insurance or mortgage insurance with interest thereon as aforesaid, and all taxes, general and special, and assessments, due upon said land and premises at time of sale; Secondly, to retain as compensation a commission of one percentum (1%) on the gross amount of the said sale or sales; Thirdly, to pay whatever may then remain unpaid of the principal of the said Note whether same shall be due or not, and the interest thereon to date of payment; and, Lastly, to pay the remainder of said proceeds, if any, to said Grantor, or assigns, upon the delivery of and surrender to the purchaser, his, her, or their heirs or assigns, of possession of the premises as aforesaid sold and conveyed, less the expense, if any, of obtaining possession.

The Grantor, in order more fully to protect the security hereof, covenants and agrees as follows:

1. That Grantor will pay the Note at the times and in the manner provided therein;

2. That Grantor will not permit or suffer the use of any of the property for any purpose other than the use for which the same was intended at the time this Deed of Trust was executed;

3. That the Regulatory Agreement, if any, executed by the Grantor and the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, which is being recorded simultaneously herewith, is incorporated in and made a part of this Deed of Trust. Upon default under the Regulatory Agreement and upon the request of the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, the Beneficiary, at its option, may declare the whole of the indebtedness secured hereby to be due and payable;

4. That all rents, profits and income from the property covered by this Deed of Trust are hereby assigned to the Beneficiary for the purpose of discharging the debt hereby secured. Permission is hereby given to Grantor so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Regulatory Agreement;

5. That upon default hereunder Beneficiary shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom;

6. That at the option of the Grantor the principal balance secured hereby may be reamortized on terms acceptable to the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner if a partial prepayment results from an award in condemnation in accordance with provisions of Paragraph 8 herein, or from an insurance payment made in accordance with provisions of Paragraph 7 herein, where there is a resulting loss of project income;

7. That the Grantor will keep the improvements now existing or hereafter erected on the deeded property insured against loss by fire and such other hazards, casualties, and contingencies, as may be stipulated by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner upon the insurance of the Deed of Trust and other hazards as may be required from time to time by the Beneficiary, and all such insurance shall be evidenced by standard Fire and Extended Coverage Insurance Policy or Policies, in amounts not less than necessary to comply with the applicable Co-insurance Clause percentage, but in no event shall the amounts of coverage be less than 80% of the Insurable Values or not less than the unpaid balance of the insured Deed of Trust, whichever is the lesser, and in default thereof the Beneficiary shall have the right to effect insurance. Such policies shall be endorsed with standard Mortgagee clause with loss payable to the Beneficiary and the Secretary of Housing and Urban Development as interest may appear, and shall be deposited with the Beneficiary;

That if the premises covered hereby, or any part thereof, shall be damaged by fire or other hazard against which insurance is held as hereinabove provided, the amounts paid by any insurance company in pursuance of the contract of insurance to the extent of the indebtedness then remaining unpaid, shall be paid to the Beneficiary, and, at its option, may be applied to the debt or released for the repairing or rebuilding of the premises;

13

That all awards of damages in connection with any condemnation for public use of or injury to any of said property are hereby assigned and shall be paid to the Beneficiary to be applied to the amount due under the Note secured hereby in (1) amounts equal to the next maturing installment or installments of principal and (2) with any balance to be credited to the next payment due under the Note. No amount applied to the reduction of the principal amount due in accordance with (1) shall be considered an optional prepayment as the term is used in this Deed of Trust and the Note secured hereby, nor relieve the Grantor from making regular monthly payments commencing on the first day of the first month following the date of receipt of the award. The Beneficiary is hereby authorized in the name of the Grantor to execute and deliver valid acquittances for such awards and to appeal from such awards.

