# EXHIBIT "7"

JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for Debtor

RECEIVED AND FILED
2000 DEC -8 PM 3:41
UNITED STATES BANKRUPTCY COURT
PATRICIA GRAY, CLERK

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | ) Case No. BK-S-00-16865-LBR |
| | ) Chapter 11 |
| REGATTA BAY LIMITED | ) |
| | ) |
| Debtor. | ) DATE: January 11, 2001 |
| | ) TIME: 9:30 a.m. |

604.021513 dp

**NOTICE OF HEARING ON APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**

TO: ALL PARTIES IN INTEREST

NOTICE IS HEREBY GIVEN that a Disclosure Statement was filed on December 7, 2000 by counsel for the Debtor pursuant to Rule 102-7(b) of the Rules of Practice of the United States District Court for the District of Nevada. The Debtor seeks an entry of an order approving its Disclosure Statement to Accompany Plan of Reorganization.

Any Opposition must be filed pursuant to Local Rule 9013(e)(1).

Local Rule 9013(a)(1): "Except for motions made pursuant to Fed. R. Bank. P. 7056 and LR 7056, an opposition to a motion must be filed and service completed upon the movant not more than fifteen(15) days after service of the motion, (eighteen (18) days if service of the motion is by mail pursuant to FRBP 9006(e) & (f)), but in no event later than five (5) business days before the date set for the hearing so that the movant receives the opposition no less than five (5) business days before the hearing date or within the time otherwise fixed by the court. The opposition must set forth all relevant facts and must contain a legal memorandum. An opposition may be supported by affidavits or declarations that conform to the provisions of subsection(d) of this rule."

56

If an objection is not timely filed and served, the relief requested may be granted without a hearing. LR 9013(a)(1) and LR 9013(c)(1)(E).

NOTICE IS FURTHER GIVEN that the hearing on the said Motion will be held before a United States Bankruptcy Judge, in the Foley Federal Building, 300 Las Vegas Boulevard South, Bankruptcy Courtroom No. 2, Las Vegas, Nevada on January 11, 2001 at the hour of 9:30 a.m.

DATED this 7th day of December, 2000.

JOHN PETER LEE, LTD.

JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard So.
Las Vegas, Nevada 89101
(702) 382-4044
Attorneys for the Debtor

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

## CERTIFICATE OF MAILING

I hereby certify that a copy of the NOTICE OF HEARING ON APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION filed on December 7, 2000 in the above-entitled matter was mailed by me on December 8, 2000, by depositing a copy thereof in a sealed envelope, first-class postage prepaid, in the United States Mail, to the parties set forth on the attached Mailing Matrix.

An employee of JOHN PETER LEE, LTD.

# EXHIBIT "8"

JOHN PETER LEE, LTD.
JOHN PETER LEE, ESQ.
Nevada Bar No. 1768
PAUL C. RAY, ESQ.
Nevada Bar No. 4365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone: (702) 382-4044
Attorneys for Debtor

RECEIVED AND FILED
2000 DEC -7 PM 3:56
UNITED STATES BANKRUPTCY COURT
PATRICIA GRAY, CLERK

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | ) Case No. BK-S-00-16865-LBR |
| | ) Chapter 11 |
| REGATTA BAY LIMITED | ) |
| | ) |
| Debtor. | ) DATE: January 11, 2001 |
| | ) TIME: 9:30 a.m. |

604.021513 dp

**DEBTOR'S DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**

COMES NOW THE DEBTOR, Regatta Bay Limited, by and through its counsel, John Peter Lee, Ltd., and pursuant to the provisions of 11 U.S.C. § 1125, proposes this Disclosure Statement in connection with the Debtor's Chapter 11 Plan. The Disclosure Statement is furnished for the purpose of soliciting acceptances to the Chapter 11 Plan of Reorganization proposed by the Debtor, which will be mailed with this document to all creditors.

Section 1125 of Title 11 of the United States Bankruptcy Code (the Bankruptcy Code) requires that any Plan filed be accompanied by a Disclosure Statement. The purpose of the Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, so far as is reasonably practicable, in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a typical creditor or interest holder to make an informed judgment about the Plan and to enable such creditor to determine whether to vote for or against the Plan.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Development ("HUD") insured the loan.

