Copy

1827

CERTIFICATE AND AGREEMENT OF LIMITED PARTNERSHIP

OF

REGATTA BAY, LTD., a Nevada Limited Partnership

THIS AGREEMENT, made on August 1, 1982, by and among PHIL ROBERT ROSEQUIST, (the "General Partner"); and that person or those persons described in Exhibit "A" attached hereto and by this reference made a part hereof (collectively, the "Limited Partners"), as it may be amended from time to time as herein provided.

W I T N E S S E T H :

WHEREAS, the General Partner and the Limited Partners now desire to form a Limited Partnership under the laws of the State of Nevada, the purposes of such limited partnership to include, among other things, to acquire certain real property located in Las Vegas, Clark County, Nevada and to own, maintain and operate thereon approximately 120 rental housing units; and

WHEREAS, the General Partner and the Limited Partners desire to enter into this Certificate and Agreement of Limited Partnership and to cause the same to be filed with the office of the County Recorder of Clark County, Nevada (which may, from time to time, be amended and which shall be referred to as the "Agreement") to provide, among other things, for the admission to the Partnership of Additional Limited Partners, and to reflect certain agreements among them;

NOW, THEREFORE, it is mutually agreed that:

1. Formation, Name and Office.

The parties hereto hereby agree to form a Partnership and to conduct the Partnership business, under the name of REGATTA BAY, LTD. as a limited partnership under and pursuant to the Uniform Limited Partnership Act as adopted by the State of Nevada (the "Act"). The principal office of the Partnership shall be maintained at 3401 W. Charleston Blvd., Las Vegas, Nevada, or at such other location as the General Partner may from time to time select, upon prior written notice to the Limited Partners.

2. Definitions.

a. Partners. The term "Partners" as used in this Agreement shall refer collectively to the General Partner, and Limited Partners and any additional or substitute Limited Partner or General Partner of the Partnership. The term "Partner" shall refer to any one of the Partners.

b. Limited Partners. The term "Limited Partners" shall refer collectively to the Limited Partners and any Additional or substitute Limited Partner named in any amendment to the Certificate. The term "Limited Partner" shall refer to any one of the Limited Partners.

c. General Partner. The term "General Partner" shall refer to the General Partner and any additional or substitute General Partner named in any amendment to the Certificate. The term "General Partner" shall refer to any one of the General Partners, if more than one.

d. Partnership Interest. The term "Partnership Interest" shall refer to the entire ownership interest (which may be expressed as a percentage) of a Partner in the Partnership at any particular time, including, without limitation, the right of such Partner to participate in the Partnership's 'Profits and Losses", "Net Cash Receipts" and any and all benefits to which a Partner may be entitled as provided in this Agreement and in the Act, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement and the Act. The term "Partnership Interests" shall refer to the entire ownership interest of all of the Partners in the Partnership.

e. Profits and Losses. The income and losses of any nature of the Partnership for each fiscal period or year determined on the accrual basis as ascertained through the use of generally accepted accounting principles consistently applied by the certified public accountant preparing the tax returns for the Partnership utilizing allowable depreciation and other items of expense and distributions pursuant to the Internal Revenue Code and the regulations promulgated thereunder.

f. Code. The term "Code" shall refer to the Internal Revenue Code of 1954, as amended (or any corresponding provisions of succeeding law).

3. Partnership Purposes and Powers.

a. Purposes. The purposes of the Partnership shall be:

(i) To acquire certain real property, together with the improvements thereon, in Las Vegas, Clark County, Nevada more [illegible] ically described in Exhibit B attached hereto and by this reference made a part hereof ("Property"); and to own, hold, manage, [illegible] and operate thereon a [illegible] housing development consisting of approximately 120 rental dwelling units, together with all [illegible] equipment, fixtures, and personalty to be located thereon [illegible] or to be procured for use in connection therewith ("Improvements") (the Property and the Improvements together are hereinafter [illegible] to as the "Project"), all subject to the applicable [illegible] lations of the United States [illegible] ment ("HUD"), and to [illegible] to promote the business of [illegible] regulations of HUD so long [illegible] Agreements.

[illegible] with HUD [illegible] rents, [illegible] of operation [illegible] latory Agreement [illegible]

with the commitment by HUD ("HUD Commitment") to provide rental assistance to, or on behalf of, occupants of the Project.

(iii) To enter into, perform and carry out any agreements with Las Vegas, Clark County, Nevada relating to, or required in connection with, the Project.

b. Powers. In furtherance of the purposes contained in Paragraph a. of this Article, the Partnership and the General Partner shall be empowered, subject to the provisions of Article 14e., the Regulatory Agreements and all other relevant documents executed by or on behalf of the Partnership and the General Partner, all applicable laws and the rules and regulations of all governmental agencies having jurisdiction over the Project.

