in the sole opinion of counsel to the General Partner, there will be adverse consequences to the Partnership or any of the nonassigning Partners under any applicable Federal, state or local income tax laws or (c) for any other reason at the sole discretion of the General Partner.

(ii) No sale, exchange or other transfer or assignment of the whole or any portion of a Partnership interest may be made if the Partnership interest sought to be sold, exchanged, transferred or assigned, when added to the total of all other Partnership interests sold, exchanged, transferred or assigned within the period of twelve (12) consecutive months prior thereto, would result in the termination of the Partnership under the provisions of Section 708 (or any successor section) of the Code or any Treasury Regulation promulgated thereunder.

c. Tax Elections. In the event of the sale, exchange or transfer of a Partnership Interest, or any interest therein, or upon the death of an individual Limited Partner, or in the event of the distribution of Partnership property to any Limited Partner, the Partnership may file an election, the filing of which election shall be at the sole discretion of the General Partner, in accordance with then applicable Treasury Regulations, to cause the basis of the Partnership property to be adjusted for Federal income tax purposes as provided by Sections 734, 743 and 754 of the Code. All other elections required or permitted to be made by the Partnership under the Federal tax laws shall be made by the General Partner in such a manner as will, in the opinion of the accountants or counsel employed by the Partnership, be the most advantageous to the remaining Limited Partners.

17. Distributions and Allocations Subsequent to Assignment or Substitution.

An assignee of a, or a substitute (but not additional), Limited Partner who purchases or otherwise acquires a Limited Partner's Partnership interest, or any interest therein, shall be entitled to receive distributions of cash and allocations of income and loss from the Partnership attributable to such Partnership Interest subsequent to the effective date of such assignment, sale, exchange or other transfer with proration, except as the assignee and the assignor may, with the written consent of the General Partner, otherwise agree in writing. The "effective date" of an assignment pursuant to the provisions of Article 16. of a Partnership Interest or any interest therein, for the purposes of this Article, shall be the date on which a written instrument of assignment that conforms to the requirements of the General Partner has been received and acknowledged by the Partnership. The "effective date" of a sale, exchange or other transfer of a Partnership Interest or any interest therein shall be the date on which an amendment to the Certificate is filed with the appropriate governmental authorities pursuant to the Act reflecting the substitution of Limited Partners. Taxable income and loss attributable to the Partnership Interest acquired by reason of such assignment, sale, exchange or other transfer shall be allocated between the assignee and the assignor based upon the length of time during any fiscal year of the Partnership, as measured by the

effective date of the assignment, sale, exchange or other transfer, that the Partnership Interest was held by each of them.

18. Death of a Limited Partner.

The death of a Limited Partner shall neither dissolve nor terminate the Partnership. Notwithstanding the provisions of Article 16, if a Limited Partner shall die, the legal representatives and/or thereafter the ultimate distributees, legatees, devisees or beneficiaries of any Partnership Interest or any portion thereof of such deceased Limited Partner shall thereupon be substituted for the decedent as a Limited Partner of the Partnership, at no cost to the General Partner or the Partnership, upon the execution of such further instruments as may be required by law and the General Partner including, without limitation, this Agreement, an addendum hereto or a counterpart hereof, and an amendment to the Certificate, and the appropriate filing of the amendment to such Certificate as required under the provisions of Article 17.

19. Admission of Partners.

a. Additional Limited Partners. Except as set forth herein, no additional Limited Partners shall be admitted to the Partnership. However, the provisions of this Article shall not prevent a Limited Partner from assigning his Partnership Interest under the provisions of Article 16 or the heir of a deceased Limited Partner from becoming a substitute Limited Partner under the provisions of Article 18.

b. Adjustment of Capital and Loan Accounts. Upon the admission, withdrawal or substitution of any Partner, the capital accounts of the appropriate Partners shall be adjusted to reflect such changes.

c. Documents to be Executed by Partners. Prior to the issuance of a Partnership Interest to any Limited Partner, such Limited Partner shall execute and deliver to the General Partner any documents required by HUD and/or the General Partner.

20. Dissolution of the Partnership.

a. Distribution Upon Dissolution. Upon the dissolution of the Partnership as a result of the occurrence of any of the events set forth in Article 4 (except when the Partnership shall be continued as provided in Articles 14i, or 21c.), the General Partner or his successors shall proceed to liquidate the Partnership, and the proceeds of liquidation shall be applied and distributed in the following order of priority:

(i) First, to the payment of debts and liabilities of the Partnership (other than any loans or advances that may have been made by any of the Partners to the Partnership) and the expenses of liquidation.

