No. 04-1403C
(Senior Judge Hodges)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REGATTA BAY LTD.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY BRIEF

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

OF COUNSEL:

GEOFFREY L. PATTON
LUC ODABASHIAN
Department of Housing
& Urban Development

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

June 6, 2005

Attorneys for Defendant

TABLE OF CONTENTS

Page

DEFENDANT'S REPLY BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Defendant Is Entitled To Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Regatta's Unlawful Foreclosure Claim Does Not Properly Arise Out Of Or Depend Upon Any Alleged Breach Of The Regulatory Agreement . . . . . . . . . . . . 3

III. Regatta Is Not Excused For Its Failure To Submit Mortgage Payments . . . . . . . . . . . . . . 4

IV. HUD Did Not Repudiate The Regulatory Agreement Or The Deed Of Trust . . . . . . . . . . 6

V. Several Of Regatta's Claims Should Be Dismissed For Lack of Jurisdiction . . . . . . . . . 11

VI. Regatta Is Not Entitled To Declaratory Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII. Plaintiff's Tortious Breach Of Contract Claims Should Be Dismissed . . . . . . . . . . . . . . 14

VIII. The Government Did Not Breach Any Statutory Duties Pursuant To The Multi-Family Mortgage Foreclosure Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IX. Defendant Is Entitled To Summary Judgment Upon Regatta's Takings Claim . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

Page(s)

Awad v. United States,
301 F.3d 1367 (Fed. Cir. 2002) . . . . . 14

Awad v. United States,
61 Fed. Cl. 281 (2004) . . . . . 15

Carabetta Enters. V. United States,
58 Fed. Cl. 563 (2003) . . . . . 8

Carlyle Gardens C. V. Delaware State Housing Auth.,
659 F. Supp. 1300 (Dist. Del. 1987) . . . . . 15

Cienega Gardens v. United States,
194 F.3d 1231 (Fed. Cir. 1998) . . . . . 2,12-13

Collins v. Union Federal Savings and Loan Assoc.,
99 Nev. 284, 662 P.2d 610 (1983) . . . . . 4

DeRoo v. United States,
12 Cl. Ct. 356 (1987) . . . . . 15-16

Dow Chemical Co. v. United States,
226 F.3d 1334 (Fed. Cir. 2000) . . . . . 10

E.H. Ladum v. United States,
5 Cl. Ct. 219 (1984) . . . . . 8

H.H.O., Inc. v. United States,
7 Cl. Ct. 703 (1985) . . . . . 14,16

Kennedy Heights Apartments, Ltd. v. United States,
48 Fed. Cl. 574 (2001) . . . . . 5,19

Maxima Corp. V. United States,
847 F.2d 1549 (Fed. Cir. 1988) . . . . . 10

TABLE OF AUTHORITIES Con't

CASES

Page(s)

Mendenhall v. Kusicko,
857 F.2d 1378 (9th Cir. 1988) . . . . . . . . . . 15

Nat'l Leased Hous. Assoc. v. United States,
32 Fed. Cl. 762 (1995) . . . . . . . . . . 5

Pinkston v. United States,
6 Cl. Ct. 263 (1984) . . . . . . . . . . 15

Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,
739 F.2d 624 (Fed. Cir. 1984) . . . . . . . . . . 18-19

Salsbury Industries v. United States,
905 F.2d 1518 (Fed. Cir. 1990) . . . . . . . . . . 18

Southern California Edison v. United States,
58 Fed. Cl. 313 (2003) . . . . . . . . . . 17

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1978) . . . . . . . . . . 20

United States v. Dekonty Corp.,
922 F.2d 826 (Fed. Cir. 1991) . . . . . . . . . . 10

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . 14

FEDERAL STATUTES AND REGULATIONS

12 U.S.C. §§ 3705-08 . . . . . . . . . . 18-19

24 C.F.R. §§ 5.701, 5.703 . . . . . . . . . . 10

MISC.

Nev. Rev. Stat. 107.080(2) & (3) . . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REGATTA BAY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1403C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY BRIEF

Defendant, the United States, respectfully submits the following reply to the response to our motion for summary judgment filed by plaintiff Regatta Bay Limited ("Regatta").[1]

I. Defendant Is Entitled To Summary Judgment

Regatta argues that summary judgment is inappropriate here because discovery has not been conducted and there exists material issues of fact. Pl. Res. 6-8.[2] Specifically, Regatta argues that "[t]he Federal Defendant wrongfully claimed or declared Regatta Bay in breach of the Regulatory Agreement, Deed of Trust Note and Deed of Trust pertaining to the property, and wrongfully accelerated the demand for payment of the HUD insured loan." Pl. Res. 8. Regatta

---

[1] The statement of facts in Regatta's brief and its response to our proposed findings contains includes several factual statements with which we disagree, as well as legal argument. Within page limitations, we have responded in this brief to the most salient factual inaccuracies and legal argument presented in Regatta's statement of facts and plaintiff's response to our proposed findings of uncontroverted fact. We note that Regatta does not expressly deny most of the factual statements set forth in our proposed findings and instead (1) argues the relevance or import of the proposed finding, (2) argues other facts or legal conclusions, or (3) characterizes the proposed finding as a legal conclusion. See PRDPFUF 1-5, 7-10, 13-22, 24-33, 35-43.

