JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

No. 04-1403C
(Senior Judge Hodges)

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REGATTA BAY LIMITED,

Plaintiff,

vs.

UNITED STATES OF AMERICA,

Defendant.

---

## REPLY BRIEF IN SUPPORT OF CROSS-MOTION FOR CONTINUANCE TO PERMIT DEPOSITIONS TO BE TAKEN AND DISCOVERY TO BE HAD

---

JOHN PETER LEE, LTD.
PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 382-4044 Fax: (702) 383-9950
*Attorney for Plaintiff*

July 5, 2005

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

TABLE OF CONTENTS

REPLY BRIEF IN SUPPORT OF CROSS-MOTION FOR CONTINUANCE TO PERMIT DEPOSITIONS TO BE TAKEN AND DISCOVERY TO BE HAD . . . . . . . . . . . 1

I. The Federal Defendant Concedes Many of the Central Issues . . . . . . . . . . . . . . . . . . . . . 1

A. Regatta's July 28, 2000 Payment Within the Grace Period Cured the Alleged Breach of Lateness for the Payment Due July 1, 2000 . . . . . . . . . . . . . . . . 2

B. Neither Reilly Nor HUD Had a Right to Accelerate on the Only Basis HUD Now Asserts, the Lateness of the Payment Due July 1, 2000 . . . . . . . . . . . 5

C. By Canceling the Mortgage Insurance HUD Promised to Provide Under the Regulatory Agreement, HUD Assured Itself of its Ability to Take Back the Property, and the Record Contains No Competent Evidence of a Breach By Regatta of the Regulatory Agreement to Have Justified HUD's Cancellation of the Insurance . . . . . . . . . . . . . . . . . . . . . . 12

D. HUD Transferred the Property Under the Multi-Family Mortgage Foreclosure Act ("MMFA") Under Which Statute HUD's Own Cited Authority of Kennedy Heights Recognizes the Money Mandating Remedy of Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

E. HUD Admits That It Had Insufficient Privity to Have Taken the Property By a Right of Contract, Which HUD's Cited Case of Cienega Gardens and Progeny Hold to Be the Basis For a Takings Claim Under the Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II. Regatta is Entitled to Basic Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES


Page(s)

Christopher Village, L.P. v. United States
360 F.3d 1319, 1334 (2004) . . . . . . . . . . 11

Cienega Gardens v. United States
194 F.3d 1231 (Fed.Cl. 1998) . . . . . . . . . . 2, 13, 14, 15

Independence Park Apartments v. United States
61 Fed. Cl. 692, 694 (2004) . . . . . . . . . . 14

Kennedy Heights Apartments, Ltd. v. United States
48 Fed.Cl. 574 (2001) . . . . . . . . . . 16, 18

Kennedy Heights Apartments, Ltd. I v. United States
63 Fed. Cl. 731, 737 (2005) . . . . . . . . . . 11, 17, 18

Southern California Edison v. United States
58 Fed.Cl. 313 (2003) . . . . . . . . . . 4

Sun Oil Co. v. United States
215 Ct. Cl. 716 (1978) . . . . . . . . . . 18


## FEDERAL STATUTES AND REGULATIONS


12 U.S.C. § 3704 . . . . . . . . . . 16


## MISC.


Nevada Revised Statutes 107.080(2) . . . . . . . . . . 6

Nevada Revised Statutes 107.080(3) . . . . . . . . . . 6, 7

RCFC 26(b) . . . . . . . . . . 19


JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| REGATTA BAY LIMITED,<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 04-1403C<br>(Senior Judge Hodges) |

**REPLY BRIEF IN SUPPORT OF CROSS-MOTION FOR CONTINUANCE TO PERMIT DEPOSITIONS TO BE TAKEN AND DISCOVERY TO BE HAD**

The Plaintiff, Regatta Bay, Ltd. ("Regatta Bay" or "Regatta"), respectfully submits the following Reply to the Response to our Cross-Motion for Continuance to Permit Depositions to be Taken and Discovery to be Had.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

## I. THE FEDERAL DEFENDANT CONCEDES MANY OF THE CENTRAL ISSUES.

The Federal Defendant does not dispute that Reilly Mortgage Group, Inc. ("Reilly") rejected Regatta's July 28, 2000 payment made within the grace period which would have cured the alleged breach of the lateness of the July 1, 2000 Note payment by Regatta Bay. The Federal Defendant also does not dispute that it never recorded a notice of default and election to sell or allowed Regatta an opportunity to cure as required under the Deed of Trust to accelerate. Discovery is needed to determine Reilly's status and role as the Note and Trust Deed holder, but assuming as the Federal Defendant does, that Reilly held the Trust Deed in July of 2000, Regatta's July 28, 2000 cure payment within the grace period was sufficient to cure the default of the lateness of payment.

The Federal Defendant's basic position depends upon an assumption of Reilly's acceleration in July 2000 as having complied with the covenants of the Deed of Trust, but Reilly and HUD failed to comply with the covenants for acceleration under the Deed of Trust. Regatta is entitled to ordinary discovery, including: the documentation and depositions about how Reilly and HUD acquired their respective interests under the Note and Deed of Trust; what those rights were of privity as to the Note and Deed of Trust and as to the Regulatory Agreement and any modification by course of performance and after any repudiation; why Reilly and HUD acted as if the Note was

accelerated in July 2000 without complying with the acceleration covenants; and what they knew and intended as to Regatta's July 28, 2000 cure payment.