9. That, together with and in addition to the monthly payments of interest or of principal and interest, payable under the terms of the Note secured hereby, Grantor will pay to the Beneficiary, on the first day of each succeeding month after the date hereof until the Note is fully paid, the following sums:

*(a)* An amount sufficient to provide the Beneficiary with funds to pay the next mortgage insurance premium if this instrument and the Note secured hereby are insured, or a monthly service charge, if they are held by the Secretary of Housing and Urban Development, as follows:

(I) If and so long as said Note of even date and this instrument are insured or are reinsured under the provisions of the National Housing Act, an amount sufficient to accumulate in the hands of the Beneficiary one month prior to its due date the annual mortgage insurance premium, in order to provide such Beneficiary with funds to pay such premium to the Secretary of Housing and Urban Development pursuant to the National Housing Act, as amended, and applicable Regulations thereunder, or;

(II) If and so long as said Note of even date and this instrument are held by the Secretary of Housing and Urban Development, a monthly service charge in an amount equal to 1/12 of ½% of the average outstanding principal balance due on the Note computed for each successive year beginning with the first day of the month following the date of this instrument, if the Secretary of Housing and Urban Development is the Beneficiary named herein or the first day of the month following assignment, if the Note and this instrument are assigned to the Secretary of Housing and Urban Development without taking into account delinquencies or prepayment;

*(b)* A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other property insurance covering the premises covered hereby, plus water rates, taxes and assessments next due on the premises covered hereby (all as estimated by the Beneficiary) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, water rates, taxes and assessments will become delinquent, such sums to be held by Beneficiary in trust to pay said ground rents, premiums, water rates, taxes, and special assessments.

*(c)* All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the Note secured hereby shall be added together and the aggregate amount thereof shall be paid each month in a single payment to be applied by Beneficiary to the following items in the order set forth:

(I) premium charges under the Contract of Insurance with the Secretary of Housing and Urban Development or service charge;
(II) ground rents, taxes, special assessments, water rates, fire and other property insurance premiums;
(III) interest on the Note secured hereby;
(IV) amortization of the principal of said Note;

10. In the event the Grantor fails to pay any sums provided for in this Deed of Trust, the Beneficiary, at its option, may pay the same. Any excess funds accumulated under (b) of the preceding paragraph remaining after payment of the items therein mentioned, shall be credited to subsequent monthly payments of the same nature required thereunder; but if any such item shall exceed the estimate therefor, or if the Grantor shall fail to pay any other governmental or municipal charge, the Grantor shall forthwith make good the deficiency or pay the charge before the same become delinquent or subject to interest or penalties and in default thereof the Beneficiary may pay the same. All sums paid by the Beneficiary and any sums which the Beneficiary may be required to advance to pay mortgage insurance premiums shall be added to the principal of the debt secured hereby and shall bear interest from the date of payment at the rate specified in the Note and shall be due and payable on demand. In case of termination of the Contract of Mortgage Insurance by prepayment of the Deed of Trust in full, or otherwise (except as hereinafter provided), accumulations under (a) of the preceding paragraph hereof not required to meet payments due under the Contract of Mortgage Insurance, shall be credited to the Grantor. If the property is sold under foreclosure or is otherwise acquired by the Beneficiary after default, any remaining balance of the accumulations under (b) of the preceding paragraph shall be credited to the principal of the Deed of Trust as of the date of the commencement of foreclosure proceedings or as of the date the property is otherwise acquired; and accumulations under (a) thereof shall be likewise credited unless required to pay sums due the Secretary of Housing and Urban Development under the Contract of Mortgage Insurance;

11. The Grantor will pay all grounds rents, taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, for which provision has not been made by payments as hereinbefore provided, and in default thereof the Beneficiary may pay the same. That in pursuance of the provisions of Nevada Revised Statutes 361.250, the parties hereby agree and stipulate that all taxes levied and assessed under the provisions of said act or any amendment or revision thereof which shall be a lien upon the premises and property herein described shall be paid by the owner of the property and not by the Beneficiary hereunder or any subsequent owner of the debt secured hereby;

12. To keep said land and premises and the improvements now or hereafter erected thereon free from all statutory liens and claims of every kind;

13. To keep all buildings, fences, and other improvements now or hereafter erected on said land and premises in good order and repair and not to do or permit waste;

14. The Grantor will not demolish or remove any building now or hereafter erected on said land and premises, without the written consent of the Trustee;