When the project was first built in the early 1980's, the tenant mix largely consisted of U.S. Air Force personnel stationed at Nellis Air Force Base. Throughout the 1980's and much of the 1990's, the tenant mix remained a relatively stable group of residents, occupancy rates were high.

In the late 1990's, crime in the area surrounding the Regatta Apartments soared. In fact, crime has become rampant in the area around and including the Regatta Apartments as of the year 2000.

The Regatta Apartments' management has been aware of numerous police reports involving a variety of crimes, many of which are drug related. Indeed, the police are frequent visitors to the complex, and the Regatta Apartments have cooperated extensively with the police, going so far as to offer a vacant apartment for the police to conduct undercover stakeout and sting operations.

The economic effect of the proliferation of illegal drugs and crime within the Regatta Apartments has been devastating. Occupancy rates have fallen to approximately 70%, and the Debtor was unable to make its note payment by the end of the summer of the year 2000. The Debtor filed its Voluntary Petition for Chapter 11 reorganization protection on September 8, 2000. The holder of the note as of the Petition Date, Reilly Mortgage Group, Inc., assigned the Debtor's note to HUD on October 6, 2000. The present principal amount of the Note is believed to be approximately $2,067,000 as of December 7, 2000.

## IV

## DESCRIPTION OF THE DEBTOR AND ASSETS OF THE ESTATE

The Debtor is a limited partnership which has as its only asset the Regatta Apartments. The Debtor will provide a final appraisal of the property by the Appraiser, Gary Kent, M.A.I., when it becomes available shortly. The verbal statement of value of the property by Mr. Kent is $2,420,000.

The Regatta Apartments consist of twelve buildings containing eight two-bedroom, one-bath units and three buildings containing eight one-bedroom, one-bath units, or 96 two-bedroom units and 24 one-bedroom units for a total of 120 units. All of the units are unfurnished. The Regatta Apartments also has a building containing the management office, a laundry facility and a maintenance facility. Also on the premises are a swimming pool and a tennis court.



60

accordance with the terms of this Plan at the end of year 5 following the Confirmation Date, the reorganized Debtor shall pay seven percent (7%) of the total allowed amount of each unsecured claim in a total amount not to exceed a total payment by the reorganized Debtor of $50,000 in a pro rata distribution, according to the allowed amounts of each unsecured claim.

5. Equity Security Holders. This class shall not receive a distribution but shall retain its equity interest in the Debtor based upon its contribution of new value in the form of improvement and renovation to the property by the General Partner as described below and in the form of the obligation to pay the unsecured creditors at the end of year 5 described above. The General Partner, Mr. Rosequist, will forego payment of his claims for contributions to the property in the approximate amount of $500,000.

## ARTICLE VIII

## MEANS OF EXECUTION OF THE PLAN

The Debtor shall construct security gates at the two entrances on the east side of the property at Sandy Lane. The Debtor's decision to construct security gates is based upon substantial research both with HUD employees and with other properties in the area facing similar crime problems.

The purpose of the security gates is to deter the wanderings into the property by various criminals or persons contributing to the drug and other crime problems on the property. The two security gates will be monitored and activated at a remote controlled, guarded location in a vacant, single bedroom apartment within view of the two security gates. Each would-be criminal attempting to enter the property will be required to leave his or her name with the security guard and state where he or she intends to go within the project. It is strongly believed that such would-be criminals would find the complex far less attractive to pursue drug deals and other crimes if the would-be criminals' comings and goings are known and documented. At least one other crime ridden apartment complex in the vicinity has had dramatic results in reducing crime and increasing net revenue through the installation of such guarded security gates. The removal or at least sharp reduction of such drug and crime problems tends to increase the value of the property and to improve the stability and strength of the tenant mix. It is also believed to positively influence the surrounding community.

During the first year following the Effective Date, the reorganized Debtor will use the funds

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950



61

made available through deferral of interest payments (believed to be in the approximate amount of $180,000) to make specific improvements to the property according to a flexible, but pre-planned schedule. Attached hereto as Exhibit "1" is a summary of the repairs and improvement costs which the reorganized Debtor intends to complete during the course of the first three years following the Effective Date. Specifically, during the first year, the Debtor intends to complete item numbers 1, 2, 4, 7, 11, 12, 13 and 14 listed at Exhibit "1", which include construction of the security gates and accompanying electrical supply installation, as well as repair of existing street lights and crash gates and other miscellaneous items. In years 2 and 3, the Debtor shall complete the remaining items, at least half in year 2, while retaining flexibility to determine the optimum sequence for the completion of such repairs. The repairs at Exhibit "1" constitute the repairs determined to be needed to the exterior of the buildings and facilities at the complex.