(i) To improve, mortgage, operate, service, lease, pledge, sell, exchange and otherwise encumber the Project or any part thereof, renovate, alter, reconstruct and remodel any improvements now or hereafter forming a part thereof and construct additional improvements thereon; and

(ii) To finance all or any of its activities authorized under the provisions of this Agreement by secured or unsecured indebtedness and, in connection therewith, issue evidences of indebtedness and execute and deliver mortgages, mortgage deeds and other security instruments of every nature and kind as security therefor and prepay, refinance and recast any mortgage, mortgage debt or other lien on the Project; and

(iii) To enter into, perform and carry out contracts and agreements of every kind necessary or incidental to the accomplishments of its purposes, including, without limitation, contracts and agreements with the General Partner, and persons or entities affiliated with, or related to him in any manner, which persons or entities which may be controlled by him, and agreements to arbitrate disputes with other parties, and take or omit such other or further action in connection with the Project as may be necessary or desirable to further the purposes of the Partnership; and

(iv) To enter into, perform and carry out construction contracts ("Construction Contract(s)"), management agreements ("Management Agreement(s)"), mortgages ("Project Mortgage(s)") and mortgage notes ("Mortgage Note(s)") with respect to the Project, and any other similar or dissimilar agreement or contract which may be desirable or necessary to accomplish the purposes of the Partnership; and

(v) To acquire any other property, real or personal, in fee or under lease, or any rights therein or appurtenant thereto, necessary or appropriate for the financing, construction and operation of the Project; and

(vi) To invest in short-term debt obligations [illegible] accounts (including obligations of Federal and state [illegible] their agencies and certificates of deposit of [illegible] savings banks or savings and loan [illegible] temporarily not [illegible]

(vii) To carry on any other activities necessary to, in connection with or incidental to any of the foregoing.

c. Obligations of the General Partner. The General Partner shall:

(i) Devote so much of his time as he deems necessary to successfully manage the affairs of the Partnership for the compensation set forth herein or in any other agreements executed between the General Partner and the Partnership; provided, however, that the General Partner shall not be required to manage the Project, but shall only be required to cause the Partnership to be managed, in accordance with Article 14.

(ii) File all certificates, notices, statements or other instruments required by law for the formation, operation and termination of the Partnership, its business and its property in all appropriate jurisdictions.

(iii) Cause the Partnership to carry public liability, property damage and other insurance, all of which shall name the Partnership and the General Partner as insureds.

(iv) Indemnify and hold the Partnership and each of the Limited Partners harmless from any loss, damage or liability due to, or arising out of, the General Partner's fraud, bad faith or negligence.

(v) Maintain capital accounts, pursuant to the provisions of this Agreement, on the books and records of the Partnership in respect of each Partnership Interest.

4. Term.

The term of the Partnership shall commence on the date of the filing of the Certificate with the Office of the Recorder of Clark County, Nevada pursuant to the requirements of the Act, and (subject to Article 27) shall continue until the earlier of (a) December 31, 2022; (b) the death, insanity or adjudication or incompetency of an individual General Partner, the liquidation or dissolution of a corporate General Partner, the termination of a General Partner which is a trust, or the retirement, resignation, expulsion, assignment for the benefit of creditors, filing of a petition for reorganization, or adjudication of the bankruptcy of any General Partner, unless the Partnership is continued pursuant to the provisions of Articles 14i. or 21c.; or (c) the sale or other disposition by the Partnership (other than to a nominee) of all of its interest in the Project, including any mortgage or leasehold interest which may be acquired by the Partnership in exchange therefor, unless the Partnership is continued pursuant to the Provisions of Articles 14i. or 21c.

5. Contributions to Capital.

The Partners shall make the following contributions to the capital of the Partnership upon the following terms and conditions:

a. General Partner. The General Partner has contributed to the capital of the Partnership by assignment (see Exhibit C annexed hereto), all of his right, title and interest in and to the Project in consideration for the allocation of a 1% capital interest in the Partnership.

b. Limited Partners. Those persons listed on Exhibit A attached hereto, have contributed to the capital of the Partnership as set forth herein in return for an aggregate ninety percent (90%) Limited Partnership interest in the Partnership's profits and an aggregate ninety-nine percent (99%) Limited Partnership interest in the Partnership losses subject to adjustment as provided in Paragraph 6(d) herein. No further contribution of capital shall be required of the Limited Partners.

In consideration for the issuance to the Limited Partners of their respective Partnership Interests, the Limited Partners described in Exhibit A shall each, subject to the provisions of this Paragraph, (a) execute and deliver a Subscription Agreement, in the form annexed hereto as Exhibit D and, (b), upon acceptance of such Subscription Agreement by the Partnership, contribute in cash to the capital of the Partnership, in the amounts and proportions set forth on Exhibit A annexed hereto, an aggregate amount of $42,650 as follows:

(i) $5,000 ("First Installment") on admission to the Partnership (the "Starting Date").