(ii) Second, to the establishment of any reserve which the General Partner may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership. Such

reserve may be paid over by the General Partner to any attorney at law, or other acceptable party, as escrow agent to be held for disbursement in payment of any of the aforementioned liabilities and, at the expiration of such period as shall be deemed advisable by the General Partner, for distribution of the balance, in the manner hereinafter provided in this Paragraph.

(iii) Third, to the repayment of any outstanding Working Capital Loans.

(iv) Fourth, to the repayment of any other loans or advances that may have been made by any of the Partners to the Partnership.

(v) Fifth, to the Partners in the ratio that each Partner's capital account bears to the total capital accounts of the Partners, but in no event less than 1% to the General Partner, until such time and up to the amounts, respectively, which equal the Partners' cumulative cash capital contributions (reduced by any prior distributions); and

(vi) Sixth, any remaining amount shall be distributed: (a) 10% to the General Partner; (b) 90% to the Limited Partners.

b. Distribution in Kind. In the event of the dissolution of the Partnership and the Partnership is not continued pursuant to the provisions of Articles 14i. or 21c., or if the Partnership term terminates, to the extent that the Partnership's assets have not been sold or otherwise disposed of, the Partnership's noncash assets, if any, may be distributed in kind in the proportions set forth in this Article, each Partner accepting a pro rata undivided interest therein subject to Partnership liabilities, including any liabilities of the nature described in subparagraphs (i), (iii) and (iv) of Paragraph a. of this Article.

c. Time for Liquidation. A reasonable amount of time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to enable the General Partner to minimize the normal losses attendant upon such liquidation.

d. Termination. Upon compliance with the foregoing distribution plan (including payment over to an escrow agent, if deemed appropriate by the General Partner and if there be sufficient funds therefor), the Partnership shall cease to be such, and the General Partner shall execute, acknowledge and cause to be filed a certificate of termination of the Partnership pursuant to the powers of attorney provided for in Article 22.

e. General Partner Not Personally Liable for Return of Capital Contributions. The General Partner shall not be personally liable for any distribution required pursuant to this Article, and such distributions shall be made solely from available Partnership assets, if any.

f. Operations During Liquidation. Upon the determination that the Partnership is to be liquidated or dissolved, [illegible]

the Partnership during the period of liquidation or dissolution shall be carried on by the General Partner, or if there be no General Partner, by a designee of all of the Limited Partners.

21. Withdrawals; Retirement of Partners.

a. No Right to Withdraw Capital. No Limited Partner may at any time withdraw his capital from the Partnership without the written approval of the General Partner, which approval shall be at the General Partner's sole discretion, pursuant to the provisions of Article 5g. Substitution of Limited Partners, however, may be made in accordance with the provisions of this Agreement.

b. Withdrawal of General Partner. The General Partner may resign as General Partner of the Partnership at any time with the unanimous written consent of the Limited Partners, and the permission of HUD under their applicable regulations, and under no other circumstances.

c. Election to Continue Business. In the event of the death, insanity or adjudication of incompetency of an individual General Partner, the liquidation or dissolution of a corporate General Partner, or the termination of a General Partner which is a trust, or the resignation, retirement or removal under the provisions of Article 14i. of any General Partner, the Partnership interest of such General Partner shall be converted into that of a Limited Partner on the same basis as provided in Article 14i., whether or not the Partnership is dissolved.

(i) If the effect of any such event is not to remove the General Partner, the General Partner shall forthwith send written notice of such event to the Limited Partners and shall have the sole option to elect to continue the Partnership for the balance of the term specified in Article 4.

(ii) Any election to continue the Partnership under the provisions of this Paragraph shall be exercised within ninety (90) days after the occurence of any of the events referred to in the first sentence of this paragraph c. In the event of any such election, the relationship of the Partners and of any other person who has acquired a Partnership Interest shall be governed by this Agreement.