[2] "Pl. Res. ___" refers to Regatta's response to our motion for summary judgment. "Def. Br. ___" refers to our motion for summary judgment. "A ___" refers to the appendix attached to our motion for summary judgment. "DPFUF ___" refers to defendant's proposed findings of uncontroverted fact. "PRDPFUF ___" refers to plaintiff's response to DPFUF. "Comp. ¶ ___" refers to plaintiff's complaint.

likewise argues that "[a]s a result of these breaches of contract, Regatta Bay was compelled into bankruptcy and ultimately lost its property rights." Id.

Regatta's argument continues to confuse actions taken by Reilly Mortgage Group ("Reilly" or "mortgagee") pursuant to the deed of trust and the deed of trust note, with notice of violations of the regulatory agreement issued by the Department of Housing and Urban Development ("HUD") to Regatta and its general partner concerning use of property funds and upkeep of the property. See Def. Br. 11-18. As Regatta must admit, the actual acceleration of the mortgage and ultimately the foreclosure upon the property were based not upon any alleged violation of the regulatory agreement, but rather were the result of Regatta's failure to make payments pursuant to the deed of trust and deed of trust note. Pl. Res. 16 ("Regatta does not allege HUD to have foreclosed under the Regulatory Agreement"); A 22; DPFUF 18 and PRDPFUF 18.

Indeed, as established in our motion for summary judgment, Def. Br. 18-20, HUD's request and Reilly's decision to accelerate the mortgage, and assignment of the mortgage to HUD, were taken pursuant to the deed of trust and deed of trust note at a time when there existed no privity of contract between HUD and Regatta pursuant to the deed of trust. Cienega Gardens v. United States, 194 F.3d 1231 (Fed. Cir. 1998) (discussing distinction between claims brought pursuant to a regulatory agreement and claims brought pursuant to a deed of trust). At the time of the acceleration, privity of contract simply did not exist between Regatta, as the owner of the HUD-insured properties, and the Government, with respect to payments made pursuant to the mortgage. 194 F.3d at 1245 ("HUD and the owners had no contractual relationship with respect to prepayment rights, and HUD's involvement in the contracts between the private lending

institutions and the Owners could not create such a contractual relationship").[3] Because there was no privity of contract between HUD and Regatta pursuant to the deed of trust and deed of trust note at that time, Regatta has no proper basis to challenge in this Court Reilly's acceleration of the mortgage or HUD's request that the mortgage be accelerated.

Regatta also asserts that summary judgment is not appropriate now because, "at the time of trial," Regatta will be able to establish "that the default was improper pursuant to the plain, clear language in the Deed of Trust, that HUD was not entitled to foreclosure because it cut-off Regatta Bay's grace period and right to cure any deficiencies or non-payment of mortgage installment payments, and that Regatta has valid and meritorious defenses to foreclosure as a matter of law, including the Federal Defendant's anticipatory repudiation in breach of the Regulatory Agreement, Deed of Trust and Deed of Trust Note." Pl. Res. 9. This self-serving statement by Regatta is insufficient to defeat our motion for summary judgment. Regatta's brief fails to explain why Regatta is unable at this juncture to present this evidence now in response to our motion for summary judgment. As we establish below, there are no material issues of fact and defendant is entitled to judgment as a matter of law.

## II. Regatta's Unlawful Foreclosure Claim Does Not Properly Arise Out Of Or Depend Upon Any Alleged Breach Of The Regulatory Agreement

In our motion for summary judgment, we established that Regatta had improperly couched its wrongful foreclosure claim in terms of a violation of the regulatory agreement. Def.

---

[3] That Regatta's argument does not state a proper cause of action against HUD is likewise established by the following argument set forth in Regatta's statement of facts: "[a]fter the lender refused to accept any payments either under the grace period or the right to cure provided by the Deed of Trust and by statute, Regatta no longer had an incentive to invest in the property and to meet the property's needs." Pl. Res. 5.

Br. 11-18. In response, Regatta attempts simply to side step this issue. For example, Regatta argues that summary judgment is precluded because Regatta can present a prima facie case of breach of the regulatory agreement. Pl. Res. 9. Yet, the body of the argument addresses not an alleged breach of the regulatory agreement, but rather alleged breach by HUD of the deed of trust. Pl. Res. 9-10.