**A. REGATTA'S JULY 28, 2000 PAYMENT WITHIN THE GRACE PERIOD CURED THE ALLEGED BREACH OF LATENESS FOR THE PAYMENT DUE JULY 1, 2000.**

The Federal Defendant does not dispute the authenticity of the cover letter, envelope and check at A52-54 of Regatta's April 28, 2005 Response. Regatta also files herewith an Affidavit of Phil R. Rosequist authenticating these documents of the transaction, which the Federal Defendant did not include in its Appendix.

The Federal Defendant does not dispute that Regatta's payment due June 1, 2000 is not an issue. The Federal Defendant's Notice of Default and Foreclosure Sale at A65 of its January 14, 2005 Appendix states in the fourth and fifth paragraph as follows:

> WHEREAS, a default has been made in the covenants and conditions of the Deed of Trust in that the payment due on July 1, 2000, was not made and remains wholly unpaid as of the date of this notice, and no payment has been made sufficient to restore the loan to currency; and
>
> WHEREAS, by virtue of this default, the Secretary has declared the entire amount of the indebtedness secured by the Deed of Trust immediately due and payable; . . . .

(Underscoring in original.) Any allegations by the Federal Defendant about lateness of a June 1, 2000 payment are not the basis of the Secretary's foreclosure.

The Federal Defendant's concession that Reilly rejected Regatta's payment that would have cured the alleged default of the lateness of the July 1, 2000 payment has a tremendous impact on this case. HUD's assertion quoted above, "No payment has been made sufficient to restore the loan to currency", is incorrect, which leaves nothing as the basis of HUD's foreclosure. It also leaves nothing as the basis of HUD's declaration of the entire amount of indebtedness to be immediately due and payable, the purported, but invalid acceleration.

Without a valid acceleration, HUD's taking of the property was not allowed by contract. As discussed below, the Federal Defendant's citation of Cienega Gardens v. United States, 194 F.3d 1231 (Fed.Cl. 1998), shows that such taking of property without a contract right violates the Fifth Amendment and mandates the payment of just compensation. Further, without an accelerated note,

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

HUD was only entitled to keep, at most, the unpaid portions of the note which accrued up to the date of the foreclosure sale, approximately $400,000.00 or so, which may be computed at the time of trial. HUD was not entitled to keep the more than $3,000,000.00 which HUD retained from the $3.6 million dollar sale. To be entitled to any proceeds from the sale, HUD would have to show that it, or its assignor, did not repudiate the right to receive timely payment through the unequivocal rejection of Regatta's July 28, 2005 payment, and through the relevant conduct in relation thereto by HUD and its assignor, apparently Reilly.

Reilly and HUD unequivocally repudiated their rights under the trust deed also through their conduct. As stated in Regatta's Cross-Motion, Regatta requests to conduct discovery concerning the correspondence between Reilly and HUD and to depose the witnesses who are most knowledgeable about Reilly and HUD's dealings with this loan in the year 2000.

The documents show that in March 2000 HUD demanded payment of more than $1 million based upon meritless claims that were barred by the statute of limitations. (See Second Amended Complaint filed October 1, 2004, Exhibit 4 and A22-24 of Regatta's April 28, 2005 Response.) A dispute of material fact exists as to HUD's assertion that Regatta had violated the Regulatory Agreement concerning the $1.4 million HUD demanded Regatta to pay. Even if there had been a violation, however, there was no dispute that more than $1 million of HUD's claim dated back to 1993 and earlier and that the limitations period had expired. HUD cannot show its demand for payment to be reasonable for such claims barred by limitations. As if this unreasonable demand by HUD were not enough, it was only the beginning of HUD's unreasonable conduct by which it repudiated its rights.

According to Janet Browder, HUD's Director of the San Francisco Multi-Family Hub, Office of Housing for HUD over Northern California, Nevada, Arizona and Hawaii, HUD referred its complaint for the alleged violation of the Regulatory Agreement against Regatta to the Department of Justice, which refused to file an action against Regatta. (See A85-87 of HUD's January 14, 2005 Appendix.) HUD does not even attempt in its Motion for Summary Judgment to prove its argument that Regatta breached the Regulatory Agreement. As stated, such an action would have been frivolous, clearly barred by limitations and meritless. Contrary to HUD's strained arguments, HUD's

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

conduct was unreasonable and evidences an intent to injure Regatta, which tends to show a breach of the covenant of good faith and fair dealing under HUD's cited authority of Southern California Edison v. United States, 58 Fed.Cl. 313 (2003) (noting difficulty of overcoming presumption of good faith of government employees but also that "difficult is not the same as impossible").

Ms. Browder also states that, "on July 19, 2000, HUD instructed the Reilly Mortgage Group, the holders of the HUD-Insured Note, to notify Plaintiff that HUD had exercised its right to accelerate payment due on the mortgage." (A87 of HUD's January 14, 2005 Appendix, ll. 10-13.) Ms. Browder has thereby unambiguously asserted to the Court that HUD had a right to accelerate the Note on July 19, 2000.

By repeating over and over the argument that HUD had no privity, HUD's counsel rejects this highly questionable statement by Ms. Browder, which rejection is an admission that HUD could not accelerate the Note in July 2000. Ms. Browder's declaration that HUD could accelerate further evidences HUD's intent to injure Regatta without regard to the reasonableness or HUD's actual lack of authority under law to accelerate. Regatta has requested the opportunity to depose Ms. Browder as to why she has declared that HUD accelerated the payment in July 2000, whereas HUD's present counsel at the Department of Justice repeatedly argues that HUD had no privity.