15. That the Beneficiary under this Deed of Trust, in any action to foreclose, shall be entitled to the appointment of a receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to the Trustee to collect the rents, issues, and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit, such rents and profits being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this Deed of Trust, without regard to the value of the mortgaged premises or the solvency of any person or persons liable for the payment of the mortgage indebtedness. The Grantor for itself and any subsequent owner hereby waives any and all defenses to the application for appointment of a receiver as above, and hereby specifically consents to such appointment without notice, but nothing herein contained is to be construed to deprive the Beneficiary of any other right, remedy, or privilege it may now have under the law to have a receiver appointed. The provision for the appointment of a receiver of the rents and profits, and the assignment of such rents and profits, is made an express condition upon which the loan hereby secured is made. The rights and remedies provided for herein shall be deemed to be cumulative and in addition to, and not in limitation of, those provided by law;

16. The Trustee may act hereunder and may sell and convey said land and premises under the power granted by this instrument, although the Trustee has been, may now be, and may hereafter be, attorney or agent of the Beneficiary in respect to the loan made by the Beneficiary evidenced by the Note or this Deed of Trust, or in respect to any matter or business whatsoever. The Beneficiary may bid and become the purchaser at any sale under this Deed of Trust. It is further agreed that, if said property be advertised for sale as herein provided and not sold, the Trustee shall be entitled to a reasonable commission not exceeding one-half of the commission provided in case of sale, to be computed on the amount of principal then unpaid.

17. That Grantor will not voluntarily create or permit to be created against the property subject to this Deed of Trust any lien or liens superior or inferior to the lien of this Deed of Trust; and further, that it will keep and maintain the same free from the claim of all persons supplying labor or materials which will enter into the construction of any and all buildings now being erected or to be erected on said premises;

18. Any notice, demand, or request required or permitted hereunder to be given to the Grantor shall be sufficiently given if in writing and either *(a)* sent to the owner of the land and premises last appearing on the records of the Beneficiary by registered first-class mail, postage prepaid, at the address last appearing on said records; or *(b)* delivered to or served upon an officer of the owner or at the site of the mortgaged property upon the superintendent or assistant superintendent of the owner, or upon a person performing the functions of superintendent or assistant superintendent;

BOOK 1124 1083580
7-4

19. The Grantor covenants and agrees that so long as this Deed of Trust and the said Note secured hereby are insured under the provisions of the National Housing Act, it will not execute or file for record any instrument which imposes a restriction upon the sale or occupancy of the mortgaged property on the basis of race, color, or creed;

20. That this Deed of Trust and the Note secured hereby were executed and delivered to secure moneys advanced or to be advanced and to be used in the construction of certain improvements on the lands herein described, in accordance with a Building Loan Agreement between the Grantor and the Beneficiary dated September 1, 1979, which Building Loan Agreement (except such part or parts thereof as may be inconsistent herewith) is incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Deed of Trust, which said Building Loan Agreement Grantor hereby covenants to perform; and if the construction of the improvements to be made pursuant to said Building Loan Agreement shall not be carried on with reasonable diligence, or shall be discontinued at any time for any reason other than strikes or lock-outs, the Trustee, at the request and on behalf of the Beneficiary after due notice to the Grantor or any subsequent owner, is hereby invested with full and complete authority to enter upon the said premises, employ watchmen to protect such improvements from depredation or injury, and to preserve and protect the personal property therein, and to continue any and all outstanding contracts for the erection and completion of said building or buildings, to make and enter into contracts and obligations wherever necessary, either in its own name or in the name of the Grantor, or other owner, and in the name and for the account of the Beneficiary to pay and discharge all debts, obligations, and liabilities incurred thereby. All such sums so advanced by and for the account of the Beneficiary (exclusive of advances of the principal of the indebtedness secured hereby) shall be added to the principal of the indebtedness secured hereby and shall be secured by this Deed of Trust and shall be due and payable on demand with interest at the rate specified in the Note, per annum, but no such advances shall be insured unless same are specifically approved by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner prior to the making thereof. The principal sum, with interest and other charges provided for herein shall, at the option of the Beneficiary or holder of this Deed of Trust and the Note secured, hereby, become due and payable on the failure of the Grantor, or owner, to keep and perform any of the covenants, conditions, and agreements of said Building Loan Agreement, anything contained herein to the contrary notwithstanding. This covenant shall be terminated upon the completion of the improvements to the satisfaction of the Beneficiary and the making of the final advances as provided in said Building Loan Agreement;

21. The following covenants, to wit, Nos. 3, 5, 6, 7, 8, and 9 of Section 2 of Nevada Revised Statutes, Section 107.030, as amended, are hereby adopted and made a part of this Deed of Trust. Counsel fees under covenant No. 7 shall be one (1) percent of the amount secured but not to exceed Two Thousand Dollars ($2,000.00);

22. The Grantor shall not permit or suffer: *(a)* the use of any of the mortgaged property for any purpose other than that for which the same is now agreed upon to be used; *(b)* any alteration of or addition to the buildings or improvements hereafter constructed in or upon said real property without consent of the Beneficiary.