Additionally, the reorganized Debtor shall use the funds made available through the deferral of HUD interest payments to complete one-third (1/3) of the interior improvements. The Debtor has determined that the improvement and repairs needed on the entire project are those items listed which are specifically listed at Exhibit "2" hereof, including carpet, floor tile, blinds, sink/faucet, range, range hood, refrigerator, pour floor, counter top, cabinet, ceiling repair, closet, ceramic tile, medicine cabinet, doors, toilet/tub and steps for the various units indicated. The Debtor shall maintain the flexibility to determine which items are needed in the optimum sequence of performance of the repairs. The Debtor shall complete at least one-third (1/3) of the total repairs listed at Exhibit "2" during year 1 and at least one-third (1/3) of the total during year 2, with the remainder to be completed during year 3.

The reorganized Debtor will make the required improvements and repairs to the interior and exterior of the property listed at Exhibits "1" and "2" through the use of the funds made available by the deferred interest payments as well as the increased rent revenue which is strongly believed will result from the installation of these strong security measures as well as the improvements to the property. The repairs and improvements and increased security are expected to attract more stable, less transient tenants who themselves will also increase the attractiveness and value of the apartment complex. The repairs and improvements will further enhance the value of the property as security

JOHN PE[illegible]R LEE, LTD.
ATTOR[illegible]YS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950



62

# EXHIBIT "9"

EXHIBIT 5

HARRY REID
NEVADA

# United States Senate

WASHINGTON, DC 20510-2803

March 12, 1999

The Honorable Andrew Cuomo
Secretary
U.S. Department of Housing and Urban Development
451 7th Street, SW
Washington, D.C. 20410

RE: Regatta Apartments
Project Number 125-35152
Section 223(a)(7) Loan Application
Las Vegas, Nevada

Dear Secretary Cuomo:

This letter is being written on behalf of Phil R. Rosequist, General Partner for Regatta, who has asked for my assistance.

A refinance loan application for Regatta Apartments (a moderate income 120 unit FHA issued project) under Section 223(a)(7) was submitted to the HUD San Francisco office on September 21, 19998. The application was approved for a lesser amount than was requested. The loan request was appealed to Ms. Janet Browden of the HUD San Francisco office on February 26, 1999.

Please find enclosed the following; 1) a letter dated February 4, 1999 from Mr. Rosequist to Mr. Tom Azumbrado requesting information on the appeal process, 2) a letter dated February 12, 1999 from Mr. Azumbrado responding to Mr. Rosequist's request, 3) a letter and cost analysis dated February 26, 1999 from Reilly mortgage to Ms. Browden in support of the appeal, 4) a letter and requested exhibits from Mr. Rosequist dated February 26, 1999 responding to HUD's letter of January 25, 1999, and 5) HUD's letter to Mr. Gould and Mr. Rosequist dated January 25, 1999.

Mr. Rosequist advised me the cost analysis was done incorrectly by HUD as shown by his enclosed letter of February 26, 1999 on pages 3 and 4. Mr. Bob Gould, Vice President of Reilly Mortgage confirmed with me there was a problem and that the project does in fact qualify for the requested loan amount.

continued

CUOMO/REGATTA/REID

Mr. Rosequist is a respected member of the Las Vegas business community. He believes strongly that he has worked well with the local HUD office as an apartment complex manager for many years. He has purchased and repaired over 100 HUD repossessed homes.

According to Mr. Rosequist, Regatta Apartments experienced a severe storm in 1997 which damaged more than 30 apartment units. The insurance claim was rejected. Mr. Rosequist says he loaned funds to repair the damage to Regatta Apartments and later paid himself back. The HUD office in San Francisco condemns him for using funds out of the property without HUD approval. It is Mr. Rosequist's opinion he should not be punished because his action prevented the project from defaulting and saved a claim on the FHA Insurance fund.

Would you please look into this matter and advise me as to your findings as soon as possible.

Thank you for your assistance in this matter.

Sincerely,

Harry Reid

HARRY REID
United States Senator

enclosures

reply to:

Senator Harry Reid
300 Las Vegas Boulevard South, #1610
Las Vegas, NV 89101
(702) 474-0041