(ii) $9,104 ("Second Installment") on December 1, 1984.

(iii) $8,066 ("Third Installment") on December 1, 1985.

(iv) $7,191 ("Fourth Installment") on December 1, 1986.

(v) $6,408 ("Fifth Installment") on December 1, 1987.

(vi) $4,471 ("Sixth Installment") on December 1, 1988.

(vii) $2,410 ("Seventh Installment") on December 1, 1989.

Each of the Second, Third, Fourth, Fifth, Sixth, and Seventh Installments shall be evidenced by a promissory note (the "Note") in the form annexed hereto as Exhibit E.

d. Capital Accounts. For all purposes of this Agreement, the capital account of a Partner as of any date is hereby defined as

mean the amount of cash contributed by a Partner to the capital of the Partnership properly adjusted to reflect:

(i) such Partner's allocations of profits, losses, credits, deductions, and allowances (including, if such date is not the close of a Partnership fiscal year, the Partner's allocable share of such items for such shorter accounting period); and

(ii) distributions by the Partnership to the Partner except advances made by the General Partner to the Partnership shall not be reflected in the General Partner's capital account. Such advances accrue interest and shall for all purposes be treated by the Partnership as loans.

e. Limitation on Liability of Limited Partners. The liability of any Limited Partner to provide funds or any other property to the Partnership shall be limited to the amount of capital contributions (plus any accrued interest thereon) which the Limited Partner is required to make pursuant to the provisions of this Article, but only when same shall become due pursuant to the provisions of Paragraph c. of this Article. Subject to the provisions of the Act, the Limited Partners shall have no further personal liability to contribute money to the Partnership for, or in respect of, the liabilities or obligations of the Partnership and shall not be personally liable for any obligations of the Partnership.

f. No Interest on Capital Contributions. No interest shall be paid by the Partnership to any Partner with respect to any contribution to the capital of the Partnership.

g. No Priority Between Limited Partners; Limitations on Withdrawal of Capital. Except as otherwise specifically set forth in this Agreement, no Limited Partner shall have priority over any other Limited Partner either as to the return of his original contribution to the capital of the Partnership or as to distributions of cash made by the Partnership. Except as otherwise specifically set forth in this Agreement, no Limited Partner shall have the right to (i) demand or receive property other than cash in return for his contribution to the capital of the Partnership or as distributions of income, (ii) withdraw any part of his capital contribution to the Partnership, or (iii) receive any funds or property of the Partnership.

6. Allocations and Distributions

(a) The term "Profits and Losses" as used herein shall mean for Federal income tax and accounting purposes, the income and losses of any nature of the Partnership for each fiscal period or year determined on the accrual basis as ascertained through the use of generally accepted accounting principles consistently applied by the certified public accountant preparing the tax returns for the Partnership utilizing allowable depreciation and other items of expense and deductions pursuant to the Internal Revenue Code and the regulations promulgated thereunder.

(b) The term [illegible] fiscal year or period, [illegible]

Partnership (except for Cash from Sales and Cash from Financings), whether from operating results or capital contributions, less (ii) all cash reserves which the General Partner considers reasonably necessary for the conduct of the Partnership business, including payments on any secured or unsecured borrowings or obligations and including such funds as the General Partner deems necessary to be used to pay or appropriately provide for all other liabilities to creditors of the Partnership. Payments to the General Partner for the administration fee shall be included in computing Net Cash Receipts. Net Cash Receipts shall be computed prior to any other distributions to Partners.

(c) The Partners understand that no Partner is entitled to any benefit of allocation of Partnership items of profit, loss, credits or allowances until such time as the Partner purchases an interest in the Partnership.

(d) Profits, losses, credits and allowances on a calendar year (or portion thereof) basis shall be allocated among the Partners as follows:

(i) Losses of the Partnership shall be allocated: (a) 1% to the General Partner; and (b) 99% to the Limited Partners (as a class) up to the amount reflected in Paragraph (ii) below, after which losses shall be allocated as provided in Paragraph (iii) below;

(ii) Profits shall be allocated between the Limited Partners (as a class) and the General Partner in the ratio that the capital accounts (as defined herein) of the Limited Partners (as a class) bear to the capital account of the General Partner, but in no event not less than 1% to the General Partner, until such time and up to the amounts, respectively, which equal the sum of: (a) the amounts required, (if necessary) to bring the Partners' negative capital accounts to zero and (b) their cumulative cash contributions less amounts distributed; and

(iii) Profits and losses remaining after the allocations in sub-Article 6 (d)(ii) above shall be allocated: (a) 10% to the General Partner; and (b) 90% to the Limited Partners (as a class).