22. Powers of Attorney to Execute Documents.

a. Grant of Power of Attorney. Each Limited Partner hereby irrevocably constitutes and appoints the General Partner individually, as his true and lawful attorney in his name, place and stead to make, execute, acknowledge and, if necessary file:

(i) Any certificates or other instruments which the Partnership may be required to file under the laws of the State of [illegible] or pursuant to the requirements of HUD or any other governmental authority having jurisdiction over the Project or which the General Partner shall deem it advisable to file, including without limitation, the Certificate and any amended Certificate and a certificate of termination as provided in Article [illegible]

b. Representation of Investment Experience and Ability to Bear Risk. Each Limited Partner represents that he is (i) either knowledgeable with respect to the financial, tax and real estate aspects of ownership and operation of the Project or has been represented by such a knowledgeable person in connection with his acquisition of an interest in the Partnership and (ii) able to bear the economic risks of his investment in the Partnership, including the complete loss thereof.

24. Exculpation and Indemnification of General Partner.

a. Exculpation. The doing of any act or the failure to do any act by the General Partner, the effect of which may cause or result in loss or damage to the Partnership, the Limited Partners or the Project shall not subject the General Partner to any personal liability to the Partnership or to the Limited Partners unless the General Partner acted in bad faith or was guilty of willful misconduct or negligence.

b. Indemnification. The Partnership (but not the Limited Partners personally) shall indemnify and save harmless the General Partner from any loss or damage incurred by him by reason of any act or acts performed by him for and on behalf of the Partnership and, in the opinion of the General Partner, in furtherance of its best interests, if such act was done pursuant to advice of legal counsel employed by the Partnership, or by the General Partner on behalf of the Partnership, or on a basis other than lack of good faith, willful misconduct or negligence. The Partnership shall reimburse the General Partner for any such loss or damage incurred.

25. Partners Bound by Regulatory Agreements.

All partners, by their agreement to be bound by this Agreement, agree that they are bound by the Regulatory Agreements executed by the Partnership with HUD, any agreements the Partnership enters into with Las Vegas, Clark County, Nevada, and any other documents required by HUD. Upon any dissolution of the Partnership, no title or right to possession and control of any property subject to the Mortgage Loan and no right to collect the rents therefrom shall pass to any person who is not bound by the Regulatory Agreements. Nothing in this Article shall be construed as creating any personal liability of any Limited Partner in excess of his required capital contributions.

26. Release of Certain Funds by HUD.

Any other provision of this Agreement to the contrary notwithstanding, if any funds or evidences thereof required by HUD to be placed in escrow or posted by the General Partner, or by any person or corporation wholly controlling, controlled by or under common control or affiliated with the General Partner, on behalf of the Partnership are released to the Partnership by HUD, such funds shall be distributed to the General Partner or other person or corporation who originally placed such funds in escrow or otherwise provided for such funds on behalf of the Partnership.

27. Liability of a Withdrawing General Partner.

If the business of the Partnership is continued after the withdrawal of a General Partner, the withdrawing General Partner shall remain liable, to the extent provided in this Agreement, for all obligations and liabilities incurred by him or it while a General Partner of the Partnership. A withdrawing General Partner shall not incur any obligations or liability on account of the business of the Partnership or the activities of any General Partner of the Partnership after his or its withdrawal is effected by the appropriate filing of an amendment to the Certificate. For the purpose of this Article, a General Partner converting to a Limited Partner will be considered a withdrawing General Partner.

28. Jurisdiction.

At the request of the General Partner, any Limited Partner who is not a Nevada resident shall execute any documents necessary to designate the Secretary of State of the State of Nevada or any other person or entity chosen by the General Partner, at his sole discretion, for service of process on him in any action or proceeding brought by any party to this Agreement against him and arising out of this Agreement or in breach thereof.

29. Non-Waiver.

No provision of this Agreement shall be deemed to have been waived except if such waiver is contained in a written notice given to the party claiming such waiver has occurred and no such waiver shall be deemed to be a waiver of any other or further similar or dissimilar obligation or liability of the party or parties in whose favor the waiver was given.

30. Additional Documents and Instruments.

The parties shall execute and deliver to each other such other and further documents and instruments as may be necessary to carry out the purposes of this Agreement and which are required by the General Partner, HUD or any other Federal state or local governmental agency having jurisdiction over the Project or the Partnership.

31. Illegality.

If any provision or provisions of this Agreement (or any part thereof) or the application thereof to any particular facts or circumstances shall be illegal and unenforceable by reason of any statute or rule of law, the remaining provisions (or parts thereof) of this Agreement or the application of the particular provision or provisions (or parts thereof) to other facts or circumstances shall not be affected thereby and shall remain in full force and effect. [illegible] is the intention of the provisions of this Article to make clear [illegible] the agreement of the parties to this Agreement is that this [illegible] shall be enforced insofar as it may be enforced consistent with applicable statutes and rules of law.