At pages 14-15 of its brief, Regatta likewise argues that the Government "Wrongfully Foreclosed On The Subject Property." Pl. Res. 14. The basis of the alleged wrongful foreclosure, according to Regatta, is HUD's August 29, 2000 letter. Id. That letter, according to Regatta, "declared Regatta to be in default for its failure to meet the $1.48 million demand" requested in the March 24, 2000 letter. Id. HUD did not foreclose upon the property based upon either the March 24, 2000 or the August 29, 2000 letters, or the factual allegations set forth in those letters. Rather, HUD foreclosed because of Regatta's failure to make the required payments pursuant to the deed of trust and deed of trust note. A 58-59, 62. As such, its argument and, its citation to Collins v. Union Federal Savings and Loan Assoc., 99 Nev. 284, 303, 662 P.2d 610, 623 (1983), (discussing "the tort of wrongful disclosure"), is irrelevant here.

III. Regatta Is Not Excused For Its Failure To Submit Mortgage Payments

Regatta argues that its default should be excused. According to Regatta, the Government "did not allow the lender to follow" certain procedures allegedly set forth in the deed of trust. Pl. Res. 9. As established in our motion for summary judgment and as discussed above, there was no privity of contract between Regatta and HUD pursuant to the deed of trust and deed of trust note at the time Reilly accelerated the loan. Thus, Regatta has no proper basis upon which to

challenge in this Court the procedures utilized by Reilly to accelerate the loan or the Government's action as it relates to acceleration of the loan.

Regatta also argues that HUD ordered Reilly to "accelerate the note without allowing the contractual grace period or time to cure." Pl. Res. 16. Regatta is incorrect. Reilly accelerated the mortgage after Regatta failed to make its monthly payment after expiration of the one month grace period set forth in the deed of trust. A 22, 84; PA 52.[4]

Regatta likewise argues that it was "entitled to receive written notice of the right to cure any default before any acceleration be allowed, 'all as required by law.'" PRDPFUF 8. According to Regatta, Nevada State law, Nev. Rev. Stat. 107.080(2) & (3), requires a notice of right to cure. Id. Regatta's argument misses the mark. The section of the deed of trust cited by Regatta concerns not acceleration, but rather sale of the property at foreclosure. See Pl. Ex. 2, p. 2. Regatta's attempt to read into the deed of trust express state statutory requirements not specifically incorporated in the deed of trust should be rejected. Kennedy Heights Apartments, Ltd. v. United States, 48 Fed. Cl. 574, 579 (2001) (citing Nat'l Leased Hous. Assoc. v. United States, 32 Fed. Cl. 762, 766 (1995)).

Regatta argues that it should be excused for its failure to make mortgage payments from July 1, 2000, through May 1, 2001, because "Reilly would not accept the July 1 payment after

---

[4] Regatta makes the unsupported argument that our motion for summary judgment "failed to address Regatta's primary argument and claim for relief," that pursuant to the terms of the regulatory agreement, the deed of trust, and deed of trust note "the Government failed to comply with the terms, which breach led to foreclosure and Regatta losing the property." Regatta is incorrect. Our motion for summary judgment address in full Regatta's argument regarding these documents, establishing that, (1) at the time of the alleged "breach" there was no contract between Regatta and HUD pursuant to the deed of trust and deed of trust note, and (2) HUD's foreclosure upon the property was not based upon any alleged breach of the regulatory agreement by Regatta. Def. Br. 11-21.

HUD required Reilly to accelerate the Note and assign it to HUD." Pl. Res. 10. Presumably Regatta's argument is based upon allegations contained in its statement of facts. For example, Regatta alleges that "Reilly returned Regatta's payment dated July 28, 2000 at HUD's instruction that Reilly accelerate the note." Pl. Res. 4, see also Pl. Res. 13 (Reilly "refused to accept Regatta's July 28 payment"). Regatta is incorrect.

As support for its factual allegation, Regatta cites the July 26, 2000 letter from Reilly notifying Regatta of the acceleration of the mortgage. A 22. This letter does not reference in any way that Regatta's mortgage payment had been returned at HUD's instruction. Indeed, documents attached to Regatta's brief indicate that Reilly had returned to Mr. Rosequist a mortgage payment dated July 28, 2000, because, per a telephone conversation with Mr. Rosequist, the payment "represent[ed] a duplicate payment for June 1, 2000" and "[t]he payment from the management company was received and credited to the account on July 31, 2000." PA 26-27. Regatta's argument that HUD somehow directed Reilly to return a mortgage payment lacks any proper factual basis and, as such, should be rejected.