Ms. Browder further confirms HUD's unambiguous intent to harm Regatta through her statement, "The decision to seek foreclosure and sale was based strictly on Plaintiff's breach of the Deed of Trust and Plaintiff's failure to make timely mortgage payments." (A87 of HUD's January 14, 2005 Appendix, ll. 15-18.) The Federal Defendant's counsel admits at footnote 5 of the June 6, 2005 Response that the Deed of Trust allowed a 30-day grace period. By HUD's own statements, it could not have defaulted the Note for the late July 1, 2000 payment tendered in cure on July 28, 2000, even if HUD had been in privity, which HUD's counsel repeatedly argues that it was not. HUD's foreclosure on such meritless, self-contradictory assertions of the default further shows HUD's intent to injure Regatta Bay by the taking of this property without contractual authorization.

At A87, paragraph 9 of the same Declaration, Ms. Browder states, "HUD concluded that, based on the poor financial posture of the complex, there is a risk that the Plaintiff may continue to default on its monthly payments." The assertion of Regatta's "poor financial posture" is contradicted

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

by the fact that this loan had performed since its origination more than twenty (20) years previously. Regatta is entitled to discovery on how and why HUD reached this conclusion at this time after satisfactory performance for so long.

In the Federal Defendant's Response to Regatta Bay's Cross-Motion filed June 6, 2005, the Federal Defendant does not acknowledge having known about Reilly's rejection of Regatta's July 28 payment in cure of the lateness of the July 1, 2000 payment. In HUD's June 6, 2005 Reply Brief at page 6, HUD denies that it directed Reilly to return the Note payment and tries to imply that the returned Note payment of July 28, 2000 would not have cured the lateness of the July 1, 2000 payment due by suggesting the return was "per a telephone conversation with Mr. Rosequist".

The Affidavit of Phil R. Rosequist submitted herewith shows that Reilly rejected Regatta's July 28, 2000 payment which was made for the purpose of curing the lateness of the payment due July 1, 2000. HUD does not attempt to cite competent evidence to refute: that Regatta made this July 28, 2000 payment; that Regatta had a 30-day grace period which had not expired for the July 1 payment when HUD purported to exercise "its right to accelerate", which was HUD's asserted basis of the foreclosure; or that Reilly returned the payment, rejecting Regatta's tender of the cure allowed under the Deed of Trust. HUD's stated reason for declaring Regatta's Note to be in default and for exercising what Ms. Browder declares to be HUD's "right to accelerate", the alleged failure of Regatta to tender a cure payment, has no basis in fact.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

### B. NEITHER REILLY NOR HUD HAD A RIGHT TO ACCELERATE ON THE ONLY BASIS HUD NOW ASSERTS, THE LATENESS OF THE PAYMENT DUE JULY 1, 2000.

HUD goes to great lengths to argue that its cancellation of the Regulatory Agreement, discussed below, was not the basis of its acceleration and foreclosure. Rather, HUD contends, without merit, that a breach of the Note and Deed of Trust by Regatta caused the Secretary's acceleration and foreclosure. HUD's only contention about when the purported acceleration occurred is in July 2000. (See Notice of Default and Foreclosure Sale at A65 and Browder Declaration of HUD's January 14, 2005 Appendix at A87, lines 9 through 18.)

HUD repeats and stresses in its papers that it had no privity with Regatta, contrary to Ms. Browder's assertion that HUD exercised its right of acceleration in July 2000, which is the only time

HUD ever alleges to have accelerated the Note according to the Notice of Default and Foreclosure Sale and Ms. Browder's Declaration. (A 65 and A 87 of HUD's January 14, 2005 Appendix.) HUD's counsel is correct about the lack of HUD's privity as to the Note and Deed of Trust to the extent that Reilly still held the Note and Deed of Trust in July 2000. As stated, Regatta seeks discovery of the documentation and manner of acquisition of the Note and Deed of Trust by Reilly and later by HUD.

Reilly's right to accelerate was subject to Regatta's right to cure at least fifteen (15) days after receipt of written notice of an election by Reilly to pursue acceleration, assuming Reilly's rights as note holder can be established, which HUD has thus far failed to do. The Deed of Trust provides in pertinent part as follows:

> Upon any default being made in the payment of any installment of principal and/or interest under said Note or payment of any monthly sum as hereafter provided . . . not made good prior to the due date of the next such payment . . . or upon failure to keep or perform any covenant agreement or condition hereunder, the entire unpaid balance of the principal sum and all advances with unpaid interest to date shall immediately become due at the option of the Beneficiary and thereupon the Trustee, or his successor in this Trust, shall have power and it shall be his duty, after (1) the lapse of 15 days during which the Grantor shall have failed to make good such default, (2) after due recording in the office of the recorder in the county where the property lies of notice of such default and election by the Beneficiary to cause the trust property to be sold in payment of the debt, after (3) the elapse of at least 3 months, and (4) after the Trustee shall have given notice by publication and/or otherwise as at the time and place of such sale, all as required by law, to sell and in case of any default of any purchaser, to resell at public auction for cash in one or more parcels, the mortgaged premises and property herein described and to convey the same in fee simple upon compliance with the terms of the sale to and at the cost of the purchaser or purchasers thereof. . . .

(A13 of Regatta's April 28, 2005 Response, 8th full paragraph, underscoring added.) If the Beneficiary, which HUD has not established to be Reilly, elected to accelerate the Note and to exercise the power of sale, the Trustee could only do so after the Grantor shall have failed to make good the default after recording of the written notice of default and election to sell, which is the form of written notice expressly required under the Deed of Trust.