IN TESTIMONY WHEREOF, the said party hereto of the first part has caused these presents to be executed in its xxxx xxxxx name by FRANK M. BLACKBURN, General Partner xx xxxxxxxxxxxxxxxxxxx xx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxx being thereunto duly authorized, all as of the day, month, and year first hereinabove written.

REGATTA APARTMENTS, a Nevada limited partnership

ATTEST:

By [signature]
Frank M. Blackburn, xxxxxxxx
General Partner

_______________________
*Secretary*

STATE OF
COUNTY OF } ss:

On this day of , A.D. 19 , personally appeared before me, , a in and for County, , known to me to be the President of , the corporation that executed the foregoing instrument, and upon oath did depose and say that he is the President of said corporation; that he is acquainted with the seal of said corporation, and that the seal affixed to said instrument is the corporate seal of said corporation; that the signatures to said instrument were made by officers of said corporation as indicated after said signatures; and that the said corporation executed the said instrument freely and voluntarily and for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the said County of , the day and year in this certificate first above written.

_______________________

My commission expires _______________, 19_____

STATE OF NEVADA

Deed Of Trust

TO

203939-P Rev. 6/66 FHA-Wash., D. C.

15

1083580
7-5

TO 1949 CA (8-74)

(Partnership)

STATE OF ~~XXXXXXXXX~~ NEVADA
COUNTY OF Clark } SS.

TITLE INSURANCE AND TRUST
A TICOR COMPANY

On September 21, 1979 before me, the undersigned, a Notary Public in and for said State, personally appeared FRANK M. BLACKBURN known to me to be one of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

Signature Joanna M. Rink

STAPLE HERE

OFFICIAL SEAL
JOANNA M. RINK
NOTARY PUBLIC - STATE OF NEVADA
COUNTY OF CLARK
My Appt. Expires Mar. 16, 1983

(This area for official notarial seal)

16

EXHIBIT "A"

Attached to and made part of that certain Deed of Trust, dated September 1, 1979 by and between:

REGATTA APARTMENTS, a Nevada Limited Partnership: GRANTOR

WESTWOOD ASSOCIATES, a California corporation: TRUSTEE

WEYERHAEUSER MORTGAGE COMPANY, a California corporation: BENEFICIARY

Situate in the County of Clark, State of Nevada, described as follows:

A portion of the East Half (E½) of Government Lot 2, Section 19, T.20 S., R. 62 E., M.D.M., Clark County, Nevada, more particularly described as follows:

COMMENCING at the Southeast corner of said Government Lot 2; thence N. 01°03'25" W., along the Easterly line thereof, 425.05 feet to the TRUE POINT OF BEGINNING; thence continuing N. 01°03'25"W., 329.32 feet to a point on the Southerly boundary of Regatta Estates as shown by a plat on file as Book 22 of Plats, Page 98, on file in the Clark County, Nevada Official Records; thence along the said Southerly boundary the following courses: S. 88°56'35" W., 140.00 feet; N. 01°03'25" W., 457.72 feet; N. 89°38'21" W., 529.77 feet to a point on the West line of the aforesaid East Half (E½) of the Government Lot 2; thence along said line, S. 00°52'52" E., 503.92 feet; thence departing said line, S. 89°33'46" E., 314.35 feet; thence S. 00°44'27" E., 278.69 feet; thence S. 89°33'46" E., 358.57 feet to the TRUE POINT OF BEGINNING.

1083580

EXHIBIT "B"

Attached to and made part of that certain Deed of Trust dated September 1, 1979, by and between REGATTA APARTMENTS, a Nevada limited partnership, Grantor; Westwood Associates, a California corporation, Trustee; and Weyerhaeuser Mortgage Company, a California corporation, Beneficiary.