(e) For purposes of Sections 702 and 704 of the Internal Revenue Code of 1954, as amended, or the corresponding sections of future Federal Internal Revenue Law, or any similar tax law of any state or jurisdiction, the determination of each Partner's distributive share of any Partnership item of income, gain, loss, deduction, credit or allowance for any Partnership accounting [illegible] or year shall be made in accordance with the ratio in which [illegible] profits or losses for such period or year were shared [illegible] the partners for bookkeeping purposes as provided in this [illegible]

(f) Net Cash Receipts (as defined in Article [illegible]) [illegible] distributed from time to time [illegible] available [illegible] General partner, in the following [illegible]

(i) First, to the repayment of any outstanding working advances made by the Capital Loans as provided in this Agreement;

(ii) Second, to the Partners proportionately in the ratio that the capital account of each Partner bears to the total capital accounts of the Partners until such time and up to the amounts, respectively, which equal the Partners' cumulative cash capital contributions (reduced by any prior distributions under this Article 6);

(iii) Net Cash Receipts remaining after the distribution in 6 (f)(ii) above, if any, shall be allocated: (a) 10% to the General partner; (b) 90% to the Limited Partners.

(g) Cash from Sales and/or Cash from Refinancing proceeds shall be distributed in the following order of priority:

(i) First, to the payment of debts and liabilities of the Partnership (other than any loans or advances that may have been made by any of the Partners to the Partnership) and the expenses of liquidation.

(ii) Second, to the establishment of any reserve which the General Partner may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership. Such reserve may be paid over by the General Partner to any attorney at law, or other acceptable party, as escrow agent to be held for disbursement in payment of any of the aforementioned liabilities and, at the expiration of such period as shall be deemed advisable by the General Partner, for distribution of the balance, in the manner hereinafter provided in this Paragraph.

(iii) Third, to the repayment of any outstanding Working Capital Loans.

(iv) Fourth, to the repayment of any other loans or advances that may have been made by any of the Partners to the Partnership.

(v) Fifth, to the Partners in the ratio that each Partner's capital account bears to the total capital accounts of the Partners, but in no event less than 1% to the General Partner, until such time and up to the amounts, respectively, which equal the Partners' cumulative cash capital contributions (reduced by any prior distributions); and

(vi) Sixth, any remaining amount shall be distributed (a) 10% to the General Partner; (b) 90% to the Limited Partners.

(h) The time and payment of all distributions shall be determined by the General Partner exclusively.

(i) Other than aforesaid, there shall be no obligation to return to any of the Partners any part of their capital account so long as the Partnership continues in existence, [illegible]

entitled to any priority or preference as to distributions of contributed capital except as expressly provided herein.

(j) Each Partner hereby expressly waives the right to require partition of any Partnership property or any part thereof.

(k) In any year in which distributions are made and in which there is available for distribution both Net Cash Receipts and Cash from Sales and/or Cash from Refinancing, the distributions shall be made from such of the available sources as the General Partner in its sole discretion shall determine.

7. Transfers of Property and Rights by General Partner.

The General Partner has caused to be transferred to the Partnership all right, title and interest owned by him in and to all architectural and engineering plans for the construction of, and all loan and other commitments with respect to, the Project and have received or will receive reimbursement by the Partnership for certain expenses previously incurred by him in connection therewith.

8. Representations, Warranties and Covenants by the General Partner.

The General Partner hereby represents, warrants and covenants as follows:

a. Litigation. He does not know, and has no reasonable basis to know, as of the date hereof, of any actions, suits or proceedings pending or threatened before any court, government instrumentality, agency or body or any arbitration tribunal which would materially affect the Project in an adverse fashion.

b. Partnership Qualified. He does not know, and has no reasonable basis to know, that the Partnership does not have, and will not continue to have, the legal capacity to own, construct and operate the Project.

c. Availability of Books and Records. All business records and other documents of the Partnership kept in the ordinary course of business and relating to the Project will be made available for inspection upon reasonable prior notice and during regular business hours at the Limited Partners' sole expense, by the Limited Partners or their duly authorized representatives.

d. Liens. He does not know, and has no reasonable basis to know, as of the date hereof, of any declaration of default by the holder of any mortgage affecting the Project or the filing of any mechanics' lien against the Project or the filing of a lis pendens against the Project or the commencement of an action to foreclose any mortgage or mechanics' lien which is a lien on the Project, except those which have been provided for by bond or otherwise, which within thirty (30) days of each such occurrence has not been satisfied or provided for by bond or otherwise.

e. Material Defaults. He does not know, and has no reasonable basis to know, that a default has occurred and is

continuing under the rules and regulations of HUD affecting the Project.