32. Notices.

All notices [illegible] required or permitted [illegible]

writing and shall be deemed sufficiently given if sent by registered or certified mail, postage prepaid and return receipt requested, addressed to the parties at the addresses set forth above or below, or on any addendum to or counterpart of this Agreement, or to such other address as the recipient shall have previously notified the sender of in writing, and shall be deemed received three (3) days after the date of mailing.

33. Merger and Amendments.

This Agreement and each of the Exhibits annexed hereto each of which are made a part hereof by this reference, contain the entire understanding and agreement between the parties upon the subject matter of this Agreement and, except as otherwise provided herein, may be changed only by written amendment signed by all of the Limited Partners and General Partner at such time. Any prior understandings and agreements between the parties are merged herein, except only as herein otherwise expressly stated.

34. Provisions Binding.

This Agreement shall inure to the benefit of and be binding upon the parties and their respective heirs, executors, administrators, successors and assigns and any additional or substitute Limited Partners or General Partner (except as may otherwise be specifically provided herein).

35. Captions.

The table of contents and captions set forth herein are for convenience and reference only and are not intended to modify, limit, describe or affect in any way the contents, scope or intent of this Agreement.

36. Definitions.

All terms used herein which are defined in this Agreement shall have the meaning set forth in this Agreement, unless the [illegible] clearly indicates otherwise.

37. Counterparts.

This Agreement may be executed in two (2) or [illegible] counterparts, each of which shall be deemed an original, [illegible] which together shall constitute one (1) and the same instrument.

38. Gender and Plural.

Whenever the sense of this Agreement so requires, the masculine or feminine gender shall be substituted for or deemed [illegible] include the neuter and the plural, the singular, and vice versa.

39. Applicable Law.

This Agreement and the rights of the [illegible] interpreted in accordance with the laws of the [illegible]

IN WITNESS WHEREOF, the undersigned have duly executed this Certificate and Agreement of Limited Partnership of REGATTA BAY, LTD.

GENERAL PARTNER

PHIL ROBERT ROSEQUIST

STATE OF )
) ss:
COUNTY OF )

I, [illegible], a Notary Public in the afore-mentioned jurisdiction, do hereby certify that on this 28th day of October, 1985, personally appeared PHIL ROBERT ROSEQUIST, and acknowledged the foregoing to be his act as General Partner in the foregoing Agreement of Limited Partnership and his free act and deed.

Notary Public

My Commission Expires: 6-28-86

NOTARY PUBLIC
STATE OF [illegible]
[illegible]

(NOTARIAL SEAL)

LIMITED PARTNER SIGNATURE PAGE

The undersigned, desiring to enter into the Agreement of Limited Partnership ("Partnership Agreement") in the form attached as an exhibit to the Confidential Offering Memorandum dated Aug 1, 1983 of REGATTA BAY, LTD., a Nevada limited Partnership (the "Partnership"), hereby agrees to all of the terms and provisions thereof. The undersigned hereby constitutes and appoints PHIL ROBERT ROSEQUIST the General Partner of the Partnership, individually, his true and lawful attorney-in-fact, with all the powers and authorities as set forth in said Agreement of Limited Partnership, including, without limitation, in his name, place and stead to make execute, sign, acknowledge, swear to, deliver and file Certificate of Limited Partnership and amendments thereto for the purpose of admitting the undersigned and others as Limited Partners in the Partnership. The undersigned hereby joins and executes said Agreement of Limited Partnership and hereby authorizes this Signature Page to be attached thereto. The power of attorney hereby granted shall be deemed to be coupled with an interest, shall be irrevocable and shall survive the death of the undersigned.

WITNESS, the execution hereof by the undersigned, as a Limited Partner of REGATTA BAY, LTD., and individually.

Dated: 10/28, 1983

[signature]
Signature

Tony Menendhall
Name of Limited Partner
(Please Print)

4155 W Colby Ave.
Residence
LAS VEGAS NEV. 89102

STATE OF )
) ss:
COUNTY OF )

I, [illegible] McCann, a Notary Public in the aforementioned jurisdiction, do hereby certify that on this 28th day of October, 1983, personally appeared Tony Menendhall, and acknowledged the [illegible]

be his act as Limited Partner in the foregoing Agreement of Limited Partnership and his free act and deed.