## IV. HUD Did Not Repudiate The Regulatory Agreement Or The Deed Of Trust

Regatta argues that HUD repudiated the deed of trust, the deed of trust note, and the regulatory agreement. Pl. Res. 11. Regatta is mistaken. As established above, there was no privity of contract between HUD and Regatta pursuant to the deed of trust and the deed of trust note at the time of the acceleration of the note and assignment of the mortgage to HUD. As such, Regatta lacks standing to assert that HUD somehow repudiated the deed of trust or deed of trust note.

With regard to the allegation that HUD repudiated the regulatory agreement, according to Regatta, "HUD did not meet its contractual duty to provide the insurance but instead wrongfully declared Regatta to be in default." Pl. Res. 11, see also Pl. Res. 13 ("HUD wrongfully canceled the mortgage insurance on August 29"). Again, Regatta is mixing apples and oranges. Acceleration of the mortgage and assignment of the mortgage to HUD were taken pursuant to the deed of trust and deed of trust note, not the regulatory agreement. Moreover, contrary to Regatta's suggestion, HUD did not "cancel[] the mortgage insurance," Pl. Res. 13. Indeed, the insurance stayed in effect until HUD paid in full Reilly's claim on the mortgage insurance. A 28-31, 55.

Assuming for the sake of argument that HUD had a duty to insure, as established in our motion for summary judgment, any such duty extended only to Reilly as the lender and not to Regatta as the borrower. Def. Br. 18-21; <u>see</u> 12 U.S.C. § 1715(b) (authorizing HUD, upon application by the <u>mortgagee</u>, to insure a mortgage); <u>United States v. Neustadt</u>, 366 U.S. 696, 709 (1961) ("the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees and that there is no legal relationship between the FHA and the individual mortgagor").

Regatta likewise argues that the course of conduct between Reilly, Regatta, and HUD, was to accept late payments by Regatta and not treat late payments as a material breach. Pl. Res. 4, 9, 11-12, 15-16. This argument ignores the fact that there was no privity between HUD and Regatta based upon the deed of trust and the deed of trust note during the period that Regatta was submitting its mortgage payments. Indeed, as support for its allegation, Regatta attaches correspondence between Reilly and Regatta. PA 29-51. However, none of this correspondence

suggests that Reilly somehow waived the requirement that Regatta make timely payments or waived any rights regarding acceleration of the mortgage. Indeed, just the opposite is true.

For example, the letters speak to the need of Regatta to abide by the terms of the deed of trust and make timely payments and address the consequences for failure to submit the required payments. Id. For example, letters sent by Reilly to Regatta from November 1996, through May 1997, informed Regatta that, because of delinquency in payment, Reilly had the right to assign the loan to HUD, and that failure to cure the delinquency would result in declaration of default. PA 38-48.[5] Regatta's argument that Reilly (or HUD) somehow had entered into a course of conduct whereby Reilly had agreed not to accelerate the mortgage is not supported by the record and should be rejected.

Regatta's reliance upon Carabetta Enters. V. United States, 58 Fed. Cl. 563, 567 (2003), and E.H. Ladum v. United States, 5 Cl. Ct. 219, 223 (1984), is misplaced. Accord to Regatta, these cases stand for the proposition that the parties "embarked upon a course of conduct that was consistent with acceptance of the modified procedures." Pl. Res. 15. As established above, the parties did not "modify" any procedures regarding payment. Rather, Reilly continually insisted upon prompt payment by Regatta and warned Regatta of the consequences of late payment. There simply never was any "acceptance of . . . modified procedures."

---

[5] The evidence offered by Regatta establishes that, at various points of time, the loans were not paid on time. However, Regatta offers no evidence that the loans were in default during those years, i.e., not paid within the one-month grace period. Rather, the exhibits indicate that Regatta owed late fees which were imposed after a payment was 15 days late. See PA 38-48; see also PRDPFUF 15 (suggesting that February - May 2000 payments were delinquent) and A 82 (establishing that payments for those months were made within grace period).

Regatta also argues that HUD repudiated the regulatory agreement based upon an alleged statement made to Mr. Rosequist by a HUD employee, David Ewing. Pl. Res. 4, 12. Assuming for the sake of argument (for the purpose of resolving our motion for summary judgment) that Mr. Ewing made the statement attributed to him by Mr. Rosequist, the statement does not amount to "repudiation" of the regulatory agreement by the Government.[6]

According to Mr. Rosequist's affidavit, "Mr. Ewing recommended that Affiant not put in any more of his money into the Regatta Bay project because HUD intended to enforce the $1.48 million dollar demand to the extent of foreclosing on the Regatta Bay property." Rosequist Aff. ¶ 7 (emphasis added).[7] Mr. Ewing's statement allegedly was made in the context of the Government's March 24, 2000 demand for repayment of $1.48 million that Mr. Rosequist owed based upon alleged improper withdrawals of funds from the property. Id. In any event, Mr. Rosequist's affidavit does not suggest that Mr. Ewing made any "recommendation" regarding whether Regatta should continue to submit its monthly mortgage payments to Reilly.