Regatta quotes the provisions of Nevada Revised Statutes ("NRS")107.080(2) & (3) at page 3 of its April 28, 2005 Response. NRS 107.080(2)(a) shows that this particular form of trust deed was apparently more than 20 years old because at the date of execution of this Note and Deed of



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Trust, September 1, 1979, the statutory requirement for the right to cure following written notice prior to acceleration had been thirty-five (35) days since 1957. Before 1957 the cure period had only been fifteen (15) days, such as this Deed of Trust provides.

Still, the Deed of Trust makes clear that the notice and right to "make good such default" must be "all as required by law", which includes the thirty-five (35) day cure period in effect as of the date of the Deed of Trust. Ultimately, whether or not the 15-day or the 35-day period applies does not matter in this case because there is no dispute that Reilly never provided to Regatta or recorded any written notice of default and election to sell, and Reilly never provided any right to cure upon such written notice. Instead, Reilly purported to accelerate through its July 26, 2000 letter without giving any such notice or opportunity to cure.

As was underlined in pertinent part on page 3 of Regatta's April 28, 2005 Response, NRS 107.080(3) provides in pertinent part as follows:

> The notice of default and election to sell must describe the deficiency in performance or payment and may continue to notice an intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust, but acceleration must not occur if the deficiency and performance of payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency and performance or payment or paid within the time specified in subsection 2 [15 days before July 1, 1957 and 35 days after July 1, 1957].

Under the state law which governed the Deed of Trust before HUD ever took an assignment, a notice of default and election to sell, which Reilly never executed or recorded, acted as a notice of intent to declare the unpaid balance due, but the acceleration could not occur unless there was a failure to cure within thirty-five (35) days of recordation of the written notice of default and election to sell. The express language of the Deed of Trust included these requirements as well (except for a 15-day right to cure rather than a 35-day right) and included a reference that the intent is "all as required by law", which in Nevada means compliance with this quoted provision in NRS 107.080(3) of a 35-day right to cure prior to any acceleration.

There is no dispute that neither Reilly nor HUD ever attempted to comply with the preparation and recording requirements for written notice of default and election to sell. The 15-day

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

right to cure expressly provided in this old form of deed of trust and the 35-day right to cure provided by the current statute as of the date of the Deed of Trust both essentially mean that a late payment is not a material breach of the covenant which allows acceleration until the grantor fails to cure in the required time after a written notice of breach and election to sell is executed and recorded.

Accordingly, the cure period never commenced in this case, and the cure period was never breached. Legal acceleration under the Deed of Trust never occurred.

Despite Janet Browder's assertions to the contrary, the Federal Defendant's counsel at the Department of Justice concedes that HUD did not have privity when Ms. Browder claims to have exercised HUD's right of acceleration. Assuming HUD was not in privity at the time when, as the Department of Justice stresses, state law controlled the parties' rights under this Deed of Trust. Under the express language of the Deed of Trust and under state law, Reilly or whoever the note holder can be shown to have been, had no right to accelerate without recording any written notice of default and election to sell and allowing Regatta an opportunity to cure.

Ms. Browder's Declaration that HUD had a right to accelerate in July 2000, from which Declaration the Department of Justice now distances itself, further evidences bad faith of HUD through an intent to injure Regatta. According to the Department of Justice, HUD and its regional director of multi-family housing had no business submitting a Declaration to the United States District Court for the District of Nevada nor to this Court, asserting to have had such a "right to accelerate" in July 2000. HUD also had no legal right to treat the Note as accelerated in July, 2000, nor did HUD have any proper business labeling Regatta's actions as a "continuing material breach" in its July 19, 2000 letter at A20 HUD's January 14, 2005 Appendix.

HUD's bad faith and intent to injure Regatta is also evidenced by Reilly's willingness to accede to HUD's threats by describing the Note as accelerated in the July 26, 2000 letter at A22 of HUD's January 4, 2005 Appendix and by rejecting Regatta's July 28, 2000 cure payment at A52 through 54 of Regatta's April 28, 2005 Response. Although the Federal Defendant refuses to provide discovery at this point, except upon its own conditional terms that no depositions be allowed, the email at A28 through 31 of the January 14, 2005 Appendix, which is the only documentation for Reilly's assignment of the Note and Deed of Trust to HUD thus far provided, indicates that Reilly

still did not assign the Note and Deed of Trust until after HUD canceled the insurance. Another valid topic of discovery is why HUD falsely asserted in its October 31, 2001 Notice of Default and Foreclosure Sale that "the payment due on July 1, 2000, was not made and remains wholly unpaid as of the date of this notice, and no payment has been made sufficient to restore the loan to currency" (A65 HUD's January 14, 2005 Appendix, underscoring in original.) and whether HUD knew that Reilly had rejected Regatta's July 28, 2000 attempt to cure, which would have been "sufficient to restore the loan to currency".

HUD's intent to injure Regatta is further evidenced if HUD made this statement knowing Reilly had rejected Regatta's July 28, 2000 cure payment. HUD's intent to injure Regatta is also further evidenced if HUD did not bother to learn about the cure payment and Reilly did not believe HUD considered the cure payment relevant to HUD's aggressive pursuit of the acceleration without regard to Regatta's right to cure. Until July 2000 when Ms. Browder incorrectly states that HUD has a "right to accelerate", Reilly had always previously been satisfied over the 20-year life of the Note and Deed of Trust to accept late fees and late payments from Regatta. Discovery is necessary to determine exactly why Reilly's sudden unwillingness to accept such payments coincided with HUD's incorrect position that it had a "right to accelerate". The most obvious and reasonable inference from the evidence is that HUD threatened the noteholder's position of being insured by HUD.