1. No additional charges will be collected by the beneficiary for any partial prepayment of principal which is made by the Trustor or on its behalf pursuant to a requirement of the Federal Housing Commissioner.

2. No default shall exist by reason of nonpayment of any required installments of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Deed of Trust exceeds the amount of such required installment of principal; provided, that in determining the amount of optional additional prepayments of principal, the amount of any partial prepayment made by the Trustor or on its behalf pursuant to a requirement of the Federal Housing Commissioner shall be excluded.

3. The covenant of the Trustor to pay principal and interest is included in the Note secured hereby for the purpose of establishing and continuing the existence of the indebtedness. However, it is a condition of said covenant and those contained herein that in the event of default under the terms hereof, the holder shall take no action against the Trustor personally except such as may be necessary to subject to the satisfaction of the indebtedness the property described herein and any chattels appurtenant to the use thereof; PROVIDED, that nothing in this condition and no action so taken shall operate to impair any obligation of the Trustor under the Building Loan Agreement and the Regulatory Agreement herein referred to and made a part hereof.

4. The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld.

CLARK COUNTY NEVADA
JOAN L. SWIFT, RECORDER
RECORDED AT REQUEST OF
LAND TITLE OF NEVADA
SEP 27 11 46 AM '79
FEE 7.00 DEPUTY MW
OFFICIAL RECORDS
BOOK INSTRUMENT
1124 1083580

99

18

# EXHIBIT "3"

U.S. Department of Housing and Urban Development
Las Vegas Office, Region IX
1500 East Tropicana
Las Vegas, Nevada 89119-6516

RECEIVED
JUL - 1 1994

JUN 29 1994

ROBERT ROSEQUIST
3401 WEST CHARLESTON BOULEVARD
LAS VEGAS , NV 89102

Dear Sir/Madam :

On April 15, Secretary, Henry G. Cisneros, implemented the field reorganization for the U.S. Department of Housing and Urban Development (HUD). From this day forward HUD will be doing business in a new way!

Specifically, this office has full authority to make decisions and work with you as a partner to build better, stronger communities. This office has now been designated the primary point of contact for coordination of all HUD programs for your community.

I have been designated as the Secretary's State Coordinator for your community. We are transforming HUD into an activist, enabling agency that is customer-oriented and results driven. We look forward to working with you, in full partnership, with the people we serve.

In the near future, I would like to have the opportunity to discuss how we may better serve, you, our customer. If you have any questions, please do not hesitate to contact me on (702) 388-6500.

Very sincerely yours,

Benjamin F. Davis
Acting State Coordinator

Exhibit 8

20

# EXHIBIT "4"

U.S. Department of Housing and Urban Development
Departmental Enforcement Center
Los Angeles Satellite Office
611 West Sixth Street, Suite 3800
Los Angeles, CA 90017

*PRIVILEGED - SETTLEMENT NEGOTIATIONS*

*Via U.S. Mail & Facsimile*

May 3, 2001

Paul C. Ray, Esq.
Law Offices of John Peter Lee, Ltd.
830 Las Vegas Boulevard South
Las Vegas, NV 89101

Re: Regatta Bay Limited

Dear Paul:

In furtherance of our settlement discussions, I am attaching copies of the following correspondence in this matter:

- Notice of Violations and Demand for Corrective Action dated March 24, 2000;
- Pepper Hamilton LLP response to the Notice of Violations dated May 9, 2000;
- Notice of Default dated August 29, 2000.

Also pursuant to our settlement discussions, please find below a breakdown of the data as compiled in the financial records of Regatta Bay LTD's general partner's cash advances and withdrawals. This breakdown is organized by dates, with running balances of the net cumulative amount due the general partner and the cumulative interest that was charged to the project. The transactions shown in the records covered the period from May 15, 1985 to December 31, 1997. The data on the Surplus or Cash Deficit (column F) was independently obtained by the DEC from the project's financial records.