9. Default by Limited Partner in Making Capital Contributions.

a. Definition of Default; Right of First Refusal. In the event any Limited Partner fails to timely make any capital contribution required under the provisions of Article 5c., he shall be deemed to be in default hereunder ("Defaulting Limited Partner") and, except as provided in this Article, the Partnership Interest of such Defaulting Limited Partner shall terminate on the day immediately succeeding the final date for making the capital contribution which the Defaulting Limited Partner fails to make, and the General Partner, the Partnership, and any remaining Limited Partners shall have no further obligation to him hereunder. The General Partner shall have the option, exercisable within thirty (30) days after such default to purchase all or any portion of such Defaulting Limited Partner's entire Partnership Interest, including all Net Cash Receipts not previously distributed to him and, to the extent permitted by the Code, all taxable income and loss allocable to such Partnership Interest but not previously allocated to the Defaulting Limited Partner in a tax return filed by the Partnership. If the General Partner does not timely exercise such option, any remaining Limited Partners shall have the option, exercisable within thirty (30) days after receipt of written notice, to purchase all or any portion of such Defaulting Limited Partner's entire Partnership Interest, including all Net Cash Receipts not previously distributed to him and, to the extent permitted by the Code, all taxable income and loss allocable to such Partnership Interest but not previously allocated to the Defaulting Limited Partner in a tax return filed by the Partnership. The party purchasing all or any part of the Defaulting Limited Partner's Partnership Interest shall assume a pro rata share of the transferor's obligations to the Partnership equal to the percentage of the transferor's Partnership Interest which is acquired by him or it.

b. Purchase Price of Partnership Interest. The purchase price for a Defaulting Limited Partner's Partnership Interest pursuant to this Article shall be an amount equal to one hundred percent (100%) of the cash previously contributed to the capital of the Partnership by the Defaulting Limited Partner. Payment of the purchase price to the Defaulting Limited Partner shall be made at the option of the purchaser in twelve (12) equal monthly installments without interest, commencing one (1) month after delivery to the General Partner of such documents reasonably required by the General Partner to evidence the transfer of such interest.

c. Purchase by Limited Partners. The purchase of a Defaulting Limited Partner's Partnership Interest may be made by one or more of the remaining Limited partners in such proportions as they may determine by giving notice to the General Partner of their [illegible] to exercise such right within the thirty (30) day period referred in Paragraph a. of this Article. In the event two or more of the remaining Limited Partners shall give timely notice to the General Partner of their desire to purchase such Partnership Interest [illegible] such Limited Partners are unable to agree as to the apportionment thereof, each such Limited Partner shall be entitled to pu[illegible] percentage of such Partnership Interest which his Partnership [illegible]

bears to the total of the Partnership Interests held by all Limited Partners desiring to purchase such Partnership Interest.

d. Purchase or Sale by General Partner; Suits for Recovery.

(i) If the remaining Limited Partners shall fail to purchase all or any of a Defaulting Limited Partner's entire Partnership Interest within the thirty (30) day period referred to in Paragraph a. of this Article, the General Partner shall again have the option to purchase any such portion of such Partnership Interest on such terms and conditions as he shall determine at his sole discretion. In the event the General Partner purchases such Partnership Interest or a portion thereof, whether pursuant to Paragraph a. of this Article or this Paragraph d., he shall assume the status of a substituted Limited Partner in respect thereof, in addition to their status as General Partner hereunder.

(ii) As an alternative solely to the provisions of subparagraph (i) of this Paragraph, the General Partner may at his sole discretion, and without further notice, sell, in whole or in part, the Partnership Interest of the Defaulting Limited Partner on such terms and conditions as he shall determine at his sole discretion. In such case, the Defaulting Limited Partner shall remain liable for any unsatisfied portion of his obligations to the Partnership subsequent to the sale and shall not be entitled to or be credited with the excess, if any, of the amount realized on such sale over the "unsatisfied portion" of a Defaulting Limited Partner's obligation to the Partnership which shall be that amount of the capital contribution required of him under the provisions of Article 5c. which is not timely made. The General Partner may promptly cause the Partnership to institute an action at the sole expense of the Partnership to collect any unsatisfied portion of the Defaulting Limited Partner's obligations to the Partnership and to recover the fees and costs of such an action.

e. Pledge of Partnership Interests. The General Partner will require the deferred installment capital contributions required of each Limited Partner under the provisions of this Agreement to be secured by the collateral assignment by each Limited Partner of his Partnership Interest to the Partnership and by the execution and delivery of a security agreement in the form annexed hereto as Exhibit E. The provisions of this Paragraph shall have no effect on any rights or remedies that the Partnership, the General Partner or the remaining Limited Partners may have, under the provisions of this Agreement or under applicable law, and is in addition to any such rights and remedies, including, without limitation, those set forth in this Article.

f. Power of Attorney to Sell. The Limited Partners, by their agreement to be bound by the provisions of this Agreement, hereby grant to the General Partner an irrevocable power of attorney which shall be deemed coupled with an interest to sell, in whole or in part, their Partnership Interests [illegible] default in making required capital contributions [illegible] conditions and for such consideration as [illegible] successors may deem advisable [illegible] sale. At least ten (10) days [illegible]

1327

be given by any Defaulting Limited Partner. In addition, the Li[illegible] Partners hereby agree to execute any and all documents necessary [illegible] effectuate any such sale, transfer or assignment.