Notary Public

My Commission Expires: 6 23 46

(NOTARIAL SEAL)

# EXHIBIT A

| | NAME | ADDRESS | CAPITAL CONTRIBUTIONS | NO. OF UNITS OWNED |
|---|---|---|---|---|
| 1. | PEACH, Jon & Barbara | 2885 S. Mann St. LV. 89102 | 5,000.00 | 1 |
| 2. | JOHNSON, Joseph W. & Gayle | 110 Lake Mead Drive, Henderson 89105 | $ 5,000.00 | 1 |
| 3. | CHOWDHRY, Bashir & Kausar | 4351 De Silva Pl | $60,000.00 | 12 |
| 4. | DAVIES, Chesley R & Mary E | 2511 E. Casey LV 89120 | $ 5,000.00 | 1 |
| 5. | KEMP, Will | 2882 San Lago, LV 89121 | $ 5,000.00 | 1 |
| 6. | LOLA VIOLET SULLIVAN TRUST | P. O. Box 3013 NLV, 89030 | $10,000.00 | [illegible] |
| 7. | FINDLAY, Jack R. | 1216 Oaktree, LV 89108 | $ 5,000.00 | 1 |
| 8. | RAVITCH, Michael S. MD | 1306 Mountain View Pl., Boulder City 89005 | $10,000.00 | 2 |
| 9. | MICHELAS, Eve<br>ROBISON, Patricia | 2510 E. Saddle, LV 89121 | $ 5,000.00 | 1 |
| 10. | MCR COMPANY | 2510 E. Saddle, LV 89121 | $ 5,000.00 | 1 |
| 11. | BROWN, Joseph W. & Pamela J. | 3138 Redwood St. LV 89102 | $ 5,000.00 | 1 |
| 12. | MENDENHALL, Tony | 6155 Coley Av. LV 89102 | $20,000.00 | 4 |
| 13. | WALKER, Clemons F. | 600 N. Torrey Pines LV 89107 | $ 5,000.00 | 1 |
| 14. | BURT, Joe & Sharon | 6601 Pickford Ln LV 89107 | $30,000.00 | 6 |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |

## EXHIBIT B

## LEGAL DESCRIPTION OF PROPERTY

Situate in the County of Clark, State of Nevada, described as follows:

A portion of the East Half (E½) of Government Lot 2, Section 19, T.20 S., R. 62 E., M.D.M., Clark County, Nevada, more particularly described as follows:

COMMENCING at the Southeast corner of said Government Lot 2; thence N. 01°03'25" W., along the Easterly line thereof, 425.05 feet to the TRUE POINT OF BEGINNING; thence continuing N. 01°03'25" W., 329.12 feet to a point on the Southerly boundary of Regatta Estates as shown by a plat on file as Book 22 of Plats, Page 58, on file in the Clark County, Nevada Official Records; thence along the said Southerly boundary the following courses: S. 88°56'35" W., 140.00 feet; N. 01°03'25" W., 457.72 feet; N. 89°38'21" W., 529.77 feet to a point on the West line of the aforesaid East Half (E½) of the Government Lot 2; thence along said line, S. 00°52'52" E., 503.92 feet; thence departing said line, S. 89°33'46" E., 314.35 feet; thence S. 00°44'27" E., 278.69 feet; thence S. 89°33'46" E., 358.57 feet to the TRUE POINT OF BEGINNING.

31

LIMITED PARTNER SIGNATURE PAGE

The undersigned, desiring to enter into the Agreement of Limited Partnership ("Partnership Agreement") in the form attached as an Exhibit to the Confidential Offering Memorandum dated August 1, 1983 ________ of REGATTA BAY, LTD., a Nevada limited Partnership (the "Partnership"), hereby agrees to all of the terms and provisions thereof. The undersigned hereby constitutes and appoints PHIL ROBERT ROSEQUIST the General Partner of the Partnership, individually, his true and lawful attorney-in-fact, with all the powers and authorities as set forth in said Agreement of Limited Partnership, including, without limitation, in his name, place and stead to make execute, sign, acknowledge, swear to, deliver and file a Certificate of Limited Partnership and amendments thereto for the purpose of admitting the undersigned and others as Limited Partners in the Partnership. The undersigned hereby joins and executes said Agreement of Limited Partnership and hereby authorizes this Signature Page to be attached thereto. The power of attorney hereby granted shall be deemed to be coupled with an interest, shall be irrevocable and shall survive the death of the undersigned.

WITNESS, the execution hereof by the undersigned, as a Limited Partner of REGATTA BAY, LTD., and individually.