Regatta characterizes Mr. Ewing as "the then HUD authorized agent in the local Las Vegas office who was Regatta's contact person." Pl. Res. 3. However, Regatta provides no

---

[6] Regatta also makes the unsupported allegation that "[a]nticipatory repudiation occurred in March, 2000 when HUD communicated to Regatta that it would, under no circumstances, accept any future payments." Pl. Res. 13. Regatta cites no record support for this allegation and, indeed, there is none.

[7] Regatta's brief does not accurately represent the statement in Mr. Rosequist's affidavit regarding Mr. Ewing. According to Regatta's brief, Mr. Ewing "recommended that no more money be put into the Regatta Bay project." Pl. Res. 12. Regatta likewise alleges that "Mr. Ewing recommended that Regatta not waste any more money on the project because HUD intended to enforce the $1.48 million dollar demand by foreclosing on the property." Pl. Res. 4. Regatta's brief also improperly suggests that the $1.48 million was to be paid to HUD. Pl. Res. 12 (lines 20-22). This too is incorrect, as the $1.48 million was to be returned the project, not paid to HUD. Comp. Ex. 4-5.

evidentiary support the allegation that Mr. Ewing was the "HUD authorized agent," nor does Regatta attempt to set forth specifically the alleged nature of Mr. Ewing's authority as the purported "authorized agent." The June 29, 1994 letter referenced in Mr. Rosequist's affidavit, Rosequist Aff. ¶ 5, in no way establishes – or even addresses – Mr. Ewing's alleged authority to bind the agency.

Rather, the letter states only the local HUD office "has full authority to make decisions and work with you as a partner to build better, stronger communities. The office has now been designated the primary contact for coordination of all HUD programs for your community." Rosequist Aff., Ex. 3. The letter provides no description of which "decisions" the local HUD office has authority to make or who within the office holds this authority.

In any event, Mr. Ewing certainly did not have authority to authorize violation of, or "recommend" that Mr. Rosequist violate, agency regulations or the regulatory agreement that requires maintenance of the property or restricts the owner's distribution of assets of the property. 24 C.F.R. §§ 5.701, 5.703, Comp. Ex. 6, pp. 2-4; see, e.g., Maxima Corp. V. United States, 847 F.2d 1549, 1564-64 (Fed. Cir. 1988) (contracting officer has no authority to make agreements which violate the Federal procurement regulations).

Ultimately, the issue of Mr. Ewing's "authority" is of no moment because the statement attributed to Mr. Ewing by Mr. Rosequist in no way satisfies the standard for repudiation. "Repudiation occurs when one party refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party." Dow Chemical Co. v. United States, 226 F.3d 1334, 1344 (Fed. Cir. 2000) (citing United States v. Dekonty Corp., 922 F.2d 826, 827-828 (Fed. Cir. 1991)).

Mr. Ewing's alleged "recommendation" to Mr. Rosequist did not constitute a distinct and unqualified refusal by the Government to perform under the regulatory agreement.

Regatta argues that it "paid its June, 2000 payment to the loan servicing agent, Reilly," and that "HUD wrongfully declared on July 19 that a missed payment of Regatta Bay by July 1, 2000 was a 'continuing material breach." Pl. Res. 13. Regatta fails to state when it made its June 2000 payment, Pl. Res. 13, PRDPFUF ¶ 14. Indeed, Regatta's documentation establishes that Regatta's June 1, 2000 loan payment was made on July 31, 2000, several days after Reilly (not HUD), on July 26, 2000, declared Regatta in default of its loan. PA 52; see also A 84. Thus, there can be no legitimate dispute that Regatta was in default, and the grace period had passed, when Reilly notified Regatta of the default and accelerated the mortgage. A 22, 84; PA 52.

V. Several Of Regatta's Claims Should Be Dismissed For Lack of Jurisdiction

As discussed above, and as established in our initial brief, there existed no privity of contract between HUD and Regatta pursuant to the deed of trust and the deed of trust note until after the mortgage was assigned to HUD by Reilly. In response, Regatta offers several arguments in support of the proposition that HUD and Reilly were in privity with regards to acceleration of the mortgage. Pl. Res. 17-19. As we discuss below, none of these arguments provide sufficient basis for finding the requisite privity pursuant to the deed of trust and deed of trust note.

Regatta argues that the regulatory agreement "was made a part of, and fully integrated with, the Deed of Trust." Pl. Res. 17. The regulatory agreement was not "integrated with" the deed of trust. Rather, pursuant to the deed of trust, the regulatory agreement "was incorporated in and made part of the deed trust." A 2. This distinction is significant, as Reilly and Regatta could

not, by incorporating the regulatory agreement into the deed of trust, somehow make HUD a party to the deed of trust.