Without HUD's cancellation of the insurance which was the consideration provided by HUD under the Regulatory Agreement, discussed below, HUD would have had no means of enforcing what Ms. Browder deemed as HUD's right to accelerate. As long as the Note remained insured by HUD, then HUD could not be sure that Reilly, or whoever the noteholder was, would not continue pursuing the course of performance over the 20-year existence of this Note and Deed of Trust, which allowed Regatta to pay a late fee to have its late payment accepted by the noteholder. HUD does not deny that modification by course of performance is an issue of fact. HUD makes no attempt to dispute the applicability of Regatta's relevant authorities of its April 28, 2005 Response in this regard at page 11, line 23 through page 12, line 3, which support a finding and conclusion that modification by conduct of the parties occurred here.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

The requested discovery of HUD's records should also confirm that HUD had detailed accounting records during this course of performance, which course of performance HUD knew it could only upset by requiring assignment of the Note and Deed of Trust from Reilly. HUD's cancellation of the insurance, which insurance endorsement was the express consideration under the Regulatory Agreement, allowed HUD to be sure that Reilly had no incentive to continue to hold an uninsured loan and that Reilly would therefore assign the loan to HUD.

HUD implies a fact issue to exist as to whether or not Regatta violated the Regulatory Agreement, but HUD's argument, even if a fact issue existed, would not overcome the bar of limitations on HUD's demand for more than $1 million dollars, Regatta's "failure" of which to pay was the stated basis for HUD's cancellation of the Regulatory Agreement. Ultimately, HUD recognizes that its claim of breach by Regatta of the Regulatory Agreement must be conceded for HUD to avoid another issue of fact which would also preclude summary judgment, but HUD argues the issue of its own breach of the Regulatory Agreement to be irrelevant because its foreclosure was based upon the July 2000 acceleration. (Notice of Default and Foreclosure Sale and Browder Declaration, ¶¶ 6, 7 at A65, 87 of HUD's January 14, 2005 Appendix.)

As shown by the Department of Justice's admission that HUD was not in privity, under the express terms of the Deed of Trust and under the controlling state law of Nevada, neither HUD nor Reilly had a right to accelerate. HUD thus shows fact issues to exist concerning its breach of the covenants of the Deed of Trust and concerning HUD's breach of the Regulatory Agreement, discussed below. As discussed below, once HUD acquired an assignment of Reilly's rights, whatever those rights were and however HUD acquired them, HUD only acquired the rights which HUD's assignor held under the Note and Deed of Trust, which could not have been accelerated under the express terms or under the controlling Nevada law, despite Ms. Browder's Declaration expressing HUD's disregard for such terms and for such law.

Ms. Browder's Declaration and HUD's Notice of Default and Foreclosure Sale are the only bases HUD asserts for the alleged July 2000 acceleration. At paragraph 7 of A87 of HUD's January 14, 2005 Appendix, she states:

////

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

> The July 19, 2000 letter to Reilly Mortgage initiated HUD's foreclosure and sale proceedings against Plaintiff. The decision to seek foreclosure and sale was based strictly on Plaintiff's breach of the Deed of Trust and Plaintiff's failure to make timely mortgage payments.

HUD cannot show the Note to have been accelerated at any other time in the only documents HUD has produced thus far. Because neither Reilly nor HUD had a right to accelerate in July 2000, Regatta has a claim for HUD's breach of the covenants under which the power of sale could be exercised under the Deed of Trust, as well as Regatta's claim for breach of the Regulatory Agreement.

The conduct of both Reilly and HUD in treating the Note as accelerated without regard to the terms of the Deed of Trust and without regard to the law and in refusing to recognize Regatta's right to cure is only consistent with the unequivocal communication and ratification by all related conduct as to the rejected cure payment of the express intent to repudiate and to breach the covenants of the Deed of Trust. HUD has not disputed Regatta's analysis of the authorities on repudiation at page 11, lines 7 through 13 of Regatta's April 28, 2005 Response and the argument thereafter to the facts of this case concerning HUD's repudiation. See also Kennedy Heights Apartments, Ltd. I v. United States, 63 Fed. Cl. 731, 737 (2005). ("This doctrine of prior material breach is based upon the principle that "where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties. . . if there has already been an uncured material failure of performance by the other party." Id., citing Christopher Village, L.P. v. United States, 360 F.3d 1319, 1334 (2004); E. Allen Farnsworth, Farnsworth on Contract, § 8.15, 439 (1990); and Restatement (Second) of Contracts § 237, cmt. b (1981).) Had HUD ever attempted to correct the rejection of Regatta's cure payment and had HUD ever attempted to correct the unequivocal statement of intent to illegally treat the Note as accelerated, perhaps HUD could argue to have later acted in good faith, but HUD remains adamant, albeit un an inherently self-contradictory way, that it accelerated the Note in July 2000. The knowing taking of the property under such illegal circumstances shows further HUD's intent to injure Regatta not only by the fact of HUD's breaches but also by the manner of HUD's breaches.

////

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

**C. BY CANCELING THE MORTGAGE INSURANCE HUD PROMISED TO PROVIDE UNDER THE REGULATORY AGREEMENT, HUD ASSURED ITSELF OF ITS ABILITY TO TAKE BACK THE PROPERTY, AND THE RECORD CONTAINS NO COMPETENT EVIDENCE OF A BREACH BY REGATTA OF THE REGULATORY AGREEMENT TO HAVE JUSTIFIED HUD'S CANCELLATION OF THE INSURANCE.**

HUD breached the Regulatory Agreement by canceling its endorsement for insurance which was promised as express consideration for the Regulatory Agreement. The first full paragraph of the Regulatory Agreement states in pertinent part as follows:

> In consideration of the endorsement for insurance by the Secretary of the above described note. . . , Owners agree for themselves, their successors, heirs and assigns, and in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Secretary shall be the owner, holder or reinsurer of the mortgage, or during any time the Secretary is obligated to insure a mortgage on the mortgaged property: . . . .