*(This space intentionally left blank.)*

*Privileged,*
*Paul Ray, Esq.*
*Regatta Bay Ltd.*
*May 3, 2001*
*Page 2*

| Fiscal Year End 12/31 | Beginning Balance A | Total owner's Annual Cash Advance To The Project B | Total owner's Annual Repayments Of Advance C | Interest Earned D | Cumulative Year End Balance E=(A+B+C+D) | Year End Surplus Cash or (Deficit) F |
|---|---|---|---|---|---|---|
| 1985 | - | 79,879 | (36,033) | 1,711.89 | 45,557.89 | Unknown. |
| 1986 | 45,557.89 | 281,200 | (263,000) | 1,510.63 | 65,268.52 | (10,473) |
| 1987 | 65,268.52 | 314,500 | (265,600) | 2,218.74 | 116,387.26 | (29,999) |
| 1988 | 116,387.26 | 219,600 | (225,900) | 8,541.41 | 118,628.67 | (44,594) |
| 1989 | 118,628.67 | 291,642 | (275,550) | 14,876.70 | 149,597.37 | (34,609) |
| 1990 | 149,597.37 | 183,250 | (248,150) | 12,202.60 | 96,899.97 | (62,663) |
| 1991 | 96,899.97 | 225,600 | (188,500) | 10,894.49 | 144,894.46 | (28,353) |
| 1992 | 144,894.46 | 192,900 | (156,100) | 9,425.93 | 191,120.39 | (36,374) |
| 1993 | 191,120.39 | 114,600 | (147,500) | 11,196.38 | 169,416.77 | (41,517) |
| 1994 | 169,416.77 | 140,100 | (173,000) | 11,968.32 | 148,485.09 | (63,942) |
| 1995 | 148,485.09 | 33,100 | 0 | 13,052.99 | 194,638.08 | (54,901) |
| 1996 | 194,638.08 | 204,720 | (179,870) | 15,882.53 | 235,370.61 | (52,745) |
| 1997 | 235,370.61 | 84,200 | (96,050) | 19,169.46 | 242,690.07 | (129,070) |
| 1998 | 242,690.07 | 15,046 | 0 | 20,013.00 | 277,749.07 | (120,065) |
| Total | | 2,380,337 | (2,255,253) | 152,665.07 | 277,749.07 | |

From 1985 through 1994, HUD disallowed withdrawals of funds over $10,000 per transaction from the project without HUD approval. However, a further breakdown of the withdrawals above revealed that between 1985 through 1994, the withdrawals by Regatta Bay LTD's general partner of amounts that were in excess of $10,000 per transaction totaled $1,051,500 as follows:

| Fiscal Year | Grand Total | Withdrawals by GP: # of times | Dollar Range From | To |
|---|---|---|---|---|
| 1985 | $ 0 | | No repayment of over $10,000. | |
| 1986 | 210,000 | 11 | $ 12,000 | $ 29,000 |
| 1987 | 183,000 | 10 | 13,000 | 25,000 |
| 1988 | 149,000 | 8 | 12,000 | 27,000 |
| 1989 | 153,500 | 9 | 14,000 | 22,500 |
| 1990 | 141,000 | 9 | 13,000 | 20,000 |
| 1991 | 123,000 | 7 | 15,000 | 21,000 |
| 1992 | 52,000 | 3 | 12,000 | 25,000 |
| 1993 | 40,000 | 1 | 40,000 | 0 |
| 1994 | 0 | | No repayment of over $10,000. | |
| Total | $1,051,500 | | | |

Beginning on January 1995, HUD disallowed withdrawals from the project in any amount without HUD approval. However, a review of the project's financial records indicated that from January 1995 to December 1998 the total withdrawals of any amount to the general partner was as follows:

| | | |
|---|---|---|
| 1995 | $ 0 | No withdrawal to GP during the year. |
| 1996 | 179,870 | Fifteen (15) times, at various amounts from $500 to $32,000. |
| 1997 | 96,050 | Nineteen (19) times, at various amounts from $500 to $15,000. |
| Total | $275,920 | |

Thus, the combined total from unauthorized repayments of cash advances from 1985 to 1998 totaled $1,327,420.

We believe this breakdown will provide you with an understanding of the basis on which HUD is demanding the repayment of funds. We look forward to hearing from you concerning a rapid resolution of this matter.

Sincerely,

Luc-Andre Odabashian
Lead Attorney

*Encl.*

*Copy: Seth Shapiro, Esq.*
*USDOJ*



24

# EXHIBIT "5"