9. Survival of Obligation. The obligations of a Defaulti[illegible] Limited Partner to the Partnership shall not be extinguished by the existence of any option to purchase his Partnership interest, or by its exercise, but only by, and to the extent of, any cash installment capital contributions made with respect to the Defaulting Limited Partner's previous Partnership interest by any Partner or Partners who have purchased his Partnership interest, or any proceeds from the sale of his Partnership interest.

10. Working Capital Loans. If the Partnership requires funds for any Partnership expenses or obligations currently due and payable, in excess of funds otherwise available for such expenses or obligations, the General Partner, or any other partner, may loan to the Partnership funds to be known as "Working Capital Loans".

(i) Working Capital Loans made to the Partnership shall be made as follows: The managing agent of the Project shall notify the General Partner in writing if the Partnership has insufficient cash on hand from current operations to meet its current obligations and the amount of such cash deficit. Within five (5) days after receipt of such written notification, the General Partner, or any other Partner, may loan to the Partnership sufficient funds to make up said deficit.

(ii) Funds provided by a Partner pursuant hereto are referred to herein as "Working Capital Loans". Such loans shall be evidenced by promissory notes of the Partnership, not secured by any liens or other charges on the Project, bearing interest at current prime rate and the repayment thereof shall be subordinated to the prior payment of all obligations and expenses of the Partnership except distributions to the Limited Partners. Subject to the rules and regulations of HUD, such loans shall be repaid out of and be considered a first charge on (a) Net Cash Receipts and shall be considered a deduction in computing net cash receipts available for distributions to the Partners, and (b) any increased Mortgage Loan proceeds permitted to be made available by it to pay for the costs and expenses provided for by Working Capital Loans.

(iii) The occurrence of the Termination Date shall not affect the obligations of the Partnership to repay any Working Capi[illegible] Loans then outstanding, subject to the terms and conditions of th[illegible] Agreement.

11. Books and Records.

a. Maintenance and Accounting Method. The General [illegible] shall keep or cause to be kept full and accurate accounts of [illegible] transactions of the Partnership in proper books of account [illegible] shall be maintained at the principal place of business [illegible] ship and be available for reasonable inspection [illegible] Partners or their duly authorized [illegible] books and records shall be [illegible] and comply with applicable [illegible]

18

b. Examinations and Reports. The General Partner shall have the Partnership books and records ready and available for examination and audit by the certified public accountants for the Partnership not later than thirty (30) days subsequent to the termination of the Partnership's fiscal year. The Partnership's books of account shall be examined and audited on a regular basis at least annually by such certified public accountants as the General Partner may select. The Limited Partners may, at their own expense and not at the expense of the General Partner or the Partnership, cause the books and records of the Partnership to be examined by accountants other than the Partnership's accountants.

c. Fiscal Year. The fiscal year of the Partnership shall be the period beginning January 1 and ending December 31.

d. Distribution of Financial Information.

(i) Within six (6) months of the commencement of the syndication of Limited Partnership Interests or upon completion of such syndication, whichever shall first occur, the General Partner shall send to each Limited Partner a detailed written statement of the application of the proceeds of such syndication.

(ii) The General Partner shall send to each Partner, within ninety (90) days after the close of the fiscal year, copies of the annual report and tax returns of the Partnership prepared by the Partnership's certified public accountants. Such annual reports and tax returns shall be prepared, to the fullest practicable extent, in accordance with the accounting and tax assumptions and treatments described in the Partnership's Confidential Offering Memorandum used in connection with the syndication of Limited Partnership Interest.

Not later than April 1st of each year, the General Partner will also furnish to each Limited Partner a detailed analysis and explanation of the operations and business of the Partnership for [illegible] preceding year.

12. Banking.

All funds of the Partnership shall be deposited in such [illegible] account or accounts as shall be established and designated by the General Partner. Withdrawals from any such bank account or accounts shall be made upon such signature or signatures as the General Partner may designate. All deposits and other funds not needed in the operation of the business of the Partnership and not distributed [illegible] the Partners may be invested in such manner as the General Partner [illegible] determine, subject to the provisions hereof and applicable rules [illegible] regulations of HUD.

13. Insurance.

The General Partner shall purchase and maintain such insurance as may be required by HUD and/or the terms of any [illegible] or loan agreement relating to the Project and such other [illegible] he, at his sole discretion, may determine.