Dated: October 28, 1983

For Jon & Barbara Peach
By Phil Robert Rosequist
Signature — Attorney in Fact
Phil Robert Rosequist

Jon & Barbara Peach
Name of Limited Partner
(Please Print)

2885 S. Mann St LV 89102
Residence

STATE OF NEVADA )
COUNTY OF CLARK ) ss:

I, ________, a Notary Public in the aforementioned jurisdiction, do hereby certify that on this 28th day of October, 1983, personally appeared Phil Robert Rosequist, and acknowledged the foregoing to

be his act as Limited Partner in the foregoing Agreement of Limited Partnership and his free act and deed.

Notary Public

My Commission Expires: [illegible]

(NOTARIAL SEAL)

1827

## LIMITED PARTNER SIGNATURE PAGE

The undersigned, desiring to enter into the Agreement of Limited Partnership ("Partnership Agreement") in the form attached as an Exhibit to the Confidential Offering Memorandum dated August 1, 1983 ______________ of REGATTA BAY, LTD., a Nevada limited Partnership (the "Partnership"), hereby agrees to all of the terms and provisions thereof. The undersigned hereby constitutes and appoints PHIL ROBERT ROSEQUIST the General Partner of the Partnership, individually, his true and lawful attorney-in-fact, with all the powers and authorities as set forth in said Agreement of Limited Partnership, including, without limitation, in his name, place and stead to make execute, sign, acknowledge, swear to, deliver and file a Certificate of Limited Partnership and amendments thereto for the purpose of admitting the undersigned and others as Limited Partners in the Partnership. The undersigned hereby joins and executes said Agreement of Limited Partnership and hereby authorizes this Signature Page to be attached thereto. The power of attorney hereby granted shall be deemed to be coupled with an interest, shall be irrevocable and shall survive the death of the undersigned.

WITNESS, the execution hereof by the undersigned, as a Limited Partner of REGATTA BAY, LTD., and individually.

Dated: October 28, 198 3

Joseph W. & Gayle Johnson
By Phil Robert Rosequist
Signature Attorney In Fact
Phil Robert Rosequist

Joseph W. & Gayle Johnson
Name of Limited Partner
(Please Print)

110 Lake Mead Drive LV 89105
Residence

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

I, ______________, a Notary Public in the aforesaid mentioned jurisdiction, do hereby certify that on this 28th day of October, 1983, personally appeared Phil Robert Rosequist, and acknowledged the foregoing

1827

34

be his act as Limited Partner in the foregoing Agreement of Limited Partnership and his free act and deed.

Notary Public

My Commission Expires: 6 21 86

(NOTARIAL SEAL)

1827

## LIMITED PARTNER SIGNATURE PAGE

The undersigned, desiring to enter into the Agreement of Limited Partnership ("Partnership Agreement") in the form attached as an Exhibit to the Confidential Offering Memorandum dated August 1, 1983 of REGATTA BAY, LTD., a Nevada limited partnership (the "Partnership"), hereby agrees to all of the terms and provisions thereof. The undersigned hereby constitutes and appoints PHIL ROBERT ROSEQUIST the General Partner of the Partnership, individually, his true and lawful attorney-in-fact, with all the powers and authorities as set forth in said Agreement of Limited Partnership, including, without limitation, in his name, place and stead to make execute, sign, acknowledge, swear to, deliver and file a Certificate of Limited Partnership and amendments thereto for the purpose of admitting the undersigned and others as Limited Partners in the Partnership. The undersigned hereby joins and executes said Agreement of Limited Partnership and hereby authorizes this Signature Page to be attached thereto. The power of attorney hereby granted shall be deemed to be coupled with an interest, shall be irrevocable and shall survive the death of the undersigned.

WITNESS, the execution hereof by the undersigned, as a Limited Partner of REGATTA BAY, LTD., and individually.

Dated: October 18, 1983

Badir A. and Kanaa A. Chowdhury
by Phil Robert Rosequist

Signature Attorney In Fact
Phil Robert Rosequist

Badir A. & Kanaa A. Chowdhury
Name of Limited Partner
(Please Print)

6351 De Silva Pl, LV 89109
Residence

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

I, ______________________, a Notary Public in the afore-mentioned jurisdiction, do hereby certify that on this 18th day of October, 1983, personally appeared Phil Robert Rosequist, and acknowledged the foregoing to

be his act as Limited Partner in the foregoing Agreement of Limited Partnership and his free act and deed.

Notary Public

My Commission Expires: 6 24 16

(NOTARIAL SEAL)