As discussed in our motion for summary judgment, the Federal Circuit in Cienega Gardens v. United States, 194 F.3d 1231 (Fed. Cir. 1998), held that privity of contract did not exist between owners of HUD-insured properties and the Government based upon terms set forth in a deed of trust:

> Although there was a contract – the regulatory agreement – between each of the Owners and HUD, the Owners' claims are based on the prepayment terms in the deed of trust notes and the attached riders. HUD and the owners had no contractual relationship with respect to prepayment rights, and HUD's involvement in the contracts between the private lending institutions and the Owners could not create such a contractual relationship.

194 F.3d at 1245. In this case, terms regarding acceleration of the mortgage were contained in the deed of trust and deed of trust note. As such, HUD and Regatta had no contractual relationship with respect to the terms of acceleration.

Regatta's brief fails to address in any meaningful way our discussion of Cienega Gardens and relevant portions of the decision quoted in our motion for summary judgment. Instead, Regatta attempts to distinguish Cienega Gardens from this case based solely upon the fact that Cienega Gardens concerned "the right to prepay mortgage loans after 20 years" and this case does not. Pl. Res. 18. Regatta's reliance upon this one factual distinction is insufficient to overcome the conclusion that, based upon Cienega Gardens, there existed between HUD and Regatta no privity of contract pursuant to the deed of trust and deed of trust note at the time Reilly

accelerated the mortgage. Regatta's failure to address in any meaningful way the true import of Cienega Gardens is fatal to its case.

VI. Regatta Is Not Entitled To Declaratory Judgment

In our motion for summary judgment, we established that Regatta was not entitled to a declaratory judgment that certain of HUD's actions violated the regulatory agreement. Def. Br. 29-30. While Regatta's response acknowledges the limited nature of this Court's jurisdiction with regard to entering declaratory judgments, Pl. Res. 19-20, Regatta fails to address the specific request for declaratory relief sought in its complaint. Instead, Regatta argues that its "claim for declaratory relief is independent, but supporting, and subordinate to its complaint that the Federal Defendant breached the Regulatory Agreement, wrongfully foreclosed upon the property and caused Regatta Bay losses for which it seeks monetary compensatory damages." Pl. Res. 19. Regatta's argument misses the mark.

Regatta's complaint seeks "judgment declaring Regatta Bay's payments of $1,327,424.00 and charges of interest of $152,665,00 described in Mr. Malone's August 29, 2000 letter, not to be in violation of the Regulatory Agreement, including the course of performance between HUD and Regatta Bay since 1983." Complaint ¶ 55. Regatta reply brief does not address the fact that HUD ultimately did not require repayment of either amount, and that Regatta ultimately did not make any such payments pursuant to the August 29, 2000 letter.

Thus, Regatta has not, and cannot, establish a monetary claim based upon the alleged breach of the regulatory agreement. As noted above, foreclosure upon the property was taken pursuant to the deed of trust and deed of trust note, not the regulatory agreement. Because there is no monetary claim properly attached to any alleged breach of the regulatory agreement, there

simply is no jurisdiction for this Court to issue the specific declaratory relief requested by Regatta. United States v. King, 395 U.S. 1 (1969).

## VII. Plaintiff's Tortious Breach Of Contract Claims Should Be Dismissed

In our initial motion, we established that the Court lacks jurisdiction to consider plaintiff's claims of wrongful foreclosure, breach of fiduciary duty, and tortious interference with a contractual relationship. In response, Regatta does not address the Court jurisdiction to consider each of these three specific causes of action. Instead, Regatta argues generally that the Court has jurisdiction to consider all of its tort-based claims because its complaint is based upon an alleged contractual agreement with the Government. Pl. Res. 20-22. Regatta's argument is misplaced.

In support of its argument, Regatta cites Awad v. United States, 301 F.3d 1367 (Fed. Cir. 2002), which upheld transfer of an action to from district court to the Court of Federal Claims, holding that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the" jurisdiction of the Court of Federal Claims. 301 F.3d at 1372. According to Regatta, "[t]he principal question regarding jurisdiction in this case that triggered transfer is whether Regatta Bay's action primarily sounds in contract, or whether Regatta Bay has stated a purely independent action in tort." Pl. Res. 21.