HUD's promise to insure the lender is the keystone of the program which gives the lender an incentive to finance a multi-family housing project. Without HUD's promise to insure the noteholder, the Note would be of no value in the secondary market.

HUD does not dispute that the course of performance over the life of the Note since its inception in 1979 was that the noteholder and HUD allowed numerous late payments by Regatta so long as Regatta paid a late fee. Under this course of performance, the only way HUD could carry out its plan to take this property back was to get the property back by assignment. The cancellation of the mortgage insurance was one way to make sure this happened. But for the cancellation of the mortgage insurance, HUD could not be sure that Reilly would not continue to accept late payments and late fees from Regatta as has always been previously accepted.

In HUD's August 29, 2000 letter (Exhibit 5 of the Second Amended Complaint and Exhibit 5 of the Affidavit of Phil R. Rosequist filed April 29, 2005), HUD admitted that Regatta adequately addressed the previously alleged physical deficiencies of the subject property. Because Regatta did not pay the excess of $1 million demanded by HUD's March 24, 2000 letter, however, HUD declared the Regulatory Agreement to be in default.

As stated above, the May 3, 2001 letter from HUD at Exhibit 6 of both the Second Amended

Complaint and the same Rosequist Affidavit shows that HUD's demands in its August 29, 2000 letter were barred by the statute of limitations, against which bar HUD raises no dispute of fact. HUD's unreasonable demand of such an astronomical payment which HUD was not entitled to make, upon which unmet demand HUD based its notice of default of the Regulatory Agreement and cancellation of the insurance, further evidences HUD's bad faith and intent to injure Regatta.

Without citing any authority HUD incorrectly implies that some sort of administrative process and exhaustion of remedies rule applies to its May 22, 2001 letter and Regatta's response letter of June 12, 2001, which response HUD chose to ignore in proceeding directly to foreclosure without regard to the lack of any legal acceleration and without regard to the lack of authority to exercise the power of sale under the covenants of the Deed of Trust. (See A58-62 of HUD's January 14, 2005 Appendix.) HUD has never disputed the following statement by Regatta at A60 of the same Appendix:

> If HUD will reconsider its legal positions asserted to date and apply its policies of promoting the welfare of the tenants and the economic viability of the project consistent with HUD's own programs, rather than take a vindictive approach against Regatta Bay Limited for its past involvement of a U.S. senator to assist in the implementation of HUD's policies, HUD should find that opportunities abound which will bring a far more satisfactorily economic treatment of this property than the present course which HUD has announced to be pursuing.

(See also letter from Senator Harry Reid at A64, 65 of Regatta's April 28, 2005 Appendix, in which Senator Reid describes an issue at that time of HUD "condemning" Regatta without good cause.) HUD does not dispute that it took a vindictive approach against Regatta Bay. The extent of evidence to deny HUD's intent to injure Regatta is Ms. Browder's assertion of the "right to accelerate", which contradicts the Department of Justice's argument that HUD had no privity at the only time when HUD alleges the acceleration to have occurred. This contradiction between Ms. Browder and HUD's counsel is itself evidence of HUD's intent to injure Regatta because it indicates invalid assertion of an excuse for the foreclosure, which indicates HUD took the property without valid legal cause, which it knew or should have known it was doing.

HUD invalidly accuses Regatta of failing to meaningfully address Cienega Gardens v. United States, 194 F.3d 1231 (Fed.Cir.1998), but HUD provides no substantive analysis itself of Cienega

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Gardens. In that case, a group of landowners sued HUD for breach of their mortgages from HUD's position of dishonoring covenants in the mortgages which had allowed for prepayment on certain terms provided in the mortgage. The reason HUD no longer intended to honor the prepayment terms is that Congress enacted two laws referred to as ELIHPA and LIHPRHA, which changed the way HUD could allow prepayments of HUD insured mortgages. HUD was not a party to the mortgages but was only an insurer.

The Court identified the question before it as being whether HUD's execution of the Regulatory Agreement and the other related documents in the transaction "gave rise to privity of contract between HUD and the Owner insofar as the right to prepay the mortgage loan was concerned." Cienega Gardens at 1241. In concluding that no such privity of contract existed, the Court first addressed whether HUD had provided the insurance it promised.

First, the Court stated, "It has never been argued that HUD failed to provide mortgage insurance. . . ." Id. This fact differentiates Cienega Gardens from the instant case because here HUD did cancel the mortgage insurance. Without HUD's cancellation of the mortgage insurance here, there is no indication that HUD could have ever taken back the property because previously the noteholder had always accepted the course of performance since the inception of the Note and Deed of Trust, more than 20 years previously, by allowing payment of late fees with the acceptance of late payments.

In Cienega Gardens, HUD met its insurance obligations. Here, HUD did not.

The upshot of the ruling in Cienega Gardens was that HUD's taking of the landowner's property rights without a contractual right to do so resulted in liability by HUD for just compensation under the Fifth Amendment. E.g., Independence Park Apartments v. United States, 61 Fed. Cl. 692, 694 (2004) ("offshoot" of Cienega Gardens, discussing the manner of calculation of just compensation and adjustment of the damages model from the breach of contract claims of the landowners). Remarkably, HUD makes no reference to Cienega Gardens in its motion to dismiss Regatta's claim of a taking under the Fifth Amendment. If discovery showed facts that HUD never came into privity by accepting an assignment from Reilly or in any other relevant way as the Department of Justice vigorously argues, which manner and circumstances of assignment HUD has

not yet shown because of its refusal to participate in ordinary discovery, then Cienega Gardens would also support Regatta's claim of a taking under the Fifth Amendment.