14. Duties and Obligations of General Partner.

a. Conduct of Business. Except as otherwise provided in Article 27, the General Partner shall have the sole and full authority and power to carry on the business of the Partnership, including the execution of all contracts and other documents on behalf of and in the name of the Partnership. He shall possess all the powers and rights of a partner in a partnership without limited partners under the laws of the State of Nevada, subject to any limitation of law (including any regulation or requirement of any governmental agency or authority) applicable to the Partnership.

b. Performance of Partnership Obligations. The General Partner shall use his best efforts to cause the Partnership to observe and perform each and every obligation to be observed and performed by the Partnership under all agreements and undertakings made by the Partnership or by which the Partnership or the Project is bound. However, the provisions of this Paragraph shall not be construed to require the General Partner to provide funds to or on behalf of the Partnership in excess of the amounts they have agreed to provide under the provisions of this Agreement.

c. Partnership Borrowings. The General Partner shall have the right to borrow, and no other signatures but that of the General Partner shall be required, on behalf of the Partnership and on the Partnership's credit from time to time such sums as may be reasonably necessary to provide for any liabilities of the Partnership or the Project.

d. Supervisory Obligations. The General Partner shall, (i) prepare or cause to be prepared any necessary operating statements showing cash receipts and disbursements of the Project; (ii) prepare or cause to be prepared all reports of operations which are required by lenders or HUD, or which are required to be furnished to the Limited Partners as provided in this Agreement, and (iii) do all other things which may be necessary in order to supervise and conduct the affairs and business of the Partnership. Except as otherwise expressly provided herein, the General Partner shall not be obligated to use his own funds to pay for maintenance of the Project or make necessary repairs thereto or pay for other Partnership expenses.

e. Limitation on Powers of General Partner. Without the written consent of 50% in interest of the Limited Partners, the General Partner may not (i) refinance the Mortgage Loan, except as set forth in Paragraph c. of this Article, or (ii) sell and convey title to (except as a nominee) or grant options for the sale of, or otherwise dispose of all or substantially all of the Project.

f. Employment of Third Parties and Compensation of General Partner. The General Partner, on behalf of the Partnership, may employ from time to time any persons, firms or corporations for the development, construction, operation, management and maintenance of the Project, including, without limitation, accountants and attorneys on such terms and for such compensation as the General Partner shall determine. In addition, the Partnership shall pay the following fees to the General Partner regarding his assignment of interest in the Project and his development of the Project, pursuant to Article 5a. and Exhibit C annexed hereto, reimbursement of organizational expenses incurred by the Partnership, fees to the General Partner

regarding services to be rendered to the Partnership as set forth herein and in connection with the management of the Project pursuant to Article 14(j), and sales commissions upon the sale of the Project.

g. Other Business. The General Partner shall devote so much of his time to the affairs of the Partnership as he, at his sole and absolute discretion, deems necessary or appropriate and neither the General Partner nor the Limited Partners shall be limited or restricted in the conduct of any other business venture or ventures in any form whatsoever, by the claim, interest or participation of any other Partner. Any of the Partners may engage in or possess an interest in other business ventures of every nature and description, independently or with others, including, but not limited to, those competitive with the operations and business of the Partnership, and the real estate business in all its phases, which shall include, without limitation, ownership, operation, management, syndication and development of real property. Neither the Partnership nor the Partners shall have any rights in and to such independent ventures or the income or profits derived therefrom by virtue of this Agreement.

h. Conflicts. The Partnership may employ or transact business with any person or entity, notwithstanding the fact that any Partner or member of his immediate family or associates may be one of them or may have an interest in or connection with such person or entity. Neither the Partnership nor the other Partners shall have any rights in or to any income or profits derived therefrom. However, except as specifically set forth herein, any such transaction with interested, related or affiliated parties shall be on terms reasonably competitive with those which may be obtained from unaffiliated persons unless otherwise agreed upon in writing in advance by all of the Partners.

i. Removal of General Partner.

(i) If no Limited Partner is in default in his obligation to make capital contributions to the Partnership under the provisions of Article 5c., and the General Partner is in material default under any of the material provisions of this Agreement, or if the Partnership is in material default not waived by HUD under any Project Mortgage or the Regulatory Agreements, and if such default is not cured or adequately provided for by bonding within sixty (60) days after the General Partner knew or should have known of the existence of such default, such General Partner shall, if requested in writing by each of the Limited Partners, resign as General Partner within thirty (30) days subsequent to the date of such written notice, and the Partnership shall dissolve and be terminated if the election referred to in subparagraph (ii) of this Paragraph is not made.