We do not dispute that, if there is a contractually based cause of action, it lies in this Court and not in district court. The Federal Circuit's decision in Awad does not, in any way, establish that this Court has jurisdiction to consider all of Regatta's specific tort claims. The Court must determine whether the specific cause of action is based upon a contractual relationship with the Government or independent actions involving tort. As noted by the Court in H.H.O., Inc. v. United States, 7 Cl. Ct. 703, 707 (1985), "[i]t is not jurisdictionally sufficient if

the alleged tortious conduct is merely "related" in some general sense to the contractual relationship between the parties."[8]

Plaintiff's brief ignores several case and statutory citations discussed in our brief establishing that this Court lacks jurisdiction over certain of Regatta's tort-based claims. Def. Br. 23-25. We do not restate here those specific arguments. Regatta's attempt to distinguish Pinkston v. United States, 6 Cl. Ct. 263 (1984), Pl. Res. 22,[9] should be rejected. In our motion, we cited Pinkston for the proposition that the Court lacks jurisdiction to consider plaintiff's claim of tortious interference with contractual relationship. Regatta claims as a distinction the fact that plaintiff in Pinkston "could not base Claims Court jurisdiction on the Tucker Act (28 USCS [sic] § 1491) since that Act expressly excludes jurisdiction over claims sounding in tort." Id. However, Regatta, like the plaintiff in Pinkston, has invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1491. Comp. ¶ 1. Thus, the alleged distinction set forth by Regatta is no distinction at all. Pinkston is properly cited in our brief. Regatta's suggestion to the contrary should be rejected.

Regatta also suggests that we have "misapplied" the Court's holding in DeRoo v. United States, 12 Cl. Ct. 356 (1987). Pl. Res. 22. Regatta is incorrect. We cited DeRoo for the

---

[8] Indeed, we note that in Awad, after transfer, the Court of Federal Claims determined that it lacked jurisdiction to consider plaintiff's contract-based claims. Awad v. United States, 61 Fed. Cl. 281 (2004).

[9] In support of its argument that this Court has jurisdiction to consider tortious breach of contract claims, Regatta cites two decisions from circuits outside this Court or the Federal Circuit. Pl. Res. 22 (citing Mendenhall v. Kusicko, 857 F.2d 1378 (9th Cir. 1988), and Carlyle Gardens C. V. Delaware State Housing Auth., 659 F. Supp. 1300 (Dist. Del. 1987)). Aside from the fact that these cases are not properly precedent of this Court, neither case stands for the proposition that the Court has jurisdiction to consider the tort claims brought by Regatta here.

proposition that the Court lacks jurisdiction to consider a claim that HUD officials negligently issued a conditional commitment because it is based in tort. We have not "misapplied" that decision, for that is precisely what the Court in DeRoo held. Regatta's argument to the contrary should be rejected.

Regatta argues that it "should have an opportunity to present all of its evidence regarding all of its damages at the trial of this matter." Pl. Res. 23. In support of this argument, plaintiff cites H.H.O., Inc. V. United States, 7 Cl. Ct. 703 (1985). However, in that case, the Court recognized the distinction between claims with a sufficient nexus between the Government's alleged tortious conduct and the Government's alleged breach of contractual obligations so as to bring claims within contract jurisdiction of Court, and claims grounded in tort theories of defamation or tortious interference which are not within jurisdiction the of the Court. That same principle applies here so as to limit the claims Regatta may pursue in this Court. We do not dispute that the Court has jurisdiction to consider Regatta's claim of breach of the covenant of good faith and fair dealings. However, as established in our initial motion, the Court lack jurisdiction to consider the tort claims of wrongful foreclosure, breach of fiduciary duty, and tortious interference with a contractual relationship. Regatta's suggestion otherwise should be rejected.

Regatta argues in favor of jurisdiction, suggesting that it "was a third-party beneficiary in privity with the Federal Defendant through the Deed of Trust's incorporation of the Regulatory Agreement as a term of the Deed of Trust." Pl. Res. 21. Regatta's argument is non sequitur. Regatta can not be a third-party beneficiary of either the deed of trust or the regulatory agreement because Regatta was a party to both documents – the deed of trust was entered between Reilly

and Regatta while the regulatory agreement was entered between HUD and Regatta. Regatta's third party beneficiary argument should be rejected.

In our motion for summary judgment, we established that Regatta had failed to allege facts sufficient to establish a prima facie case that HUD breached the covenant of good faith and fair dealings, noting that, to establish such a case, plaintiff "must allege facts which if proved would constitute malice or an intent to injure." Def. Br. 26-27 (citing Southern California Edison v. United States, 58 Fed. Cl. 313, 325 (2003)). Regatta's response fails to meet its burden.

Instead, Regatta simply restates its argument regarding HUD's alleged violation of the regulatory agreement. Pl. Res. 23-24. Specifically, Regatta argues that it has plead a prima facie case "through HUD's denial of its duty to insure the loan and HUD's denial that the plain meaning and spirit of the Regulatory Agreement required HUD to endorse insurance of the loan and to honor its own endorsement without making frivolous, strained demands for more than $1 million by Regatta." Pl. Res. 24. This general allegation is wholly insufficient to establish a prima facie case as it does not in any way allege facts that "constitute malice or intent to injure." Indeed, Regatta' response fails to identify any individuals who allegedly acted with malice or intent to injure.