Further, the instant issues regarding breach of the covenants of the Deed of Trust differ from the prepayment issues in Cienega Gardens, where HUD was never in privity as to the mortgages. Here, HUD apparently accepted an assignment of the Note and Deed of Trust, although HUD has not produced the documentation and correspondence related to the assignment.

Without such discovery, HUD's arguments of lack of privity under Cienega Gardens lack context. Perhaps this is why HUD does not discuss the facts of Cienega Gardens in any detail in its briefs. Without such discovery of the foundation of HUD's privity arguments in the context of an assignment to HUD from Reilly, Regatta and the Court cannot adequately address HUD's privity arguments.

As discussed above, Reilly and HUD never followed the express terms of the Deed of Trust or the controlling state law to accelerate this Note. HUD does not dispute the fact that HUD had no right to accelerate in July 2000 according to the Department of Justice. On the other hand, Ms. Browder does assert that HUD had such a right. HUD's internal inconsistency therefore creates the issue of fact as to whether HUD had privity or not, but assuming the Department of Justice to be correct, HUD had no privity in July 2000.

HUD may have had privity after the Note and Deed of Trust were assigned, assuming HUD produces documentation for the assignment. If HUD can show it accepted the assignment before it transferred the property, then privity would appear to exist for Regatta's breach of contract claims under the Note and Deed of Trust and under the Regulatory Agreement, both of which breaches made possible HUD's taking of the property.

On the other hand, if HUD cannot document the assignment and cannot show that it ever had privity, Cienega Gardens and its progeny show that Regatta nonetheless states valid takings claims under the Fifth Amendment. The bar of limitations of more than $1 million of HUD's unconditional demand is sufficient to show HUD's breach of the Regulatory Agreement through cancellation of insurance on the invalid grounds of Regatta's "failure" to pay the more than $1 million which HUD demanded.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

But for HUD's breach of the Regulatory Agreement, cancellation of the insurance and receipt of assignment of the Note and Deed of Trust, HUD could not have taken the property away from Regatta. HUD's breach and illegal manner of taking the property further evidences HUD's bad faith and intent to injure Regatta. HUD presents no evidence to dispute this evidence which includes HUD's own admissions, other than the self-contradictory statements regarding HUD's "right to accelerate", which the Department of Justice admits did not exist because of a lack of privity.

Regatta is entitled to recover damages from HUD's breach of the Regulatory Agreement. Regatta is also entitled to conduct ordinary discovery of the assignment to HUD of the Note and Deed of Trust and of HUD's cancellation of the insurance for the noteholder, which promise to insure was the consideration for the Regulatory Agreement.

**D. HUD TRANSFERRED THE PROPERTY UNDER THE MULTI-FAMILY MORTGAGE FORECLOSURE ACT ("MMFA") UNDER WHICH STATUTE HUD'S OWN CITED AUTHORITY OF <u>KENNEDY HEIGHTS</u> RECOGNIZES THE MONEY MANDATING REMEDY OF DAMAGES.**

In <u>Kennedy Heights Apartments, Ltd. v. United States</u>, 48 Fed.Cl. 574 (2001), the landowners defaulted on their mortgages which HUD had insured. The Plaintiff sued for the foreclosure sale proceeds surplus, and HUD argued that no jurisdiction existed because there was no contractual or statutory grounds for any payment by HUD to the landowners. The Court held that jurisdiction was proper under the Multi-Family Foreclosure Act ("MMFA") and its implementing regulations, which were money mandating.

The court concluded that 12 U.S.C. § 3704 was fairly interpreted as mandating compensation for damages sustained by a foreclosure under the MMFA. This statute provides in pertinent part as follows:

> The Secretary [of HUD] shall be a guarantor of payment of any judgment against the foreclosure commissioner for damages based upon the commissioner's failure properly to perform the commissioner's duties.

Regatta demonstrates a prima facie case under the MMFA for the surplus proceeds retained by HUD to which HUD was not entitled because of the noteholder's failure to comply with the covenants of the Deed of Trust required for acceleration.



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

HUD could try to argue that Regatta's non-payment after Reilly rejected Regatta's July 28, 2000 cure payment is a breach by Regatta of the covenants of the Deed of Trust. Reilly's repudiation and rejection of Regatta's right to cure was unequivocal however, meeting the definition of "prior material breach" as excusing non-performance, as quoted above from Kennedy Heights Apartments, Ltd. 1 v. United States, 63 Fed.Cl. 731, at 737.

HUD's next action after Reilly rejected HUD's cure payment was to cancel the insurance, requiring the assignment of the Note and Deed of Trust back to HUD. By that time both Reilly and HUD were referring to the Note as accelerated, although neither Reilly nor HUD had authority to accelerate under the express covenants for acceleration.

Further, Ms. Browder is unequivocal in her Declaration of HUD's assertion that the acceleration occurred in July, 2000. Under these circumstances, the non-payment by Regatta after Reilly rejected its cure payment in conjunction with the treatment by Reilly and HUD of the Note as being accelerated was a prior material breach by Reilly and HUD, which excused Regatta's further non-performance. E.g., Kennedy Heights, supra, 63 Fed.Cl.. at 737. As stated, HUD never attempted to correct its assertion that the acceleration had occurred in July 2000. Prior to any assignment to HUD, assuming HUD produces the assignment documents in discovery, Reilly had unequivocally asserted by its rejection of Regatta's cure payment that the noteholder did not have to allow cure payments to reverse the noteholder's treatment of the Note as being accelerated. Neither Reilly nor HUD ever complied with the Deed of Trust covenants for acceleration, which required a right to cure after written notice of default and election to sell. (A13 of Regatta's April 28, 2005 Response and Affidavit of Phil R. Rosequist filed July 5, 2005.)

HUD has not provided any discovery concerning HUD's documentation of Reilly's rejection of Regatta's cure payment, but Ms. Browder unequivocally declares that the acceleration occurred in July, 2000. At no time does HUD show compliance by the noteholder with the covenants of acceleration required by the Deed of Trust.

If HUD can produce any documentation, which it has refused to produce thus far, to show HUD ever notified Regatta that HUD would accept cure payments, then perhaps HUD could show entitlement to retain the unpaid Note amounts between July 1, 2000 and the foreclosure on December

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

4, 2001. At this point, however, HUD has made no such showing and has not indicated that discovery will likely support any such claim by HUD, but that HUD's position was the same as Reilly's, as Ms. Browder declares, that HUD would not accept any cure payments because it viewed the Note at all times after July 2000 as having been accelerated when, in fact, it was not.

The first Kennedy Heights case in 2001 establishes that the MMFA is money mandating, contrary to HUD's argument. The second Kennedy Heights case in 2005 establishes that a prior material breach, such as Reilly's refusal here to allow a timely cure payment to avert an acceleration, excuses the non-performance by the other party, here Regatta, in making any more futile monthly or cure payments which the noteholder regarded as irrevocably accelerated. As stated above, HUD also does not dispute the applicability of the authority cited by Regatta on repudiation at pages 11 through 14 of Regatta's Response Brief of January 28, 2005. HUD has no authority to support its summary judgment motion to dismiss Regatta's claim under the MMFA. Regatta is entitled to discovery of the assignment documentation and correspondence showing Reilly's and HUD's rights and responsibilities provided in their transaction with each other to show further that it was unreasonable for HUD to regard the Note as validly accelerated under Reilly's rejection of Regatta's cure payment and without any written notice of default and election to sell having ever been recorded.

### E. HUD ADMITS THAT IT HAD INSUFFICIENT PRIVITY TO HAVE TAKEN THE PROPERTY BY A RIGHT OF CONTRACT, WHICH HUD'S CITED CASE OF CIENEGA GARDENS AND PROGENY HOLD TO BE THE BASIS FOR A TAKINGS CLAIM UNDER THE FIFTH AMENDMENT.

Despite Ms. Browder's Declaration to the contrary, the Department of Justice repeatedly stresses that HUD had no privity. Cienega Gardens establishes that the taking by HUD of property where there is no privity demonstrates a takings claim under the Fifth Amendment. HUD's cited case of Sun Oil Co. v. United States, 215 Ct. Cl. 716 (1978), only establishes that a takings claim does not exist where the government acted pursuant to a contract. Here, HUD stresses that it had no privity and Sun Oil Co. does not apply to the factual inferences suggested by HUD of a lack of privity, contradicts Ms. Browder's Declaration. The existence of a genuine issue of material fact under the contradiction between HUD's argument about the lack of privity and Ms. Browder's

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

Declaration that HUD had a right to acceleration in July 2000 precludes summary judgment on Regatta's takings claim under the ultimate holdings of the Cienega Gardens cases.

## II. REGATTA IS ENTITLED TO BASIC DISCOVERY.

HUD's admissions show that Regatta states a prima facie case for breach of contract, breach of the covenant of good faith and fair dealing, violation of the MFFA and a taking under the Fifth Amendment, as discussed above. HUD's admissions and Regatta's April 28, 2005 Response to the Motion for Summary Judgment also show that Regatta presents a prima facie case for each of its tortious breach of contract claims and for declaratory judgment. Regatta seeks adjudication of these claims, as well as discovery related to HUD's contradictory interpretations of these various contract documents, HUD's notice and documentation of Reilly's acceleration under the Deed of Trust without ever recording a notice of breach and election to sell, Reilly's rejection of Regatta's cure payment, documentation showing HUD's alleged right to foreclose but lack of privity, which are needed to respond factually to HUD's arguments about the applicability of the MMFA and the Fifth Amendment.

Under RCFC 26(b), Regatta is entitled to discovery:

> regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

HUD has not asserted any of the possible limitations on discovery such as burden, ample opportunity or expense to apply here. Although counsel have preliminarily discussed discovery, HUD's counsel presently declines to hold an early meeting of counsel under paragraph 3 of Appendix A of RCFC. Counsel have not discussed the ampleness of opportunity, the burden or the expense of Regatta's requested discovery.

Regatta has been open, forthright and reasonable concerning the discovery it intends to obtain. (See Affidavit of Paul C. Ray filed April 28, 2005.) At no time has Regatta suggested any intent to be unreasonable in its discovery requirements.

Any limitation upon discovery would be premature. HUD's discovery argument that the case should be disposed of in its entirety is meritless. The discovery Regatta will seek, if allowed, is reasonably calculated to lead to the discovery of admissible evidence.

## CONCLUSION

Regatta requests the Court to enter an order permitting depositions to be taken and discovery to be had prior to decision of the Defendant's Motion for Summary Judgment.

DATED this 5th day of July, 2005.

JOHN PETER LEE, LTD.

/s/ Paul C. Ray, Esq.

PAUL C. RAY, ESQ.
Nevada Bar No. 004365
830 Las Vegas Boulevard South
Las Vegas, NV 89101
(702) 382-4044 Fax: (702) 383-9950
*Attorney for Plaintiff*

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950