(ii) The Partnership and its business may be continued subsequent to a resignation pursuant to the terms of this [illegible] if the remaining General Partner, if any, and each of the [illegible] Partners, so elect within thirty (30) days after the [illegible] written notice referred to in subparagraph [illegible]

(iii) If the election to continue [illegible] subparagraph (ii) of this Paragraph is made [illegible] resign until the earlier of (a) the [illegible]

referred to in subparagraph (i) of this Paragraph or (b) the election by each of the Limited Partners, and substitution as General Partner(s) of the Partnership, of substitute General Partner(s) willing to assume the rights and obligations of the General Partner, which substitute General Partner(s) will, in the opinion of counsel for the Limited Partners, not prevent the Partnership from being treated as a partnership rather than as an association taxable as a corporation under the then applicable provisions of the Code and the Treasury Regulations promulgated thereunder.

(iv) The Partnership Interest of such substitute General Partner(s) shall be created solely out of the Partnership Interests of the then Limited Partners, and the expelled General Partner's Partnership Interest shall be converted to that of a Limited Partner. In any such event, and regardless of whether the Partnership dissolves or terminates because of such event, the Partnership Interest as Limited Partner of any General Partner who or which have been expelled pursuant to the provisions of this Paragraph shall represent the identical interests in the Partnership's taxable income or loss and allocations and distributions of every nature that he or they had as General Partner under the provisions of this Agreement, and this Agreement shall be amended accordingly. Any expulsion pursuant to the provisions of this Paragraph shall have no effect on the payment or priority of payment of any sums owed by the Partnership to any General Partner who has been expelled and resigned as such pursuant to the provisions of this Paragraph.

(v) The assignment for the benefit of creditors, filing for a petition for reorganization, or adjudication of bankruptcy of any General Partner shall cause the removal of such General Partner, effective on the later to occur of (a) the election, if any, to continue the Partnership and its business pursuant to the provisions of this Article or Article 21, or (b) ninety (90) days after the occurrence of any such event. If the election to continue is not made, then the Partnership shall dissolve and be terminated upon the effective date of said removal.

(vi) Notwithstanding any other provision of this Paragraph, no General Partner may resign or be removed or substituted except pursuant to all applicable HUD regulations.

j. Project Management. As long as he is the General Partner of the Partnership, the General Partner shall arrange for management of the Project. He shall cause the Project to be managed by REGATTA MANAGEMENT COMPANY or another financially responsible and knowledgeable managing agent, which is acceptable to HUD.

k. HUD Documents. The General Partner is authorized to execute on behalf of the Partnership agreements with HUD and any other documents required in connection with any Mortgage Note and other regulatory agreements, the operations of the Partnership, or to effect the assignment to the Partnership of the HUD Commitments, to convey the Project, or any part thereof, to the Partnership, and to execute any amendments or modifications to any of the aforementioned documents and no other signatures shall be required.

15. Limited Partners Not to Take Part in Business.

No Limited Partner shall take part in or interfere in any manner with conduct or control of the Partnership business, nor shall any Limited Partner have any right or authority to act for or bind the Partnership. However, upon the request of twenty-five percent (25%) or more in interest of those Limited Partners not affiliated with the General Partner, the General Partner shall promptly call an informational meeting of all of the Limited Partners.

16. <u>Transfers of Units; Substitute Limited Partners.</u>

a. <u>Requirements for Substitution.</u> No assignee of the whole or any portion of a Partnership Interest shall have the right to become a substitute Limited Partner in place of his assignor unless:

(i) The assignor has designated such intention in a written instrument of assignment delivered to the General Partner; and

(ii) The written consent of the General Partner has been obtained, the granting or denial of which shall be within the sole discretion of the General Partner; and

(iii) The assignee has adopted and agreed in writing to be bound by all of the provisions hereof, as the same may have been amended, including without limitation, the granting to be General Partner of the powers of attorney contained in Article 9f. and 22; and

(iv) All documents reasonably required by the General Partner to effect the substitution of the assignee as a Limited Partner shall have been executed and filed at the sole cost and expense of the assignor; and

(v) The provisions of Paragraph b. of this Article have been satisfied at the sole cost and expense of the assignor; and

(vi) The assignor has acknowledged all Partnership obligations to HUD and other parties in connection with the mortgage debt and operation of the Project and, if necessary, the written approval of HUD and any other governmental agency having jurisdiction over the Project has been secured.

When all of the provisions of this Paragraph and Paragraph b. of this Article have been complied with, the assignee forthwith, upon the filing of an amendment to the Certificate substituting him as a Limited Partner, shall become a Limited Partner on the date that the amendment to the Certificate is filed with the appropriate governmental authorities pursuant to the Act.

b. <u>Limitations on Transfers.</u>

(i) There shall be no sale, exchange or other transfer or assignment of the whole or any portion of a Partnership Interest without the prior written consent of the General Partner, which consent will be withheld if (a) all applicable Federal, state and local securities laws and regulations with respect to transfers of securities, including, but not limited to, the Securities Act of 193[illegible], as amended, and the Securities Exchange Act of 1934, as amended, are not complied with to the satisfaction of the General Partner, or the