Moreover, as discussed above, Regatta's argument has no basis in reality. HUD did not "deny" any "duty to insure the loan." Reilly accelerated the mortgage based upon Regatta's default of the deed of trust and deed of trust note. The acceleration was implemented pursuant to the terms of the deed of trust and deed of trust note, not the regulatory agreement. Finally, as established in our motion for summary judgment, no civil action pursuant to 12 U.S.C. § 1715z-4a, or any other judicial or administrative action, ever was filed taken against plaintiff involving

the property and Regatta never made any payments to HUD in response to either the March 24, 2000, or August 29, 2000 letters. Def. Br. 22.

Regatta's general allegations come nowhere near the "well nigh irrefragable proof" required to demonstrate "that the government had a specific intent to injure it." Salsbury Industries v. United States, 905 F.2d 1518, 1521 (Fed. Cir. 1990). Regatta's unsupported belief that deposition discovery somehow "may reveal additional facts to overcome the rebuttable presumption that HUD government officials acted in good faith" is insufficient to defeat our motion for summary judgment. Pl. Res. 24. See Pure Gold, Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 627 (Fed. Cir. 1984) ("Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint"). The Government is entitled to summary judgment upon this issue.

VIII. The Government Did Not Breach Any Statutory Duties Pursuant To The Multi-Family Mortgage Foreclosure Act

In our motion for summary judgment, we established that Regatta's challenge to the Government's actions taken pursuant to the Multi-Family Foreclosure Act ("MMFA") should be rejected because none of the provisions of the MMFA cited by Regatta are money-mandating. Def Br. 27-29. See 12 U.S.C. §§ 3705-08. In response, Regatta argues "that the claims of the violations of the MMFA arise through the Federal Defendant's breach of the Regulatory Agreement and the Deed of Trust." Pl. Res. 25.

The fact that Regatta has pending in this Court an action based upon alleged breach of the regulatory agreement and the deed of trust does not somehow provide this Court with jurisdiction to adjudicate alleged violations of the MMFA that are not money mandating. Regatta does not

allege that sections 3705-08 of the MMFA are referenced or incorporated into either the regulatory agreement or the deed of trust and deed of trust note. As such, these documents (and their alleged violation by HUD) do not provide sufficient basis for this Court to exercise jurisdiction to consider Regatta's MMFA violation claim. See, e.g., Kennedy Heights Apartments, Ltd. v. United States, 48 Fed. Cl. 574, 577-78 (2001) (rejecting plaintiffs' "nominal argument" that claims are properly before Court on contractual grounds because plaintiffs' claims stemmed directly from statutory and regulatory provisions of MMFA and those provisions were not incorporated into plaintiffs' contract).

IX. Defendant Is Entitled To Summary Judgment Upon Regatta's Takings Claim

In our motion for summary judgment we established that we are entitled to judgment upon Regatta's takings claim because Regatta's takings theory is based upon an alleged violation of contract. According to Regatta, "HUD's denial of Regatta's rights to insurance under the Regulatory Agreement and to Regatta of its equitable rights in the subject property through HUD's pursuit of the wrongful declaration of default and foreclosure of the property constitutes a taking in violation of the Fifth Amendment." Comp. ¶ 65.

In response, Regatta admits, as it must, that its takings claim is based upon alleged breach of contract and tortious breach of contract. Pl. Res. 26. However, Regatta asks that the Court not dismiss its takings claim because "[d]iscovery in this case may reveal additional facts to show how the Federal Defendant used the MMFA to exercise the power of sale to take Regatta's property rights." Pl. Res. 26-27. Regatta's unsupported, non-specific, belief that discovery might somehow reveal facts to support a takings claim is wholly insufficient to defeat our motion for summary judgment. Pure Gold, Inc., 739 F.2d at 627.

Regatta's remedy, if any, for HUD's alleged infringement of its alleged contractual rights lie in contract, not the Fifth Amendment, as it is the terms of the alleged contract that govern the parties' respective rights and obligations. Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978). Regatta's taking claim here should be dismissed.

CONCLUSION

For these reasons, and the reasons set forth in our motion for summary judgment, defendant respectfully requests that the Court grant defendant's motion for summary judgment and dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

GEOFFREY L. PATTON
LUC ODABASHIAN
Department of Housing
& Urban Development

June 6, 2005

CERTIFICATE OF FILING

I hereby certify that on June 6, 2005, a copy of the foregoing "DEFENDANT'S REPLY BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON